# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

Norman Shaw, Joseph Cowart, Brian Kamedula, Charles Wirth, and Ansell Jordan,

Plaintiffs,

vs.

Scott Davis, Tara Carpenter, Harold Wickham, Richard Snyder, K. LeGrand, J. Ferro, C. Potter, Renee Baker, K. Thomas, John Doe #1, John Doe #2, and Prison Administration,

Defendants.

Case No.___3:18-cv-00551 _____

Civil Rights Complaint Pursuant to 42 U.S.C. 1983, 2000cc, and 1985 (3)

(Jury Trial Demanded)

## A. JURISDICTION

1. This complaint alleges that the civil rights of Plaintiffs, Norman Shaw, Joseph Cowart, Brian Kamedula, Charles Wirth and Ansell Jordan, all of whom presently reside at 1200 Prison Road, Lovelock, Nevada 89419, were violated by the actions of the below named individuals which were directed against Plaintiffs at Lovelock Correctional Center (LCC), on 2/1/18 for counts 1 through 4.

1.

**Make a copy of this page to provide the below**
**information if you are naming more than five (5) defendants**

2) Defendant __Scott Davis__    works __1200 Prison Road__
resides at __Lovelock, NV  89419__ ,
    (full name of first defendant)    (address if first defendant)
  and is employed as __Chaplain__ . This defendant is sued in his/her
    (defendant's position and title, if any)
    ✓ individual ✓ official capacity. (Check one or both). Explain how this defendant was
acting

  under color of law: __As Chaplain, he implemented changes at LCC placing__
__substantial burdens on plaintiffs' free exercise of religion.__

3) Defendant __Tara Carpenter__    works __1200 Prison Road__
resides at __Lovelock, NV  89419__ ,
    (full name of first defendant)    (address if first defendant)
  and is employed as __Associate Warden (AW)__. This defendant is sued in his/her
    (defendant's position and title, if any)
    ✓ individual ✓ official capacity. (Check one or both). Explain how this defendant was
acting

  under color of law: __As AW, she implemented changes at LCC placing__
__substantial burdens on plaintiffs free exercise of religion.__

4) Defendant __Harold Wickham__    works __5500 Snyder Ave.__
resides at __Carson City, NV 89701__ ,
    (full name of first defendant)    (address if first defendant)
  and is employed as __RRT Committee__ . This defendant is sued in his/her
    (defendant's position and title, if any)
    ✓ individual ✓ official capacity. (Check one or both). Explain how this defendant was
acting

  under color of law: __This defendant was responsible for assisting in__
__implementing changes at LCC that placed a substantial burden__
__on plaintiffs' free exercise of religion.__

5) Defendant __Richard Snyder__    works __5500 Snyder Ave.__
resides at __Carson City, NV 89701__ ,
    (full name of first defendant)    (address if first defendant)
  and is employed as __RRT Committee__ . This defendant is sued in his/her
    (defendant's position and title, if any)
    ✓ individual ✓ official capacity. (Check one or both). Explain how this defendant was
acting

  under color of law: __This defendant was responsible for assisting in__
__implementing changes at LCC that place a substantial burden__
__on plaintiffs' free exercise of religion.__

<u>**Additional Defendant's**</u>

6) Defendant, <u>Prison Administration</u>, ~~resides~~ works at <u>1200 Prison Road</u>
   (full name of def.)                                    <u>Lovelock, Nevada 89419</u>
                                                          (address of def.)

and is employed as <u>NDOC Personnel</u>. This defendant is sued
                   (def. position and title,if any)

in his/her ✓individual ✓official capacity (check one or both).

   Explain how this defendant was acting under color of law:

<u>Defendant(s) were responsible for assisting in implementing changes at</u>
<u>LCC that placed a substantial burden on plaintiffs' free exercise of</u>
religion.

7) Defendant, <u>K. LeGrand</u>, ~~resides~~ works at <u>1200 Prison Road</u>
   (full name of def.)                                  <u>Lovelock, NV 89419</u>
                                                        (address of def.)

and is employed as <u>Caseworker (CCS)</u>. This defendant is sued
                   (def. position and title,if any)

in ~~his~~/her ✓individual ✓official capacity (check one or both).

