**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

NORMAN SHAW, *et al.*,

           Plaintiffs,

  v.

SCOTT DAVIS, *et al.*,

           Defendants.

Case No. 3:18-cv-0551-MMD-CLB

**ORDER GRANTING, IN PART, AND DENYING, IN PART, SHAW'S MOTION TO COMPEL**

[ECF No. 153]

Before the Court is Plaintiff Norman Shaw's ("Shaw") motion to compel discovery from Defendants K. LeGrand ("LeGrand"), Renee Baker ("Baker"), Tara Carpenter ("Carpenter"), Richard Snyder ("Snyder"), Scott Davis ("Davis"), and Kim Thomas ("Thomas") (ECF No. 153). Defendants opposed the motion, (ECF No. 165), and Shaw replied. (ECF No. 166.) Having considered all the above, the motion is granted, in part, and denied, in part, as stated below.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Factual Background

Shaw is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Lovelock Correctional Center ("LCC"). (*See* ECF No. 39.) Proceeding *pro se*, Shaw and four other Plaintiffs[1] filed the instant civil rights action pursuant to 42 U.S.C. § 1983 for events that occurred while Plaintiffs were incarcerated at LCC. (ECF Nos. 12, 39.)

Plaintiffs allege various claims and seek declaratory, injunctive, and monetary relief. Specifically, Plaintiffs sued Defendants Chaplain Scott Davis, Associate Warden Tara Carpenter, RRT Committee Harold Wickham, RRT Committee Richard Snyder,

---

[1]    Norman Shaw, Brian Kamedula, Charles Wirth, Ansell Jordan, and Joseph Cowart (collectively referred to as "Plaintiffs").

1  Prison Administration,[2] Caseworker K. LeGrand, Caseworker J. Ferro, Caseworker C.
2  Potter, Warden Renee Baker, Deputy Director Kim Thomas, John Doe #1, and John Doe
3  #2. (ECF No. 39.)

4      The complaint alleges, in summary, that prior to February 1, 2018, the chapel
5  schedule at LCC accommodated all the various religious faith groups and provided
6  sufficient time and space for each faith group to practice their respective religions. (*Id.* at
7  3.) On January 18, 2018, Carpenter issued a memo notifying all inmates that a new
8  chapel schedule would be implemented. (*Id.* at 5.) On January 24, 2018, Davis held a
9  meeting with the religious faith group facilitators and said that major changes were going
10 to be effective February 1, 2018. (*Id.* at 5-6.)

11     On February 1, 2018, Davis, Carpenter, Wickham, Snyder, Doe #1, and Doe
12 Prison Administration reduced chapel services by over 50% and some faith groups were
13 eliminated completely. (*Id.* at 6-11.) The five Plaintiffs are members of different faith
14 groups. (*Id.* at 7-10.) Plaintiffs allege that Episcopal, "The Way," KAIROS, and Nation of
15 Islam faith groups all suffered either a reduction in chapel time or were eliminated or
16 changed in a manner which placed a substantial burden on each of their abilities to
17 practice the tenets of their religion. (*Id.*)

18     K. Thomas, Baker, Carpenter, Ferro, LeGrand, and Potter responded that the
19 reasons for the changes were for statewide consistency of the religious program and
20 adequate staff oversight. (*Id.* at 11-13.) However, LCC chapel services did not and still
21 do not require a chaplain, outside sponsor, correctional officer, or other staff member be
22 present in the chapel for religious services. (*Id.* at 12-13.)

23     On June 18, 2019, the District Court screened the complaint and allowed Plaintiffs
24 to proceed as follows: (1) in Count I, alleging Religious Land Use and Institutionalized
25 Persons Act of 2000 ("RLUIPA") violations against Defendants Davis, Carpenter,
26 Wickham, Snyder, K. Thomas, Baker, Ferro, LeGrand, Potter, Doe #1 and Doe Prison

27

28 [2]     Plaintiffs state that Defendants "Prison Administration" are "Doe" defendants that
   Plaintiffs will learn the identities of during discovery. (*See* ECF No. 12 at 8, n.1.)

Administration; (2) in Count II, alleging Fourteenth Amendment equal protection violations against Davis, Carpenter, Wickham, Snyder, Doe #1 and Doe Prison Administration; (3) in Count III, alleging RLUIPA and Fourteenth Amendment equal protection violations against Defendants LeGrand, Ferro, Potter, Baker, Carpenter, Thomas, and Doe #2; (4) the portion of Count IV alleging First Amendment Establishment Clause violations against Defendants Wickham, Snyder, Baker, Carpenter, Davis, Doe #1 and Doe Prison Administration; (5) the portion of Count IV alleging First Amendment Free Exercise Clause violations against Defendants Wickham, Snyder, Baker, Carpenter, Davis, Doe #1 and Doe Prison Administration; and, (6) the portion of Count IV alleging 42 U.S.C. § 1985(3) conspiracy against Defendants Wickham, Snyder, Baker, Carpenter, Davis, Doe #1 and Doe Prison Administration; (ECF No. 11.)

