# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NORMAN SHAW, *et al.*, | Case No. 3:18-CV-0551-MMD-CLB |
| Plaintiffs, | |
| v. | **ORDER GRANTING, IN PART, AND DENYING, IN PART, WIRTH'S MOTION TO COMPEL** |
| SCOTT DAVIS*, et al.*, | |
| Defendants. | [ECF No. 160] |

Before the Court is Plaintiff Charles Wirth's ("Wirth") amended motion to compel discovery from Defendant K. LeGrand ("LeGrand"). (ECF No. 160.) LeGrand opposed the motion, (ECF No. 163), and Wirth replied. (ECF No. 169.) Having considered all the above, the motion is granted, in part, and denied, in part, as stated below.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   Factual Background

At the time of the filing of the complaint, Wirth was an inmate in the custody of the Nevada Department of Corrections ("NDOC"), but Wirth has since been paroled. (*See* ECF No. 94.) Proceeding *pro se*, Wirth and four other Plaintiffs[1] filed the instant civil rights action pursuant to 42 U.S.C. § 1983 for events that occurred while Plaintiffs were incarcerated at the Lovelock Correctional Center ("LCC"). (ECF Nos. 12, 39.)

Plaintiffs allege various claims and seek declaratory, injunctive, and monetary relief. Specifically, Plaintiffs sued Defendants Chaplain Scott Davis, Associate Warden Tara Carpenter, RRT Committee Harold Wickham, RRT Committee Richard Snyder,

---

[1]   Norman Shaw, Brian Kamedula, Charles Wirth, Ansell Jordan, and Joseph Cowart (collectively referred to as "Plaintiffs").

Prison Administration,[2] Caseworker K. LeGrand, Caseworker J. Ferro, Caseworker C. Potter, Warden Renee Baker, Deputy Director Kim Thomas, John Doe #1, and John Doe #2. (ECF 39.)

The complaint alleges, in summary, that prior to February 1, 2018, the chapel schedule at LCC accommodated all the various religious faith groups and provided sufficient time and space for each faith group to practice their respective religions. (*Id.* at 3.) On January 18, 2018, Carpenter issued a memo notifying all inmates that a new chapel schedule would be implemented. (*Id.* at 5.) On January 24, 2018, Davis held a meeting with the religious faith group facilitators and said that major changes were going to be effective February 1, 2018. (*Id.* at 5-6.)

On February 1, 2018, Davis, Carpenter, Wickham, Snyder, Doe #1, and Doe Prison Administration reduced chapel services by over 50% and some faith groups were eliminated completely. (*Id.* at 6-11.) The five Plaintiffs are members of different faith groups. (*Id.* at 7-10.) Plaintiffs allege that Episcopal, "The Way," KAIROS, and Nation of Islam faith groups all suffered either a reduction in chapel time or were eliminated or changed in a manner which placed a substantial burden on each of their abilities to practice the tenets of their religion. (*Id.*)

K. Thomas, Baker, Carpenter, Ferro, LeGrand, and Potter responded that the reasons for the changes were for statewide consistency of the religious program and adequate staff oversight. (*Id.* at 11-13.) However, LCC chapel services did not and still do not require a chaplain, outside sponsor, correctional officer, or other staff member be present in the chapel for religious services. (*Id.* at 12-13.)

On June 18, 2019, the District Court screened the complaint and allowed Plaintiffs to proceed as follows: (1) in Count I, alleging Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") violations against Defendants Davis, Carpenter, Wickham, Snyder, K. Thomas, Baker, Ferro, LeGrand, Potter, Doe #1 and Doe Prison

---

[2] Plaintiffs state that Defendants "Prison Administration" are "Doe" defendants that Plaintiffs will learn the identities of during discovery. (*See* ECF No. 12 at 8, n.1.)

Administration; (2) in Count II, alleging Fourteenth Amendment equal protection violations against Davis, Carpenter, Wickham, Snyder, Doe #1 and Doe Prison Administration; (3) in Count III, alleging RLUIPA and Fourteenth Amendment equal protection violations against Defendants LeGrand, Ferro, Potter, Baker, Carpenter, Thomas, and Doe #2; (4) the portion of Count IV alleging First Amendment Establishment Clause violations against Defendants Wickham, Snyder, Baker, Carpenter, Davis, Doe #1 and Doe Prison Administration; (5) the portion of Count IV alleging First Amendment Free Exercise Clause violations against Defendants Wickham, Snyder, Baker, Carpenter, Davis, Doe #1 and Doe Prison Administration; and, (6) the portion of Count IV alleging 42 U.S.C. § 1985(3) conspiracy against Defendants Wickham, Snyder, Baker, Carpenter, Davis, Doe #1 and Doe Prison Administration. (ECF No. 11.)

