**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

NORMAN SHAW, *et al.*,

    Plaintiffs,

v.

SCOTT DAVIS, *et al.*,

    Defendants.

Case No. 3:18-CV-0551-MMD-CLB

**ORDER GRANTING, IN PART, AND DENYING, IN PART, KAMEDULA'S MOTION TO COMPEL**

[ECF No. 157]

Before the Court is Plaintiff Brian Kamedula's ("Kamedula") motion to compel discovery from Defendants Kim Thomas ("Thomas") and Kara LeGrand ("LeGrand") (collectively referred to as "Defendants"). (ECF No. 157.)  Defendants opposed the motion, (ECF No. 164), and Kamedula replied. (ECF No. 175).  Having considered all the above, the motion is granted, in part, and denied, in part, as stated below.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    **A.  Factual Background**

At the time of filing the complaint, Kamedula was an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently on parole. (*See* ECF Nos. 39, 125.) Proceeding *pro se*, Kamedula and four other Plaintiffs[1] filed the instant civil rights action pursuant to 42 U.S.C. § 1983 for events that occurred while Plaintiffs were incarcerated at the Lovelock Correctional Center ("LCC"). (ECF Nos. 12, 39.)

Plaintiffs allege various claims and seek declaratory, injunctive, and monetary relief. Specifically, Plaintiffs sued Defendants Chaplain Scott Davis, Associate Warden Tara Carpenter, RRT Committee Harold Wickham, RRT Committee Richard Snyder,

---

[1]   Norman Shaw, Brian Kamedula, Charles Wirth, Ansell Jordan, and Joseph Cowart (collectively referred to as "Plaintiffs").

Prison Administration,[2] Caseworker K. LeGrand, Caseworker J. Ferro, Caseworker C. Potter, Warden Renee Baker, Deputy Director Kim Thomas, John Doe #1, and John Doe #2. (ECF No. 39.)

The complaint alleges, in summary, that prior to February 1, 2018, the chapel schedule at LCC accommodated all the various religious faith groups and provided sufficient time and space for each faith group to practice their respective religions. (*Id.* at 3.) On January 18, 2018, Carpenter issued a memo notifying all inmates that a new chapel schedule would be implemented. (*Id.* at 5.) On January 24, 2018, Davis held a meeting with the religious faith group facilitators and said that major changes were going to be effective February 1, 2018. (*Id.* at 5-6.)

On February 1, 2018, Davis, Carpenter, Wickham, Snyder, Doe #1, and Doe Prison Administration reduced chapel services by over 50% and some faith groups were eliminated completely. (*Id.* at 6-11.) The five Plaintiffs are members of different faith groups. (*Id.* at 7-10.) Plaintiffs allege that Episcopal, "The Way," KAIROS, and Nation of Islam faith groups all suffered either a reduction in chapel time or were eliminated or changed in a manner which placed a substantial burden on each of their abilities to practice the tenets of their religion. (*Id.*)

K. Thomas, Baker, Carpenter, Ferro, LeGrand, and Potter responded that the reasons for the changes were for statewide consistency of the religious program and adequate staff oversight. (*Id.* at 11-13.) However, LCC chapel services did not and still do not require a chaplain, outside sponsor, correctional officer, or other staff member be present in the chapel for religious services. (*Id.* at 12-13.)

On June 18, 2019, the District Court screened the complaint and allowed Plaintiffs to proceed as follows: (1) in Count I, alleging Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") violations against Defendants Davis, Carpenter, Wickham, Snyder, K. Thomas, Baker, Ferro, LeGrand, Potter, Doe #1 and Doe Prison

---

[2] Plaintiffs state that Defendants "Prison Administration" are "Doe" defendants that Plaintiffs will learn the identities of during discovery. (*See* ECF No. 12 at 8, n.1.)

2

Administration; (2) in Count II, alleging Fourteenth Amendment equal protection violations against Davis, Carpenter, Wickham, Snyder, Doe #1 and Doe Prison Administration; (3) in Count III, alleging RLUIPA and Fourteenth Amendment equal protection violations against Defendants LeGrand, Ferro, Potter, Baker, Carpenter, Thomas, and Doe #2; (4) the portion of Count IV alleging First Amendment Establishment Clause violations against Defendants Wickham, Snyder, Baker, Carpenter, Davis, Doe #1 and Doe Prison Administration; (5) the portion of Count IV alleging First Amendment Free Exercise Clause violations against Defendants Wickham, Snyder, Baker, Carpenter, Davis, Doe #1 and Doe Prison Administration; and, (6) the portion of Count IV alleging 42 U.S.C. § 1985(3) conspiracy against Defendants Wickham, Snyder, Baker, Carpenter, Davis, Doe #1 and Doe Prison Administration. (ECF No. 11.)