   Explain how this defendant was acting under color of law:

<u>Is responsible for reviewing, investigating, and resolving griev-</u>
<u>ances which this defendant failed to do.</u>

8) Defendant, <u>J. Ferro</u>, ~~resides~~ works at <u>1200 Prison Road</u>
   (full name of def.)                              <u>Lovelock, NV 89419</u>
                                                    (address of def.)

and is employed as <u>Caseworker (CCS)</u>. This defendant is sued
                   (def. position and title,if any)

in his/her ✓individual ✓official capacity (check one or both).

   Explain how this defendant was acting under color of law:

<u>Is responsible for reviewing, investigating, and resolving grievances</u>
<u>which this defendant failed to do.</u>

9) Defendant, <u>C. Potter</u>, ~~resides~~ works at <u>1200 Prison Road</u>
   (full name of def.)                               <u>Lovelock, NV 89419</u>
                                                     (address of def.)

and is employed as <u>Caseworker (CCS)</u>. This defendant is sued
                   (def. position and title,if any)

in his/her ✓individual ✓official capacity (check one or both).

   Explain how this defendant was acting under color of law:

<u>Is responsible for reviewing, investigating, and resolving grievances</u>
<u>which this defendant failed to do.</u>

*3.*

LCC LL FORM 36.002

## Additional Defendant's

10) Defendant, Renee Baker (full name of def.) works resides at 1200 Prison Road Lovelock, NV 89419 (address of def.)

and is employed as Warden (def. position and title, if any). This defendant is sued

in his/her ✓individual ✓official capacity (check one or both).

Explain how this defendant was acting under color of law:

Is responsible for upholding laws, policies, regulations, and responses to grievances. This defendant failed to act reasonably in her duties.

11) Defendant, Kim Thomas (full name of def.) works resides at 5500 Snyder Ave. Carson City, NV 89701 (address of def.)

and is employed as Deputy Director (def. position and title, if any). This defendant is sued

in his/her ✓individual ✓official capacity (check one or both).

Explain how this defendant was acting under color of law:

Is responsible for upholding laws, policies, regulations, and responses to grievances. This defendant failed to act reasonably in her duties.

12) Defendant, John Doe #1 (full name of def.) works resides at 5500 Snyder Ave. Carson City, NV 89701 (address of def.)

and is employed as RRT Committee (def. position and title, if any). This defendant is sued

in his/her ✓individual ✓official capacity (check one or both).

Explain how this defendant was acting under color of law:

This defendant was responsible for assisting in implementing changes at LCC that placed a substantial burden on plaintiffs' free exercise of religion.

13) Defendant, John Doe #2 (full name of def.) works resides at 1200 Prison Road Lovelock, NV 89419 (address of def.)

and is employed as Lieutenant (def. position and title, if any). This defendant is sued

in his/her ✓individual ✓official capacity (check one or both).

Explain how this defendant was acting under color of law:

Is responsible for upholding laws, policies, regulations, and responses to grievances. This defendant failed to investigate the claims and act reasonably in his duties.

4.

14. Jurisdiction is invoked pursuant to 28 U.S.C. 1343 (a)(3), 42 U.S.C. 1983, 42 U.S.C. 2000 cc, and 42 U.S.C. 1985 (3).

## B. NATURE OF THE CASE

1. Norman Shaw, Joseph Cowart, Brian Kamedula, Charles Wirth and Ansell Jordan, (collectively "Plaintiffs") are all inmates under the care, custody and control of the Nevada Department of Corrections (NDOC), incarcerated at LCC.

2. Plaintiffs bring this civil rights complaint because defendants have violated the Religious Land Use and Institutionalized Persons Act (RLUIPA) (42 U.S.C. 2000cc), and Plaintiffs' Fourteenth Amendment rights to equal protection under color of law (42 U.S.C. 1983).