On January 21, 2020, Plaintiffs filed their First Amended Complaint (ECF No. 39), which is now the operative complaint in this case. The allegations contained in Counts I through IV of the original complaint and the FAC are identical. (*Compare* ECF No. 12 at 5-22, *with* ECF No. 39 at 3-20.) Accordingly, Plaintiffs were permitted to proceed on Counts I through IV as outlined above. Plaintiffs were also permitted to add Count V alleging retaliation against Defendants Davis and Carpenter. (ECF No. 68.)

### A.  Discovery Process

The Court entered the discovery scheduling order which required discovery to be completed by October 20, 2020. (ECF No. 88.) The Court granted two extensions to the scheduling order resulting in discovery ending on April 21, 2021. (ECF Nos. 90, 136.) Due to the complexity created by the number of *pro se* litigants, the Court took an active role in the discovery process to assist the parties and streamline the litigation. In total, the Court held four case management conferences ("CMC") over the course of this litigation. (*See* ECF Nos. 101, 135, 145, 151.) Various discovery issues were addressed at the CMCs. After several attempts by the parties to meet and confer, there were still several issues that could not be resolved.

1   Thus, at the final CMC held on April 28, 2021, the Court set a briefing schedule

2   for each Plaintiff to file an individual motion to compel related to any outstanding

3   discovery requests from Defendants. (ECF No. 151.) The Court set forth the

4   requirements for each motion and explicitly indicated that Plaintiffs were not required to

5   include a declaration setting forth the details and results of each disputed discovery

6   request as the Court will assume that the parties have made a good faith effort to meet

7   and confer regarding the discovery disputes. (*Id.*)

8   The Court also requested that the Office of the Attorney General provide the

9   Court with copies of all discovery requests made in this case, all responses provided,

10   and all the documents provided in response to the discovery requests. The purpose of

11   this request was intended to limit the need for the parties to attach voluminous copies of

12   each discovery request and response as exhibits,[3] and to provide the Court with easy

13   access to evaluate whether the documents provided in response to the discovery

14   requests were sufficient. A thumb drive containing these documents was received by the

15   Court on May 27, 2021. (ECF No. 176.)

16   Pursuant to the Court's Order, Shaw filed the instant motion to compel seeking

17   supplementation of answers to certain Interrogatories and Requests for Production of

18   Documents served on several of the defendants. (ECF No. 153.)

19   **II.   LEGAL STANDARD**

20   "[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett*

21   *v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). The "scope of discovery" encompasses

22   "any nonprivileged matter that is relevant to any party's claim or defense and

23   proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In analyzing

24   proportionality, the Court must consider the need for the information sought based upon

25   "the importance of the issues at stake in the action, the amount in controversy, the

---

27   [3]   As the Court is aware, inmates are charged for every copy made at the institution,
28   this request was also intended to reduce the cost of the litigation for the *pro se* inmate
      litigants.

parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevance is to be construed broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted).

When a party fails to provide discovery and the parties' attempts to resolve the dispute without Court intervention are unsuccessful, the opposing party may seek an order compelling that discovery. Fed. R. Civ. P. 37(a). However, the party moving for an order to compel discovery bears the initial burden of informing the court: (1) which discovery requests are the subject of the motion to compel; (2) which of the responses are disputed; (3) why he believes the response is deficient; (4) why defendants' objections are not justified; and (5) why the information he seeks through discovery is relevant to the prosecution of this action. *Harris v. Kernan*, No. 2:17-cv-0680-TLN-KJN-P, 2019 WL 4274010, at *1 (E.D. Cal. Sept. 10, 2019); *see also Ellis v. Cambra*, No. 1:02-cv-05646-AWI-SMS-PC, 2008 WL 860523, at *4 (E.D. Cal. 2008) ("Plaintiff must inform the court which discovery requests are the subject of his motion to compel, and, for each disputed response, inform the court why the information sought is relevant and why defendant's objections are not justified.").

Thereafter, the party seeking to avoid discovery bears the burden of showing why that discovery should not be permitted. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The party resisting discovery "'must specifically detail the reasons why each request is irrelevant' [or otherwise objectionable,] and may not rely on boilerplate, generalized, conclusory, or speculative arguments." *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013) (quoting *Painters Joint Comm. v. Emp. Painters Trust Health & Welfare Fund*, No. 2:10-cv-1385 JCM (PAL), 2011 WL 4573349, at *5 (D. Nev. 2011). Arguments against discovery must be supported by specific examples and articulated reasoning. *U.S. E.E.O.C. v. Caesars Ent., Inc.*, 237 F.R.D. 428, 432 (D. Nev.

1 2006).

2 **III.    DISCUSSION**

3 **A.    Interrogatories**

4 Shaw asserts that the Court should order supplemental responses to various
5 interrogatories served on Defendants LeGrand, Baker, and Carpenter. A party may
6 propound interrogatories related to any matter that may be inquired into under Federal
7 Rule of Civil Procedure 26(b). Fed. R. Civ. P. 33(a)(2).