On January 21, 2020, Plaintiffs filed their First Amended Complaint ("FAC"), (ECF No. 39), which is now the operative complaint in this case. The allegations contained in Counts I through IV of the original complaint and the FAC are identical. (*Compare* ECF No. 12 at 5-22, *with* ECF No. 39 at 3-20.) Accordingly, Plaintiffs were permitted to proceed on Counts I through IV as outlined above. Plaintiffs were also permitted to add Count V alleging retaliation against Defendants Davis and Carpenter. (ECF No. 68.)

### B. Discovery Process

The Court entered the discovery scheduling order which required discovery to be completed by October 20, 2020. (ECF No. 88.) The Court granted two extensions to the scheduling order resulting in discovery ending on April 21, 2021. (ECF Nos. 90, 136.) Due to the complexity created by the number of *pro se* litigants, the Court took an active role in the discovery process to assist the parties and streamline the litigation. In total, the Court held four case management conferences ("CMC") over the course of this litigation. (*See* ECF Nos. 101, 135, 145, 151.) Various discovery issues were addressed at the CMCs. After several attempts by the parties to meet and confer, there were still several issues that could not be resolved.

Thus, at the final CMC held on April 28, 2021, the Court set a briefing schedule for each Plaintiff to file an individual motion to compel related to any outstanding discovery requests from Defendants. (ECF No. 151). The Court set forth the requirements for each motion and explicitly indicated that Plaintiffs were not required to include a declaration setting forth the details and results of each disputed discovery request as the Court will assume that the parties have made a good faith effort to meet and confer regarding the discovery disputes. (*Id.*)

The Court also requested that the Office of the Attorney General provide the Court with copies of all discovery requests made in this case, all responses provided, and all the documents provided in response to the discovery requests. The purpose of this request was intended to limit the need for the parties to attach voluminous copies of each discovery request and response as exhibits,[3] and to provide the Court with easy access to evaluate whether the documents provided in response to the discovery requests was sufficient. A thumb drive containing these documents was received by the Court on May 27, 2021. (ECF No. 176.)

Pursuant to the Court's Order, Wirth filed the instant amended motion to compel discovery seeking to compel answers (or further answers) to Requests for Production of Documents from LeGrand. (ECF No. 160.)

**II.     LEGAL STANDARD**

"[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). The "scope of discovery" encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In analyzing proportionality, the Court must consider the need for the information sought based upon "the importance of the issues at stake in the action, the amount in controversy, the

---

[3]     As the Court is aware, inmates are charged for every copy made at the institution, this request was also intended to reduce the cost of the litigation for the *pro se* inmate litigants.

4

parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevance is to be construed broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted).

When a party fails to provide discovery and the parties' attempts to resolve the dispute without Court intervention are unsuccessful, the opposing party may seek an order compelling that discovery. Fed. R. Civ. P. 37(a). However, the party moving for an order to compel discovery bears the initial burden of informing the court: (1) which discovery requests are the subject of the motion to compel; (2) which of the responses are disputed; (3) why he believes the response is deficient; (4) why defendants' objections are not justified; and (5) why the information he seeks through discovery is relevant to the prosecution of this action. *Harris v. Kernan*, No. 2:17-cv-0680-TLN-KJN-P, 2019 WL 4274010, at *1 (E.D. Cal. Sept. 10, 2019); *see also Ellis v. Cambra*, No. 1:02-cv-05646-AWI-SMS-PC, 2008 WL 860523, at *4 (E.D. Cal. 2008) ("Plaintiff must inform the court which discovery requests are the subject of his motion to compel, and, for each disputed response, inform the court why the information sought is relevant and why defendant's objections are not justified.").

Thereafter, the party seeking to avoid discovery bears the burden of showing why that discovery should not be permitted. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The party resisting discovery "'must specifically detail the reasons why each request is irrelevant' [or otherwise objectionable,] and may not rely on boilerplate, generalized, conclusory, or speculative arguments." *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013) (quoting *Painters Joint Comm. v. Emp. Painters Trust Health & Welfare Fund*, No. 2:10-cv-1385 JCM (PAL), 2011 WL 4573349, at *5 (D. Nev. 2011). Arguments against discovery must be supported by specific examples and articulated reasoning. *U.S. E.E.O.C. v. Caesars Ent., Inc.*, 237 F.R.D. 428, 432 (D. Nev.

2006).

## III.  DISCUSSION

First, Wirth asserts that LeGrand failed to respond to his Requests for Production of Documents 2, 3, 4, 5, and 6, which are as follows:

| Request for Discovery No. | Request for Production |
|---|---|
| 2 | All LCC memos relating to the October 2011 Kairos three-day event held in the LCC Chapel, on or about, October 28-30, 2011. |
| 3 | All LCC memos relating to the October 2010 Kairos three-day event held in the LCC Chapel, on or about, October 29-31, 2010. |
| 4 | All LCC memos relating to the October 2009 Kairos three-day event held in the LCC Chapel, on or about, October 30, 2009. |
| 5 | All LCC memos relating to the Kairos three-day weekends held in the LCC Chapel in the month of October for the years 2012 thru 2015. |
| 6 | All Faith Group Affiliation forms for former inmate Charles Wirth, #1085646, from date of incarceration thru April 2020. |

(ECF No. 160.)