On January 21, 2020, Plaintiffs filed their First Amended Complaint (ECF No. 39), which is now the operative complaint in this case. The allegations contained in Counts I through IV of the original complaint and the FAC are identical. (*Compare* ECF No. 12 at 5-22, *with* ECF No. 39 at 3-20.) Accordingly, Plaintiffs were permitted to proceed on Counts I through IV as outlined above. Plaintiffs were also permitted to add Count V alleging retaliation against Defendants Davis and Carpenter. (ECF No. 68.)

### B. Discovery Process

The Court entered the discovery scheduling order which required discovery to be completed by October 20, 2020. (ECF No. 88.) The Court granted two extensions to the scheduling order resulting in discovery ending on April 21, 2021. (ECF Nos. 90, 136.) Due to the complexity created by the number of *pro se* litigants, the Court took an active role in the discovery process to assist the parties and streamline the litigation. In total, the Court held four case management conferences ("CMC") over the course of this litigation. (*See* ECF Nos. 101, 135, 145, 151.) Various discovery issues were addressed at the CMCs. After several attempts by the parties to meet and confer, there were still several issues could not be resolved.

Thus, at the final CMC held on April 28, 2021, the Court set a briefing schedule for each Plaintiff to file an individual motion to compel related to any outstanding discovery requests from Defendants. (ECF No. 151.) The Court set forth the requirements for each motion and explicitly indicated that Plaintiffs were not required to include a declaration setting forth the details and results of each disputed discovery request as the Court will assume that the parties have made a good faith effort to meet and confer regarding the discovery disputes. (*Id.*)

The Court also requested that the Office of the Attorney General provide the Court with copies of all discovery requests made in this case, all responses provided, and all the documents provided in response to the discovery requests. The purpose of this request was intended to limit the need for the parties to attach voluminous copies of each discovery request and response as exhibits,[3] and to provide the Court with easy access to evaluate whether the documents provided in response to the discovery requests were sufficient. A thumb drive containing these documents was received by the Court on May 27, 2021. (ECF No. 176.)

Pursuant to the Court's Order, Kamedula filed the instant motion to compel seeking supplementation of answers to certain Interrogatories and Requests for Production of Documents served on Thomas and LeGrand. (ECF No. 157.)

**II.    LEGAL STANDARD**

"[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). The "scope of discovery" encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In analyzing proportionality, the Court must consider the need for the information sought based upon "the importance of the issues at stake in the action, the amount in controversy, the

---

[3]    As the Court is aware, inmates are charged for every copy made at the institution, this request was also intended to reduce the cost of the litigation for the *pro se* inmate litigants.

parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevance is to be construed broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted).

When a party fails to provide discovery and the parties' attempts to resolve the dispute without Court intervention are unsuccessful, the opposing party may seek an order compelling that discovery. Fed. R. Civ. P. 37(a). However, the party moving for an order to compel discovery bears the initial burden of informing the court: (1) which discovery requests are the subject of his motion to compel; (2) which of the responses are disputed; (3) why he believes the response is deficient; (4) why defendants' objections are not justified; and (5) why the information he seeks through discovery is relevant to the prosecution of this action." *Harris v. Kernan*, No. 2:17-cv-0680-TLN-KJN-P, 2019 WL 4274010, at *1 (E.D. Cal. Sept. 10, 2019); *see also Ellis v. Cambra*, No. 1:02-cv-05646-AWI-SMS-PC, 2008 WL 860523, at *4 (E.D. Cal. 2008) ("Plaintiff must inform the court which discovery requests are the subject of his motion to compel, and, for each disputed response, inform the court why the information sought is relevant and why defendant's objections are not justified.").

Thereafter, the party seeking to avoid discovery bears the burden of showing why that discovery should not be permitted. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The party resisting discovery "'must specifically detail the reasons why each request is irrelevant' [or otherwise objectionable,] and may not rely on boilerplate, generalized, conclusory, or speculative arguments." *See, e.g., F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013) (quoting *Painters Joint Comm. v. Emp. Painters Trust Health & Welfare Fund*, No. 2:10-cv-1385 JCM (PAL), 2011 WL 4573349, at *5 (D. Nev. 2011). Arguments against discovery must be supported by specific examples and articulated reasoning. *U.S. E.E.O.C. v. Caesars Ent., Inc.*, 237 F.R.D. 428, 432 (D. Nev.

2006).

## III. DISCUSSION

### A. Interrogatory 5 to Thomas

Kamedula's motion first seeks a supplemental response from Thomas to the following interrogatory:

| Request for Discovery No. | Interrogatory |
|---|---|
| 5 | Identify each member of the RRT Committee from 3/29/16 thru 2/1/18 (follow the instructions for identifying a person as stated above). |

(ECF No. 157 at 4). Thomas answered interrogatory 5 by stating he would supplement upon compiling the information. At the time of the filing of the motion, Thomas failed to do so. (*Id.* at 5.)