3. Prior to 2/1/18, the chapel schedule at LCC accomodated all the various religious faith groups providing sufficient time and space to each faith group to practice their respective religions. Chapel services began as early as 6:00 am. and ended at 10:30 pm. On Fridays, Saturdays and Sundays, services were also held in the chapel during institutional counts. Religious services were not limited to just the chapel. Religious services were held in visiting, culinary (dining hall), housing unit activity rooms and storage closets. This was the status quo for over 15 years. There was no requirement for staff or outside sponsors to be present in the

5.

chapel for services. In or about 2007 cameras were placed in the chapel for monitoring via closed-circuit television (CCTV). It should also be noted that Operations is located across the hall from the chapel. Which increases officer response time (should the need ever arise) to be less than in most housing units where 178 inmates are housed, and on many occasions with no floor officer.

4. Plaintiffs believe Defendants' actions, as alleged hereafter, were done arbitrarily, capriciously, and with malice. The changes imposed by Defendants were not done in furtherance of a compelling governmental interest, nor did Defendants consider any lesser restrictive means of acheiving their goals prior to implementing the changes which have placed a substantial burden on Plaintiffs' free exercise of religion. As Defendant Scott Davis stated to numerous inmates (pointing to himself), "There's a new sheriff in town". Davis also on at least two occasions stated to inmates who complained that he could reduce chapel services down to one hour a week, and to those who complained of the secular "Education Music Appreciation" program that he could have all chapel instruments removed from the chapel if he wanted.

5. The Prison Litigation Reform Act (PLRA) prevents inmates from filing a complaint until all administrative remedies have been exhausted. While Plaintiffs were attempting to exhaust the administrative

6.

remedies, they have not been allowed to practice the tenets of their religion as addressed in the instant complaint.

## C. CAUSE OF ACTION

### COUNT I

Defendants violated Plaintiffs rights under the Religious Land Use Institutionalized Persons Act (RLUIPA) (42 U.S.C. 2000cc) by imposing changes that substantially burden Plaintiffs' free exercise of religion.

Supporting Facts:

a. Defendants Actions Causing Substantial Burden Of Religious Exercise.

1. Plaintiffs incorporate into this count all the allegations in counts 2, 3, and 4, as though fully set forth herein.

2. On 1/18/18 Defendant Tara Carpenter issued a memo notifying all inmates that a new chapel schedule would be implemented.

3. On 1/24/18 Defendant Scott Davis held a meeting with the religious faith group facilitators. At the meeting Davis said there were going to be major changes effective 2/1/18 to the chapel sch-

7.

edule. Davis claimed Harold Wickham, Richard Snyder, and John Doe #1 (collectively, the RRT Committee) and Prison Administration① were responsible for the changes. Davis informed the facilitators that they were only entitled to one hour per week for chapel services and if anyone wanted to file a grievance, they could make that happen (that is, limit services to one hour a week). One inmate complained of the secular music program from education being included in the new chapel schedule. Davis' response was that he could have all musical instruments removed from the chapel. Davis also said that prayer and Bible studies are not chapel activities and could be done in a cell (it should be noted that cell visiting is no longer allowed at LCC and activity rooms are now used for housing inmates); no more music/choir practices; culinary will no longer provide anything for religious services and previously provided items (which were at no cost to the inmates) would now have to be purchased from the canteen; no more services before 8:00 a.m. or after 9:00 p.m.; and no more outcount services. In conclusion, Davis pointed to himself and said, "There's a new sheriff in town".

4. Davis, Carpenter, Wickham, Snyder, Doe #1, and Prison Administration approved of, and/or ass-

---

1. Plaintiffs will seek leave to amend the Complaint when the names of Prison Administration and Doe defendants are ascertained during discovery.

isted in the implementation of the 2/1/18 chapel schedule reducing chapel services by over 50% (to include eliminating all services between the hours of 6:00a.m.- 8:00a.m.; all services from 9:00p.m.-10:30p.m. ; all out count services; all services held in culinary). Some faith groups such as "The Way" were eliminated completely. These changes placed a substantial burden on Plaintiffs' free exercise of religion.

b. Plaintiffs' Sincerely Held Religious Beliefs.

5.  Plaintiffs Shaw and Kamedula are members of the Episcopal faith group which is recognized by the Episcopal Diocese of Nevada. Davis, Carpenter, Wickham, Snyder, Doe #1, and Prison Administration eliminated 59% of the Episcopal's previously alloted chapel time. This loss effectively eliminated: (1) choir/music practice; (2) baptism and confirmation classes; (3) weekly unction; (4) Preachers In Training (PIT) classes; and (5) worship leader and Eucharist training, all of which are important tenets of the Episcopal faith. These tenets were conducted on Saturday mornings from 10:30a.m. to 11:30 a.m. (an outcount service). These changes imposed have placed a substantial burden on Shaw and Kamedula's ability to practice these tenets of the Episcopal faith group.