8 A party is obligated to respond to the fullest extent possible in writing under oath,
9 and the response must be signed by the answering party. Fed. R. Civ. P. 33(b)(3), (5).
10 An interrogatory is not objectionable merely because it asks for an opinion or contention
11 that relates to fact or the application of law to fact. Fed. R. Civ. P. 33(a)(2). However, if
12 an interrogatory is objectionable, the objection must be stated with specificity. Fed. R.
13 Civ. P. 33(b)(4); *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981). A district court
14 has broad discretion in deciding whether to require answers to interrogatories. *See* 8B
15 Wright & Miller, Federal Practice and Procedure § 2176 (3d ed. 2021).

16 A responding party is not generally required to conduct extensive research to
17 answer an interrogatory, but a reasonable effort to respond must be made. *Gorrell v.*
18 *Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013); *L.H. v. Schwarzenegger*, 2007 WL
19 2781132, *2 (E.D. Cal. Sept. 21, 2007). This does require that the responding party must
20 conduct a search for relevant information and must answer interrogatories after a diligent
21 search. *F.D.I.C. v. Halpern*, 271 F.R.D. 191, 193-94 (D. Nev. 2010). Thus, a responding
22 party "cannot limit its interrogatory answers to matters within its own knowledge and
23 ignore information immediately available to it or under its control". *Id.*

24 When a dispute arises out of the completeness of a search undertaken,
25 particularly when there is an absence of information that would have been expected to
26 be included, the responding party "must come forward with an explanation of the search
27 conducted with 'sufficient specificity to allow the Court to determine whether a
28 reasonable search'" was performed. *Cf. V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 366-

67 (D. Nev. 2019) (citation omitted).

The Court will address Shaw's arguments in turn.[4]

### 1.    Legrand Interrogatories 1 through 6 (Discovery Set 15)[5]

Shaw first takes issue with LeGrand's responses to Interrogatories 1 through 6. The full text and responses to these interrogatories are as follows:[6]

| Request for Discovery No. | Interrogatory |
|---|---|
| **1** | Identify the day, time and location for Alcoholic Anonymous meetings at LCC for Phase I inmates, how often they are scheduled, and any changes taking place since 2/1/18 to present. |
| **Response** | Due to the COVID-19 pandemic, since approximately March 16, 2020, outside volunteers have not been permitted to enter Lovelock Correctional Center; therefore there are currently no Alcoholic Anonymous meetings conducted by outside volunteers taking place.  I do not know when, or if, inmates informally participate in their own inmate run Alcoholics Anonymous meetings.  I have never been responsible for, or involved with, the scheduling of Alcoholics Anonymous meetings prior to sometime in approximately February or March of 2020, and due to the COVID-19 pandemic we were unable to proceed with allowing the volunteers into the institution for the Alcoholic Anonymous meeting which I was involved with working to schedule.  I have no personal knowledge regarding Alcoholic Anonymous meetings which may, or may not, have taken place at Lovelock Correctional Center prior to my involvement in working to schedule meetings with outside volunteers in approximately February or March of 2020, and also I have no personal knowledge regarding any change which many have taken place with respect to such meetings. |

---

[4]    Shaw's motion raises issues with Defendants' failure to provide verifications to various responses to interrogatories. Defendants filed an erratum to their opposition providing the necessary verifications to the discovery requests made by Shaw. (*See* ECF No. 173). Based on the Court's review, it appears that Defendants have provided proper verifications for the discovery responses provided to Shaw. Therefore, this issue has been resolved as to Shaw's discovery issues and any request to compel these items is denied as moot.

[5]    This number refers to the number assigned to this specific discovery document on a discovery table developed and used by Plaintiff, Defendants, and the Court throughout this case. (ECF No. 153-1.)

[6]    Objections have been summarized by the Court for brevity.

| | |
|---|---|
| **2** | Identify the day Identify the day, time and location for Narcotics Anonymous meetings at LCC for Phase I inmates, how often they are scheduled, and any changes taking place since 2/1/18 to present. |
| **Response** | Due to the COVID-19 pandemic, since approximately March 16, 2020, outside volunteers have not been permitted to enter Lovelock Correctional Center; therefore there are currently no Narcotics Anonymous meetings conducted by outside volunteers taking place.  I do not know when, or if, inmates informally participate in their own inmate run Narcotics Anonymous meetings. To date, I have not had any personal responsibility, or involvement with, the scheduling of Narcotics Anonymous meetings at Lovelock Correctional Center and, therefore, have no personal knowledge regarding Narcotics Anonymous meetings which may, or may not, have taken place at Lovelock Correctional Center. |
| **3** | Identify the day, time and location for "SCA" meetings at LCC for Phase I inmates, how often they are scheduled, and any changes taking place since 2/1/18 to present. |
| **Response** | I do not know what "SCA" stands for and therefore cannot provide a response Interrogatory as written. |
| **4** | Identify the day, time and location for Vietnam Veterans Association ("VVA") meetings at LCC for Phase I inmates, how often they are scheduled, and any change taking place since 2/1/18 to present. |
| **Response** | To date, I have not had any personal responsibility, or involvement with, the scheduling of Vietnam Veterans Association ("VVA") meetings at Lovelock Correctional Center and, therefore, have no personal knowledge regarding the scheduling of, and/or any change that may have taken place with respect to Vietnam Veterans Association ("VVA") meeting at Lovelock Correctional Center.  Notwithstandin, I have been advised that the Vietnam Veterans Association ("VVA") holds monthly meetings in the Lovelock Correctional Center Phase I Chow Hall. |
| **5** | Identify the day, time and location for Hiternaive [sic] to Violence Program meetings at LCC for Phase I inmates, how often they are scheduled, and any changes taking place since 2/1/18 to present. |