In response to Requests 2-4, LeGrand stated that "no memos could be located as they no longer exist pursuant to the retention schedule of 3 years." (*Id.* at 5-6). As to Request 5, LeGrand provided some documents for Kairos events that occurred in 2014, however, she indicated that no documents could be located for events occurring in 2012 and 2013 as those documents also no longer existed. Finally, as to Request 6, LeGrand responded by stating, "as Plaintiff is no longer incarcerated, his I-File is at an offsite storage facility. Therefore, Defendant will supplement this request upon recipe [sic]."

As a starting point, the party seeking to compel the production of discovery has the initial burden of establishing that the discovery it seeks is relevant to the lawsuit. *FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.,* No. 15CV1879-BEN (BLM), 2017 WL 951037, at *2 (S.D. Cal. Mar. 9, 2017). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of "clarifying, explaining, and supporting its objections." *DIRECTV, Inc. v. Trone*, 209

1  F.R.D. 455, 458 (C.D. Cal. 2002) (citing *Blankenship,* 519 F.2d at 429). Here, Wirth has
2  failed to meet his initial burden to establish that the documents he is seeking LeGrand to
3  provide in Requests 2-4 and portions of Request 5 are relevant to this lawsuit. This case
4  arises from alleged changes to the LCC Chapel schedule that occurred in 2018. (ECF
5  39.) However, Requests 2-4 and portions of Request 5 seek documents related to
6  events that occurred at LCC between 2009 to 2013—several years before the LCC
7  Chapel schedule was changed or any of the events giving rise to this lawsuit took place.
8  Wirth's Motion is devoid of any information or argument as to how these records, related
9  to events that pre-dated the events in this lawsuit by several years, are relevant to this
10 action in any way whatsoever.

11      However, even if Wirth could establish that these documents have some, minimal
12 relevance to this action, requiring LeGrand to conduct extensive additional searches in
13 an attempt to locate this information is disproportional to the needs of the case. Although
14 the amount in controversy in this case is not entirely clear, it is unlikely that significant
15 amounts of damages are at issue. By contrast, to attempt to locate the documents
16 requested by Wirth, LeGrand would be required to search for records that are several
17 years old and appear to have been destroyed pursuant to NDOC retention policy. Such
18 a search would place a significant burden on LeGrand in both time and effort while
19 providing little, to no, relevant information to this case.

20     Finally, Wirth's argument that these memos are maintained in the LCC Chapel by
21 the Kairos faith group facilitators and LeGrand should seek assistance from inmate
22 Daniel Quatrini[4] to locate said documents, is unavailing. (ECF No. 160 at 6.) Contrary to
23 Wirth's argument, Rule 34(a)(1) requires a responding party to produce documents in its
24 possession, custody, or control. Fed. R. Civ. P. 34(a)(1); *Acosta v. Wellfleet Commc'ns,*
25 *LLC*, No. 2:16-cv-02353-GMN-GWF, 2018 WL 664779, at *7 (D. Nev. Feb. 1, 2018). A
26 responding party is *not* required to obtain documents from a third-party nor can it be

---

[4] Daniel Quatrini is an inmate and apparently a member of the Kairos faith group. (ECF No. 169.)

7

compelled to produce documents that it claims does not exist. *Acosta v. JY Harvesting, Inc.*, 2017 WL 3437654, at *3 (S.D. Cal. Aug. 10, 2017). Neither the Kairos faith group facilitators nor Quatrini are parties to this litigation. Moreover, the documents held by the faith group facilitators and/or Mr. Quatrini are not in the possession, custody, or control of LeGrand. Therefore, LeGrand is not obligated to obtain these records from the Kairos faith group facilitators or Mr. Quartrini, nor can this Court compel her to do so.

For all these reasons, the Court denies Wirth's request to compel the production of documents in response to Requests 2, 3, 4, and the portions of Request 5 related to years 2012 and 2013.

As to Request 6, however, LeGrand specifically indicated that she would supplement her response to this request upon receipt of Wirth's I-file. There is no indication whether that supplementation was provided, and LeGrand's response to the motion is silent on this issue. Therefore, the Court grants Wirth's motion to compel Legrand to supplement her response to Request 6 and orders the response to Request 6 be supplemented within 30 days of the date of this order.

## IV.    CONCLUSION

**IT IS THEREFORE ORDERED** that Wirth's motion to compel, (ECF No. 160), is **GRANTED**, in part, and **DENIED**, in part, as follows:

1) As to Wirth's Requests for Production of Documents 2, 3, 4, and 5, the motion is **DENIED**.

2) As to Wirth's Request for Production of Documents 6, the motion is **GRANTED**. LeGrand must supplement her response to Wirth's Request for Production of Documents 6 no later than 30 days from the date of this order.

**DATED**: August 31, 2021.

_____
**UNITED STATES MAGISTRATE JUDGE**