Defendants responded that NDOC Deputy Director Wickham answered interrogatories on behalf of Thomas, who is retired, and there is no objection to supplementing this interrogatory response. (ECF No. 164.) Therefore, the Court orders Thomas to provide a verified supplemental response to Kamedula's Interrogatory 5 within 30 days of the date of this order.

### B. Requests for Production 4, 5, & 6 to LeGrand

Next, Kamedula seeks an order compelling LeGrand to supplement her responses to Requests for Production of Documents 4, 5, and 6. The full text and responses to these Requests for Production are as follows:

| Request for Discovery No. | Request for Production |
|---|---|
| 4 | Each and every document relating to any investigations by NDOC/LCC staff relating to Grievance 2006-30-64237. |
| Response | Objection – beyond Defendant's personal knowledge as Defendant was not assigned to respond to this grievance<br>Notwithstanding . . . , Defendant produced Grievance 2006-30-64237, with all documents, identified as Shaw 051: Def. LeGrand Resp. to Kamedula RFPD [1] – 003-017, in response to No. 2 |

| | | |
|---|---|---|
| | | above.  Defendant has no knowledge of other documents related to this grievance. |
| | **5** | Each and every record, note, email, correspondence, NOTIS entry/document, and/or any other document relating to Grievance no. 2006-30-64237. |
| | **Response** | Objection – beyond Defendant's personal knowledge as Defendant was not assigned to respond to this grievance<br>Notwithstanding . . . , Defendant produced Grievance 2006-30-64237, with all documents, identified as Shaw 051: Def. LeGrand Resp. to Kamedula RFPD [1] – 003-017, in response to No. 2 above.  Defendant has no knowledge of any other documents related to this grievance. |
| | **6** | Each and every proposed responses [sic] relating to Grievance No. 2006-30-64237. |
| | **Response** | Objection – beyond Defendant's personal knowledge<br>Notwithstanding . . . , Defendant produced Grievance 2006-30-64237, with all documents, identified as Shaw 051: Def. LeGrand Resp. to Kamedula RFPD [1] – 003-017, in response to No. 2 above.  Defendant has no knowledge of any other documents related to this grievance. |

(ECF No. 157 at 5-6.)

Pursuant to Federal Rule of Civil Procedure 34, a "party may serve on any other party a request within the scope of Rule 26(b)" for production of documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a). "The requesting party 'is entitled to individualized, complete responses to each of the [Requests for Production], . . . accompanied by production of each of the documents responsive to the request, regardless of whether the documents have already been produced.'" *Womack v. Gibbons*, No. 1:19-cv-00615-AWI-SAB-PC, 2021 WL 1734809, at *2 (E.D. Cal. May 3, 2021) (citing *Louen v. Twedt*, 236 F.R.D. 502, 505 (E.D. Cal. 2006). Failure to object to requests for production of documents within the time required constitutes a waiver of any objection. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).

Despite not being assigned to answer Grievance No. 2006-30-64237, LeGrand produced documents responsive to Kamedula's requests. However, Kamedula argues that he should receive *proposed* responses relating to his grievance from the Grievance History Report entered into NOTIS and/or any *suggested* responses and LeGrand should be compelled to produce these documents. (ECF No. 157 at 7.)

Defendants responded that Kamedula is assuming that every grievance contains the Inmate Grievance History Report entered in NOTIS and suggested grievance responses. (ECF No. 164 at 3.) Defendants further state that Kamedula does not state any authority mandating every NDOC grievance file contains such documents, and the grievance file was produced. (*Id.*)

In this instance, Kamedula has not met his initial burden of establishing that the responses provided are, in fact, deficient. In fact, based on Kamedula's reply, it appears he is not necessarily seeking additional documents, but confirmation from LeGrand that no other documents exist. (ECF No. 175 at 6.) ("If there are no other documents to be produced, LeGrand should so state.") This is not a proper basis or request for a motion to compel.

Moreover, the Court has reviewed all the documents provided by LeGrand to Kamedula, which are contained on the thumb drive submitted to the Court. (ECF No. 176.) Based on this review, the Court finds that the documents provided are sufficient and appropriately provide the information that was requested. (*Id.*)

For all of these reasons, the Court finds that no further supplementation is necessary with respect to Kamedula's Request for Production of Documents 4, 5, and 6.

## IV.     CONCLUSION

**IT IS THEREFORE ORDERED** that Kamedula's motion to compel production of discovery, (ECF No. 157), is **GRANTED,** in part, and **DENIED**, in part, as follows:

1) As to Kamedula's Interrogatory 5 to Thomas, the motion is **GRANTED**. Thomas must supplement the response to this interrogatory no later than 30 days from the date of this order.

2) As to Kamedula's Requests for Production 4, 5, and 6 to LeGrand, the motion is **DENIED**.

**DATED**: August 31, 2021

_____
**UNITED STATES MAGISTRATE JUDGE**