6.  Plaintiff Cowart was the facilitator for "The Way" faith community, Christian faith group. The

Way had three services weekly: (1) worship service with outside sponsor; (2) Bible studies; and, (3) choir/music practice. The Way also had a yearly Pentecost service during Advent which consisted of two three-hour services in a two day period. Davis, Carpenter, Wickham, Snyder, Doe #1, and Prison Administration's changes eliminated all time slots for The Way faith group. As a result The Way lost it's outside sponsor. The elimination of The Way placed a substantial burden on Cowart's ability to practice the tenets of his religion.

7. Plaintiff Wirth is a member of the KAIROS faith group which he has consistently attended for over two years since his return to LCC. The KAIROS community had: (1) inside team meetings bi-monthly (on odd numbered months); (2) Ultreya services bi-monthly (on even numbered months); (3) choir/music practices on Friday nights from 7:15 p.m. - 9:00 p.m. in the culinary dining hall. The Ultreyas, choir/music practices, and inside team meetings were geared toward a full day Ultreya ("R+R") in June; and, a three-day weekend event in October of each year since 1999. As a result of the changes made by Davis, Carpenter, Wickham, Snyder, Doe #1, and Prison Administration the KAIROS Friday night practices were eliminated. Also, the three-day KAIROS event for October 2018 was eliminated. The elimination of the choir/music practices and the three-day event have placed a substantial

10.

burden on Wirth's ability to practice the tenets of the KAIROS faith group which is a Christian evangelistic community. The KAIROS community believes that they are called up to go into all the world and preach the Gospel and bring believers to the recognition of their membership in the Body of Christ and not solely individual believers.

8.  Plaintiff Jordan has been a member of the Islam /Muslim Nation of Islam (NOI) faith group for over ten years. For the five year period prior to the changes imposed on 2/1/18, Jordan consistently attended JUMAH and Ramadan services. Prior to the changes imposed by Davis, Carpenter, Wickham, Snyder, Doe #1, and Prison Administration, NOI enjoyed: (1) JUMAH services each Friday from 10:30 a.m. - 11:30 a.m. (an out count service); (2) Muslim studies on Thursdays from 9:35 - 10:45 a.m.; and, (3) Ramadan services in the unit 2B activity room each year for the 30 day period of Ramadan.

9.  Prior to approximately 2004 this faith group enjoyed JUMAH service in the chapel at 1:00 p.m. each Friday. When a change was required to accomodate Protective Segregation (PS) inmates, the General Population (GP) inmates who practiced Islam were allowed an out count service (as a lesser restrictive alternative means) each Friday from 10:30 a.m. - 11:30 a.m. as it was the closest time period available to the 1:00 p.m. JUMAH time. This

11.

was the status quo for over 14 years. JUMAH is an obligation for any congregation that practices Islam world wide. Fridays are holy days and the participants make the prayer in unity as a congregation. Fridays are Sabbath days for Muslims. Davis, Carpenter, Wickham, Snyder, Doe#1, and Prison Administration eliminated the Muslims Friday morning JUMAH services.

10. Also, each year prior to 2018, Islam's were allowed access/usage of the 2B activity room (as a least restrictive alternative means) for the 30 day period of Ramadan to conduct services. During Ramadan Jordan and other Muslims are required to participate as a congregation in daily prayers, fasting and studying the Quran (which must be read in its entirety during Ramadan) to uplift each other spiritually.

11. Davis, Carpenter, Wickham, Snyder, Doe#1, and Prison Administration failed to provide the Muslims with a location for Ramadan. The elimination of JUMAH services and failure to provide a location for Ramadan has placed a substantial burden on Jordan's ability to practice the tenets of his religion.

C. Defendants Arbitrarily And Capriciously Eliminated All Religious Outcount Services Placing A Substantial Burden on Plaintiffs' Free Exercise Of Religious Beliefs.

12.