| | |
|---|---|
| **Response** | Due to the COVID-19 pandemic, since approximately March 16, 2020, outside volunteers have not been permitted to enter Lovelock Correctional Center; therefore there are currently no Alternatives to Violence Program at Lovelock Correctional Center and, therefore, have no personal knowledge regarding the scheduling of, and/or any changes that may have taken place with respect to, the Alternatives to Violence Program. Notwithstanding, to the best of my knowledge, the Alternatives to Violence Program for general population inmates usually takes place in the visiting room at Lovelock Correctional Center. |
| **6** | Identify the location and operational hours for the American Legion Office at LCC and the location for any meetings for its members. |
| **Response** | The American Legion and Vietnam Veterans Association ("VVA") office is currently located in the Unit 1B Activity Room.  To date, I have had no personal responsibility or involvement in scheduling American Legion meetings and/or office hours, and there have no personal knowledge regarding the same.  Notwithstanding, I have been advised that the American Legion hold monthly meetings in the Lovelock Correctional Center visiting room and that office hours are dependent upon the yard schedule. |

(ECF 153 at 3-7.)

In each of these Interrogatories, Shaw is essentially requesting information from LeGrand related to the day, time, and location of various non-religious groups at LCC, such as Alcoholics Anonymous, Narcotics Anonymous, "SCA" (Sexual Compulsion Anonymous)[7], the Vietnam Veterans Association, Alternatives to Violence, and the American Legion. (*Id.*) In each response, LeGrand ultimately claims that she could not provide responsive information to the interrogatories because she did not have personal responsibility or involvement in scheduling the meetings. (*Id.*) In short, LeGrand effectively claimed she didn't know the information necessary to respond.

As noted above, when responding to interrogatories, the responding party is

---

[7]     In response to Interrogatory 3, LeGrand refused to answer because she did not know what "SCA" stood for. (ECF No. 153 at 5-7). If this were the case, LeGrand could easily have determined that information by making a simple inquiry at the facility or through a simple meet and confer with Shaw. The Court finds this response to be improper and she and her counsel are advised that such conduct will not be tolerated in the future.

required to conduct a search for relevant information and answer interrogatories after that diligent search is complete. *Halpern*, 271 F.R.D. at 193-94. Such review requires the responding party to review documents or items within the party's possession, custody, and control. *Id.* at 194. "Control is defined as the legal right to obtain documents upon demand." *U.S. v. Int'll Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989); *In re Citric Acid Litigation*, 191 F.3d 1090, 1107 (9th Cir. 1999); *see also Mitchell v. Adams*, 2009 WL 674348, at *9 (E.D. Cal. Mar. 6, 2009) (warden of prison deemed to be in constructive control over documents related to prisoner civil rights case).

LeGrand is currently the Associate Warden of LCC. As the Associate Warden and as a current employee of the NDOC, she has control over information and documents that she could search in order to obtain the information necessary to adequately respond to interrogatories. Thus, LeGrand was, and is, required to at least look for information available to her that is related to the meetings involving these non-religious groups. She cannot simply claim she lacked responsibility or involvement for setting the meetings, without conducting any search of relevant information that she undoubtedly has both access to and control over.

Therefore, the Court agrees with Shaw and orders LeGrand to supplement her responses to Interrogatories 1-6 within 30 days of the date of this order. If she is unable to locate information to assist her in these responses, LeGrand is reminded that she is required to provide an explanation of the search she conducted with sufficient specificity to allow the Court to determine whether a reasonable search was performed. *Cf. V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 366-67 (D. Nev. 2019). Finally, her supplemental responses must contain proper verifications.

### 2.     Legrand - Interrogatories 7 through 9 (Discovery Set 17)

Next, Shaw argues LeGrand's responses to Interrogatories 7 through 9 are equally inadequate. The full text and responses of these interrogatories is as follows:

| Request for Discovery No. | Interrogatory |
| --- | --- |
| **7** | Identify each and every record you reviewed which support your contentions as stated in your official response to Informal Grievance No. 2006-30-63928. |
| **Response** | Objection – unduly burdensome<br>Notwithstanding this objection and without waiving it, Defendant states:  I do not recall what I reviewed when responding to Informal Level Grievance 2006-30-63928. Notwithstanding, I reference the following within my Response to Informal Level Grievance 2006-30-63298:  Nevada Department of Corrections Religious Practice Manual (Effective 09/05/17): Lovelock Correctional Center's 02/01/18 Chapel Schedule; and Administrative Regulation 810. |
| **8** | Did you meet with or interview any person relating to Informal Grievance No. 2006-30-63298 prior to completing your official response?  If so, provide the dates the meetings took place, identity of the person(s) you interviewed, and identify any document generated as a result of the meeting/interview. |
| **Response** | Objection – improperly compound and conjunctive<br>Notwithstanding . . . Defendant states:  I do not recall whether I met with or interviewed any person relating to Informal Level Grievance 2006-30-63928 prior to completing the response. |
| **9** | Did anyone give you any type of guidance, instruction, or information as to how you should respond to Informal Grievance 2006-30-63928?  If so, identify the person and state with specificity what guidance, instruction or information was provided to you. |
| **Response** | Objection – improperly compound and conjunctive<br>Notwithstanding . . . Defendant states:  I have no recollection of what occurred, or did not occur, at the time I was preparing my response to Informal Level Grievance 2006-30-63928.  I have no recollection as to receiving any type of guidance, instruction or information as to how to respond to Informal Level Grievance 2006-30-63928, and I cannot affirmatively state whether I may have discussed this grievance with anyone, or not as I have no specific recollection of responding to this grievance. |