12.  Davis, Carpenter, Wickham, Snyder, Doe #1, and Prison Administration eliminated all outcount services. As stated above (paragraph b), Plaintiffs exercised their religious beliefs during outcount services. When the outcount services were eliminated so were the ability to practice the religious exercises previously conducted in those time slots. The time utilized in the outcount services was not replaced in another time slot but was eliminated.

13.  If an inmate is placed on an "outcount", the inmate is allowed to be outside of his cell during an institutional count. The reasons for being on an outcount can vary, but are commonly for work, education, medical services, sagebrush, yard time, visiting, special events, and religious services. Defendants Davis, Carpenter, Wickham, Snyder, Doe #1, and Prison Administration only eliminated outcounts relating to the exercise of religion for Christian and Muslim groups. Outcounts continue for Pagan, Native American, and some Roman Catholic groups.

d.  Defendants Actions Did Not Further A Compelling Governmental Interest.

14.  The changes made by defendants Davis, Carpenter, Wickham, Snyder, Doe #1, and Prison Administration were not done to further a compelling governmental interest. Defendants K. Thomas, Renee Baker, Carpenter, J. Ferro, K. LeGrand, and C. Potter have

alleged two reasons for implementing the changes as stated in paragraph a., above.

15. The first reason given is for statewide consistency of the religious program. There is no compelling governmental interest in achieving statewide consistency throughout the state.

16. Prison facilities differ as to custody status such as maximum, medium, and minimum. Some prisons have multiple custody levels within themselves such as administrative segregation, protective segregation, disciplinary segregation, juvenile custody, and general population. Most prisons have different levels of custody such as at LCC where general population inmates are classified into three different levels (intake, level 2, and level 1). Privileges are added as inmates climb the level system. For instance, Level 1 inmates can attend evening chapel services, while level 2 and intake inmates may not. Statewide consistency is not a compelling governmental interest. If so, all the other prisons should have been modified to LCC's previous chapel schedule as it was the least restrictive for the exercising of religious rights (see paragraph e., infra).

17. The second reason given was for adequate staff oversight. LCC's chapel services did not, nor do they now, require that a Chaplain, Outside Sponsor, Correctional Officer, or other staff member be present in the chapel for religious services.

14.

The Chapel services are monitored by CCTV and are conducted across the hall from LCC's prison Operations.

18. The changes implemented by Davis, Carpenter, Wickham, Snyder, Doe #1, and Prison Administration were not implemented to deter criminal activity, nor for rehabilitation purposes, nor institutional security.

e. Defendants Failed To Consider The Least Restrictive Means Prior To Making Changes.

19. It is widely known by inmates throughout the NDOC that LCC has the least restrictive Chapel Schedule and regulations amongst the prisons housing inmates as Plaintiffs will prove during disovery. As stated above, LCC's former chapel schedule accomodated all the various faith groups and allowed each faith group to meet the required tenets of their respective faith groups. In order to bring statewide consistency Davis, Carpenter, Wickham, Snyder, Doe #1, and Prison Administration should have used the former schedule at LCC as the model and standard since it was the least restrictive means of achieving statewide consistency rather than cutting over 50% of the chapel services at LCC. By eliminating over 50% of the Chapel services, the defendant's have placed a substantial burden on Plaintiffs' religious practices as described in paragraph b., above.

15.

20. The defendants did not consider lesser restrictive alternatives such as increasing the chapel access at other institutions of the NDOC, nor hiring an additional chaplain, nor any other alternative, nor other possible alternatives. The defendants solely sought to eliminate and decrease ongoing and long standing religious practices.

21. It should also be noted that the previous chapel schedule already included and accomodated religious exercises by lesser restrictive alternative means. The Muslims had the Unit 2B Activity Room, the Jews had the Visiting Room, and KAIROS had the Phase 1 Culinary Dining Hall.

22. Defendants Davis, Carpenter, Wickham, Snyder, Doe #1, and Prison Administration, in their individual capacities, are being sued for violating Plaintiffs' rights under RLUIPA.

## COUNT 2

Defendants violated Plaintiffs' Fourteenth Amendment Rights under the Equal Protection Clause of the U.S. Constitution.