(ECF No. 153 at 8-10.)

Shaw asserts that LeGrand answered these interrogatories by stating she has "no recollection." (*Id.*) Shaw argues that LeGrand should be compelled, after inquiry, to provide further responses, or if there is no evidence that she interviewed any person or

1    was provided with guidance, she should so state. (*Id.* at 10.)

2         Defendants responded that LeGrand is entitled to lack definitive knowledge after

3    making a reasonable inquiry, that she is not required to conduct an overly extensive

4    investigation if some obscure document might exist that would refresh her memory, and

5    that Shaw cannot coerce LeGrand to make a definitive response. (ECF No. 165 at 2.)

6    Defendants further state that if the Court requires additional information as to the

7    reasonably inquiry conducted by LeGrand to answer these interrogatories, LeGrand will

8    comply. (*Id.* at 2-3.)

9         As noted above, a responding party must conduct a search for relevant

10    information and must answer interrogatories after a diligent search. *Halpern*, 271 F.R.D.

11    at 193-94. Moreover, a responding party "cannot limit its interrogatory answers to

12    matters within its own knowledge and ignore information immediately available to it or

13    under its control". *Id.* at 193.

14         As such, the Court again agrees with Shaw that the responses provided by

15    LeGrand are insufficient. In response to these interrogatories, LeGrand states she simply

16    doesn't recall information related to the requests. However, LeGrand did not provide any

17    information about what, if any, search she did to locate any documents or records that

18    may be in her possession that could assist her in providing complete answers—such as

19    reviewing any calendars she may maintain related to meetings she may have had or

20    reviewing any correspondence (such as emails) that may be in her possession related to

21    the specific grievance, or the like. Rather, based on the information provided to the

22    Court, Legrand relied entirely upon her "own knowledge" and did not make any attempt

23    research any information to assist her in responding. (ECF Nos. 153, 165.)

24         Therefore, the Court orders LeGrand to supplement her responses to these

25    interrogatories, within 30 days of the date of this order, consistent with the requirements

26    stated above.[8] If, after making a reasonable inquiry into any available records she is still

27

28    [8]     It should be underscored that if LeGrand does not maintain any calendar or have

unable to recall the requesting information, she must provide an answer stating, under oath, that she does not recall and explain the steps taken to search for information relevant to the inquiry.

### 3.     Additional Interrogatories

Shaw's Motion also seeks an order compelling supplemental answers to the following interrogatories:

- Interrogatory 16 (Discovery Set 34) to Defendant LeGrand

- Interrogatories 4-8; 16-8 (Discovery Set 30) to Defendant Baker

- Interrogatory 1 (Discovery Set 31) to Defendant Carpenter

(ECF 153 at 10-16.)

In the opposition, it appears Defendants either concede, or agree, to provide supplementation to each of these items. Therefore, the Court grants Shaw's motion to compel Defendants to supplement the above interrogatories within 30 days of the date of this order. Moreover, the supplemental responses should be provided in a manner that is consistent with the standards and guidance set forth above in this order in that: (1) the responses must be verified; (2) a reasonable search must be conducted of items within the possession, custody, and control of the individual defendants;[9] and (3) the search conducted must be described and provided to Shaw.

### B.     Requests for Production of Documents

Shaw also asserts that the Court should order supplemental responses to several Requests for Production of Documents he served upon Defendants LeGrand, Davis, and

---

any records in her possession or control, she must explicitly state that in her supplemental responses.

[9]     It must be unscored that if any of these defendants are former employees of NDOC, they are not required to search records held by NDOC to provide supplemental answers. "Former employees of government agencies do not have 'possession, custody, or control' of documents held by their former employers." *Lowe v. District of Columbia*, 250 F.R.D. 36, 38 (D.D.C.2008).

Thomas. Pursuant to Federal Rule of Civil Procedure 34, a "party may serve on any other party a request within the scope of Rule 26(b)" for production of documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a). The requesting party "is entitled to individualized, complete responses to each of the [Requests for Production], . . . accompanied by production of each of the documents responsive to the request, regardless of whether the documents have already been produced." *Womack v. Gibbons*, No. 1:19-cv-00615-AWI-SAB-PC, 2021 WL 1734809, at *2 (E.D. Cal. May 3, 2021) (citing *Louen v. Twedt*, 236 F.R.D. 502, 505 (E.D. Cal. 2006). Failure to object to requests for production of documents within the time required constitutes a waiver of any objection. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).