## Supporting facts:

1. Plaintiffs incorporate into this count all allegations as alleged in counts 1, 3, and 4 as though

16.

fully set forth herein.

2. Defendants Davis, Carpenter, Wickham, Snyder, Doe #1, and Prison Administration have made accomodations for Jewish inmates to have religious services on their Sabbath (and in the chapel) instead of visiting where they were previously held. Defendants have even accomodated the Level 2 Jewish inmates by providing them with evening services in the Unit 4B activity room and storage rooms, whereas other 4B inmates are not allowed to attend evening services. Jordan is a member of the Islam religion whose Sabbath is on Fridays, a holy day for Muslims. Rather than providing the Muslims with a Sabbath service just like they accomodate the Jewish religions, the Pagans, the Native Americans, and the Roman Catholics, defendants instead eliminated the JUMAH service and replaced it with a secular education program called "Music Appreciation". Music appreciation was originally scheduled for Tuesday mornings, but in order to increase participation in the secular program it was moved to Friday mornings, displacing the Muslim's JUMAH service. Jewish religions are allowed services in the Unit 4B activity and storage rooms, but Muslims were denied the unit 2B activity room this year for RAMADAN, a location employed in previous years.

3. The Catholics, Pagans, and Native Americans have scheduled outcounts, but Shaw and Kamedula as Episcopalians are not any longer allowed outcount

17.

services.

4. All of the religious faith groups were scheduled for services even with the changes, but Cowart was left to the mercy of other inmates as to whether or not he would acquire a time slot for The Way chapel services. Cowart was ultimately successful in obtaining a time slot from another faith group, but Davis recently fired Cowart from his job as a sound tech in the chapel and further fired him as a facilitator and participant for The Way faith group. Davis told Cowart that he could now use The Way's time slot for something else. Cowart believes Davis is biased against The Way since it does not comport with his idealogy of Christianity as a Baptist.

5. The phase I dining hall at LCC was the location for the KAIROS music practice on each Friday evening. The dining hall is still being utilized for secular programs such as Narcotics Anonymous, Alcoholics Anonymous, SCA, VVA, AVP meetings, and other secular programs. The only thing eliminated was the religious KAIROS Christian music practice.

6. The LDS faith group had four services prior to the changes, and four services after the changes. But (based on information and belief) when the facilitator attempted to give up one of the time slots, Davis and/or Carpenter refused to allow the time slot to be given up to another faith group. Cowart could have used the time slot for one of The Way

18

services.

7.   Davis, Carpenter, Wickham, Snyder, Doe #1, and Prison Administration are being sued in their individual Capacity for having violated Plaintiffs' rights under the Fourteenth Amendment to equal protection.

## Count 3

Defendants violated Plaintiffs' rights under RLUI-PA and the Fourteenth Amendment to Equal Protection when Defendants after being informed of the violation failed to remedy the wrong.

Supporting Facts :

1.   Plaintiffs incorporate into this count all allegations as alleged in counts 1, 2, and 4 as though fully set forth herein.

2.   Defendants CCS K. LeGrand, CCS J. Ferro, CCS C. Potter, Renee Baker, Tara Carpenter, K. Thomas, and Lt. John Doe #2 were informed of the violations through the inmate grievance process established by the NDOC. The Inmate Grievance Procedures are set forth in Administrative Regulation (AR) 740. AR 740 provides that grievance responders are to review, investigate, and respond to grievances.

3.   In an attempt to resolve the claims set forth in Counts 1, 2, and 4, Plaintiffs filed grievances.

Shaw's grievance was issued grievance no. 2006-30-63928 (4/8/18); Cowart's grievance was issued grievance no. 2006-30-61144 (2/8/18); Kamedula's grievance was issued grievance no. 2006-30-64237 (4/15/18); and, Wirth's grievance was issued grievance no. 2006-30-64587 (4/20/18). Jordan made several attempts to address the claims in Counts 1 and 2 above. Jordan was issued grievance nos. 2006-30-60931 (2/4/18) and 2006-30-65900 (5/20/18). Jordan also filed an emergency grievance for RAMADAN services (5/15/18). Plaintiffs' grievances were all filed at LCC.