### 1. LeGrand - Requests for Production 4 - 6 (Discovery Set 16)

First, Shaw requests an order compelling LeGrand to supplement her responses to Requests for Production of Documents 4 - 6, which requested the following:

| Request for Discovery No. | Request for Production |
|---|---|
| **4** | Each and every document relating to any investigations by NDOC/LCC staff relating to Grievance 2006-30-63298. |
| **5** | Each and every record, note, email, correspondence, NOTIS entry/document, and/or any other document relating to Grievance No. 2006-30-63298. |
| **6** | Each and every proposed responses [sic] relating to Grievance No. 2006-30-63298. |

(ECF No. 153 at 19-22.)

To each of these requests, LeGrand responded as follows:

Objection – overly broad, unduly vague, ambiguous and confusing, burdensome, beyond Defendant's personal knowledge
Notwithstanding . . . Defendant produced Grievance 2006-30-63298, with all documents, identified as Shaw 051: Def. LeGrand Resp. to Shaw RFPD [1] – 002-014, in response to No. 2 above.  Further, the Lovelock Correctional Center's February 1, 2018 Chapel Schedule, the January 18,

2018 memo from Associate Warden Carpenter to all inmates regarding the Chapel Schedule were produced and identified as SHAW 051: Def. Davis Resp. to Shaw RFPD [1] – 003-005, and AR 810 was produced and identified as SHAW 015: Def. Garrett Resp. to Shaw RFPD [1] 034-129. Defendant, however, produced AR 810.3 "Religious Practice Manual," effective September 5, 2017, identified as SHAW 051: Def. LeGrand Resp. to Cowart RFPD [1] – 014-047.  All of the above may be responsive to this request.

(*Id.*)

The Court has reviewed all the documents provided by LeGrand to Shaw in response to these interrogatories, which are contained on the thumb drive submitted to the Court. (ECF No. 176.) Based on this review, the Court finds that the documents provided are sufficient and provide the information that was requested. Therefore, the Court finds that no further supplementation is necessary with respect to Cowart's Requests for Production of Documents 4 - 6.

### 2.  Legrand - Requests for Production 8 - 10 (Discovery Set 16)

Next, Shaw seeks an order compelling LeGrand to supplement her responses to Requests for Production 8 - 10. The full text of the requests and responses are as follows:

| Request for Discovery No. | Request for Production |
|---|---|
| **8** | Each and every document showing, advising, or providing guidance on how you were to draft a response to Grievance 2006-30-63298. |
| **Response** | Objection – Argumentative, Plaintiff assumes Defendant received guidance, assumes facts as true without supporting evidence. Defendant has no documents responsive to this request in her possession. |
| **9** | All Chapel Schedules from other NDOC institutions you reviewed prior to the implementation of the 2/1/18 Chapel Schedule at LCC. |
| **Response** | Objection – Argumentative, Plaintiff assumes Defendant received guidance, assumes facts as true without supporting evidence. Defendant has no documents responsive to this request in her possession. |

| 10 | All documents relating to any input you received from the Religious Review Team prior to the implementation of the 2/1/18 LCC Chapel Schedule. |
|---|---|
| **Response** | Objection - Argumentative, Plaintiff assumes Defendant received guidance, assumes facts as true without supporting evidence, overly broad and burdensome<br>Notwithstanding . . . Defendant has no documents in her possession relating to input she received from the Religious Review Team pertaining to the issue addressed within Grievance 2006-30-63298. |

(ECF No. 153 at 22-24.)

In each response, LeGrand claims that she does not have any responsive documents "in her possession." However, as explained in Section III(A)(1), this is an improper response. Therefore, consistent with the above guidance in this order, LeGrand shall provide supplemental responses to these Requests for Production of Documents within 30 days of this Order. The supplemental answers must provide any documents located. If no documents can be located, LeGrand must provide a detailed declaration explaining the steps that were taken to search of responsive documents.

### 3.  LeGrand - Requests for Production 16 - 18 (Discovery Set 41)

Next, Shaw served Requests for Production of Documents 16 – 18 on LeGrand, a current NDOC employee, requesting information directly related to the assertions made in Baker's declaration related to the change in the LCC Chapel schedule. The full text of these requests are as follows:

| Request for Discovery No. | Request for Production |
|---|---|
| 16 | In Renee Baker's Declaration (ECF 72-7) she alleges she became aware inmates were engaging in sexual activities in the LCC Chapel from September 2016 thru December 2017.  Produce each document, statement, and/or other tangible item *that defendants intend to use (or can be used) as evidence to support this allegation.* |

| 17 | In Renee Baker's Declaration (ECF 72-7) she alleges she became aware inmates were selling drugs and other contraband in the LCC Chapel from September 2016 thru December 2017. Produce each document, statement, and/or other tangible item *that defendants intend to use (or can be used) as evidence to support this allegation.* |
|----|----|
| 18 | In Renee Baker's Declaration (ECF 72-7) she alleges she became aware inmates were engaging in other impermissible actions in the LCC Chapel from September 2016 thru December 2017. Produce each document, statement, and/or other tangible item *that defendants intend to use (or can be used) as evidence to support this allegation.* |

(ECF No. 153 at 24-26.) (emphasis added.)