4.  Defendants Thomas, Baker, Carpenter, Doe #2, LeGrand, Ferro, and Potter denied all of Plaintiffs' grievances with the same boiler plate response which failed to address the substantial burdens that were being placed upon Plaintiffs' ability to practice their religion. Defendants failed to conduct any investigation, or attempt any resolution.

5.  Defendants as identified in this count are being sued in their individual capacities for failing to take corrective action to resolve the RLUIPA claims and the Equal Protection claims under the Fourteenth Amendment.

## COUNT 4

First and Fourteenth Amendments - Establishment

20.

Clause, Free Exercise Clause, Equal Protection Clauses by conspiring to deny equal rights under 42 U.S.C. 1985(3) and 42 U.S.C. 2000 cc.

## Supporting Facts:

1. Plaintiffs incorporate into this count all allegations as alleged in Counts 1, 2, and 3 as though fully set forth herein.

2. On 1/24/18 Davis had a meeting with the Religious Faith Group facilitators wherein he stated that the changes being imposed were being implemented by Wickham, Snyder, Doe #1, and Prison Administration. Davis revealed to the inmates that there was an agreement between Prison Administration at LCC and the Religious Review Team (RRT) committee of the NDOC.

3. The agreement was designed to reduce chapel services at LCC with no care or respect for the rights of the inmates to exercise the tenets of their religions.

4. Defendants Wickham, Snyder, Doe #1, Baker, Carpenter, and Davis and Prison Administration's agreement led directly to the changes implemented by Davis and approved by Carpenter to the chapel schedule. As a result of the changes, Defendants have substantially burdened Plaintiffs' ability to exercise their religious beliefs.

5. As a result of the 2/1/18 changes to the chapel schedule at LCC, Defendants have substan-

tially burdened Plaintiffs' ability to exercise their re-
ligious beliefs.

## D. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1. Plaintiffs Shaw, Cowart, Kamedula, Wirth, and
Jordan have not filed other actions in state or federal
courts involving the same or similar facts as involved
in this action.

2. Plaintiffs Shaw, Cowart, Kamedula, Wirth, and
Jordan have not filed an action in federal court that
was dismissed because it was determined to be frivo-
lous, malicious, or failed to state a claim upon which
relief could be granted.

3. Plaintiffs Shaw, Cowart, Kamedula, Wirth, and
Jordan have attempted to resolve the disputes stated in
this action by seeking relief from the proper admini-
strative officials. The grievance numbers, date of fil-
ing and responses are listed in paragraph 3 of Count
3, supra.

## E. REQUEST FOR RELIEF

1. Declaratory judgment that Defendants: (1)
violated 42 U.S.C. 2000cc (RLUIPA); (2) are not eli-
gible for federal funding for any programs in any and
every NDOC facility since 2/1/18; and, (3) all
federal funds received by the NDOC from 2/1/18

22.

be immediately returned to the respective agencies from which they were received (with interest at the legal rate thereon);

2. Preliminary and permanent injuction restoring the LCC Chapel Schedule back to the way it was from October 2016 through October 2017, to include all yearly special events and procedures for holding such events;

3. Appointment of a special master to monitor any future changes;

4. Defendants pay to Plaintiffs monetary damages (compensatory, punitive, and/or nominal) in the amount of one million dollars;

5. Any and all other damages as allowed by federal law or regulations relating to the recovery of monies for Defendants' violation of RLUIPA;

6. All costs associated with the filing of the instant action, to include, but not limited to, attorney fees (if any), copying charges, postage, stationary, court fees, deposition fees, and/or witness fees; and,

7. Any other relief the Court deems just and proper.



# VERIFICATION

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, except as to those matters stated on information or belief, and as to those matters, I believe them to be true. See 28 U.S.C. sec. 1746 and 18 U.S.C. sec. 1621.

Norman Shaw, 77657                    11-20-18
                                      Dated

Joseph Cowart, 90506                  11-20-18
                                      Dated

Brian Kamedula, 24627                 11/20/18
                                      Dated

Charles Wirth, 1085646                11/20/18
                                      Dated

Ansell Jordan, 76575                  11-20-18
                                      Dated

Each Plaintiff is appearing Pro Se, and, the address for each Plaintiff is: 1200 Prison Road, Lovelock, Nevada 89419.

24.