LeGrand provided the same response to each request. Specifically, she stated the following:

> Objection – confidential and sensitive information about other inmates (if it exists), official information privilege, requesting Defendant to produce documents that another Defendant may or may not have reviewed is beyond Defendant's personal knowledge.[10]

(*Id.*) Shaw seeks an order compelling LeGrand to provide documents responsive to these requests. Shaw argues that the documents he is requesting are presumed to exist because of Baker's declaration, (ECF No. 72-7), and her response to his interrogatories. (ECF No. 153 at 26.) Shaw also argues that LeGrand failed to produce a privilege log or file a motion for protective order and now belatedly raises a "safety and security" claim and should produce documents *in camera* for the Court's review. (*Id.*) In opposition, LeGrand stated that if such documents exist it calls for the identification of confidential information about other inmates. (*Id.* at 25-26.) She also answered each request by

---

[10]     LeGrand's objection that she is being asked to produce documents that another Defendant "may or may not have used" to create her declaration is inaccurate. Shaw did not ask LeGrand to identify any documents Baker may or may not have used to draft her declaration. Rather, Shaw requested LeGrand to produce any documents that Defendants intend to use as evidence to support the allegations in Baker's declaration. The entire purpose of the rules of discovery are intended to ensure that either party receives the documents and information that the other party intends to use to support their claims or defenses.

stating that Shaw was requesting her to produce documents that another Defendant may or may not have reviewed, therefore, this was beyond her personal knowledge. (*Id.* at 25-26.) In response, LeGrand merely states that she is "willing to produce any disciplinary documents substantiating Baker's claims in her declaration for in camera review." (ECF No. 165 at 6.)

Therefore, the Court grants Shaw's motion to compel and orders LeGrand to produce *all documents* or records in her possession, custody, and control that are responsive to Interrogatories 16 – 18 for in camera review by no later than 30 days after the date of the entry of this order.[11]

### 4. Requests for Production of Documents re: Sign In Sheets

Shaw seeks an order compelling Defendants LeGrand and Davis to provide unredacted copies of sign-in sheets from meetings held at LCC during the relevant time period. These requests are as follows:

| Legrand Request for Discovery No. | Request for Production (Discovery Set 41) |
|---|---|
| 20 | Produce a copy of the sign-in sheet for the chapel based facilitators meeting held by Chaplain Davis on 7/19/2018 at 10:30 am in the LCC Chapel. |
| Response | Defendant produces the July 19, 2018, sign-in sheet, identified as SHAW 551:  Def. LeGrand Resp. to Shaw RFPD [2] – 050-***. |

(ECF No. 153 at 27.)

| Davis Request for Discovery No. | Request for Production (Discovery Set 1) |
|---|---|
| 2 | A copy of the sign-in sheet for the Faith Group Facilitators meeting you held in the LCC Chapel on 1/24/18. |

---

[11]    It must be underscored that the Requests are not limited merely to "disciplinary documents." Rather, these requests seek all documents or other items Defendants intend to use as evidence to support their claims in this case. Therefore, the Court's order is not limited to only "disciplinary documents" and Defendants should not limit their responses in this way.

| **Response** | The sign-in sheets are only retained for 2 years as they take up too much room, therefore, no longer exist. |
|---|---|
| **Supp. Response** | The sign-in sheets are generally only retained for 2 years as they take up too much room. Defendant has reviewed the file in which the sign-in sheets are kept, as well as other places in his office and at LCC where sign-in sheets could be kept, and Defendant could not locate the sought sign-in sheets. *See, generally,* Declaration of Scott Davis. |

(ECF No. 153 at 16-17.)

LeGrand produced the July 19, 2018, sign-in sheet, however, it is heavily redacted. (*Id.* at 27.) Shaw argues LeGrand should be compelled to produce an unredacted version. (*Id.*) In addition, Shaw argues that Davis should be required to produce an unredacted version of the Religious Facilitators list that LeGrand produced as Exhibit 5, DI #21, doc. 100-101, which was also heavily redacted. (*Id.* at 17.)

Defendants object to the production of the unredacted sign-in sheet from LeGrand for safety and security reasons. (ECF No. 165 at 6.) Defendants further object to the production of the unredacted lists requested from Davis as Defendants claim the lists contain sensitive information regarding positions other inmates held, or still hold, in the chapel which could pose a potential threat to institutional safety. (*Id.* at 4.)

The Court finds that Defendants have failed to explain how providing unredacted versions of these lists would provide a safety or security concern. Rather, Defendant merely states—without any explanation, evidence, or citation to any institutional policy or rule—that releasing the unredacted information creates a "safety and security concern." Therefore, the Court overrules Defendants' objection and orders Defendants to produce unredacted versions of these documents within 30 days of the date of this order.

### 5. Thomas - Request for Production 1 (Discovery Set 8)

| **Request for Discovery No.** | **Request for Production** |
|---|---|
| **1** | Each and every Chapel Schedule from each and every NDOC institution facility for the period of June 2017 thru June 2018. |

| | | |
|---|---|---|
| **Response** | Objection – previously propounded, continuous discovery, oppressive<br>Notwithstanding . . . Defendant produces the June 2017 through January 2018 Chapel Schedules, that could be located, identified as SHAW 551:  Def. Thomas Resp. to Shaw RFPD [2] – 008-013.  See response to RFPD No. 1, set, for 2018. |

(ECF No. 153 at 17.)

Thomas produced the June 2017, through January 2018, Chapel Schedules. (*Id.* at 18.) Shaw argues, however, that he is requesting each and every Chapel schedule for the six-month period before and after February 1, 2018, from each NDOC institution because Baker claimed inconsistency of LCC's chapel schedule with other NDOC institutions in her declaration. (*Id.* at 18.)

Defendants responded that Shaw is seeking a total of 192 separate chapel schedules from 16 institutions making this request overbroad and not proportional to the needs of this case.  (ECF No. 165 at 4-5.)

Defendants' arguments lack merit. One of the assertions from Defendants in this case for changing the LCC Chapel schedule is that the LCC schedule was inconsistent with other NDOC institutions. Therefore, the request seeks relevant evidence. Moreover, the requests seek documents for a limited period of time—only one year—between June 2017, to June 2018. This request is narrow in time, and it does not appear that gathering these schedules would create a significant burden of time or resources for Defendants. In fact, it appears that Defendants already have these items gathered—given that they were able to state that "192 separate chapel schedules exist." (*Id.* at 4.) Therefore, the Court grants Shaw's motion to compel Thomas to supplement his request to Request for Production 1 within 30 days of the date of this order.

### 6.  Thomas - Request for Production 2 (Discovery Set 8)

| **Request for Discovery No.** | **Request for Production** |
|---|---|
| **2** | Each and every Operational Procedure ("OP") 810 and/or Institutional Procedure ("IF") 810, in effect from June 2017 thru June 2018 for each and every NDOC institution/facility. |

| Response | Defendant produces OP 810, identified as SHAW 551:  Def. Thomas Resp. to Shaw RFPD [2] – 014-081. |
| --- | --- |

(ECF No. 153 at 18.)

Thomas produced OP 810 for FMWCC (the women's prison) for the requested period but failed to produce any other OP 810 for the other institutions. (*Id.*)

Defendants responded that each OP 810 for every NDOC institution is not proportional to the needs of this case. (ECF No. 165 at 5.) However, Defendants will produce this if required by the Court. (*Id.*)

Here again, the Court disagrees with Defendants that this request is disproportional to the needs of the case. It is appropriately limited to only a one-year time frame and limited to only the policies in place during this limited time period. Therefore, the Court grants Shaw's motion to compel Thomas to supplement his request to Request for Production 2 within 30 days of the date of this order.

### C.    Snyder Discovery Requests

Shaw asserts Defendant Richard Snyder was served with interrogatories on November 18, 2020 and failed to respond. (ECF No. 153 at 16.)  Defendants indicated that they have been attempting to reach Snyder and have learned that Snyder had been experiencing serious COVID-19 complications requiring multiple hospitalizations. (ECF No. 165 at 4.) Defendants will obtain responses from Snyder once he is healthy. (*Id.*)

However, since the filing of these documents, Defendants filed a "Suggestion of Death on the Record," indicating that Snyder passed away on June 20, 2021. (ECF No. 170.) The Court has since ordered Plaintiffs to file a motion for substitution for Defendant Snyder. (ECF No. 171.) Therefore, Shaw's motion to compel discovery responses from Snyder is denied as moot.

### IV.    CONCLUSION

**IT IS THEREFORE ORDERED** that Shaw's motion to compel production of discovery (ECF No. 153) is **GRANTED,** in part, and **DENIED**, as follows:

1)    As to LeGrand Interrogatories 1-6 (Set 15), 7-9 (Set 17) and 16 (Set 34) and LeGrand Request for Production of Documents 8-10 (Set 16) and 20 (Set 4), the motion is **GRANTED**. LeGrand shall supplement her responses to these discovery requests no later 30 days from the date of this order.

2)    As to LeGrand Requests for Production 8-10 (Set 16) and 16-18 and 20 (Set 41), the motion is **GRANTED**. LeGrand shall provide all documents and items responsive these requests within 30 days from the date of this order to the Court for an in-camera review;

3)    As to LeGrand Requests for Production 4-6 (Set 16), the motion is **DENIED**.

4)    As to Baker Interrogatories 4-8 and 16-18 (Set 31), the motion is **GRANTED**. Baker shall supplement her responses to these discovery requests no later 30 days from the date of this order.

5)    As to Carpenter Interrogatory 1 (Set 31), the motion is **GRANTED**. Carpenter shall have 30 days from the date of this order to supplement the response to this interrogatory.

6)    As to Davis Request for Production 2 (Set 1), the motion is **GRANTED**. Davis shall have 30 days from the date of this order to supplement the response to this interrogatory.

7)    As to Thomas Requests for Production 1-2 (Set 8), the motion is **GRANTED**. Thomas shall have 30 days from the date of this order to supplement the responses to these interrogatories.

8)    As to the Synder discovery requests, the motion is **DENIED** as moot.

**DATED**: August 31, 2021

_____
**UNITED STATES MAGISTRATE JUDGE**