**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

NORMAN SHAW, *et al.*,

　　　　　Plaintiffs,

　v.

SCOTT DAVIS, *et al.*,

　　　　　Defendants.

Case No. 3:18-CV-0551-MMD-CLB

**ORDER GRANTING, IN PART, AND DENYING, IN PART, JORDAN'S MOTION TO COMPEL**

[ECF No. 154]

Before the Court is Plaintiff Ansell Jordan's ("Jordan") motion to compel discovery from Defendant K. LeGrand ("LeGrand"). (ECF No. 154.) LeGrand opposed the motion, (ECF No. 162), and Jordan replied. (ECF No. 168.) Having considered all the above, the motion is granted, in part, and denied, in part, as stated below.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A.    Factual Background**

Jordan is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Lovelock Correctional Center ("LCC"). (*See* ECF No. 39.) Proceeding *pro se*, Jordan and four other Plaintiffs[1] filed the instant civil rights action pursuant to 42 U.S.C. § 1983 for events that occurred while Plaintiffs were incarcerated at LCC. (ECF Nos. 12, 39.)

Plaintiffs allege various claims and seek declaratory, injunctive, and monetary relief. Specifically, Plaintiffs sued Defendants Chaplain Scott Davis, Associate Warden Tara Carpenter, RRT Committee Harold Wickham, RRT Committee Richard Snyder,

---

[1]    Norman Shaw, Brian Kamedula, Charles Wirth, Ansell Jordan, and Joseph Cowart (collectively referred to as "Plaintiffs").

1   Prison Administration,[2] Caseworker K. LeGrand, Caseworker J. Ferro, Caseworker C.
2   Potter, Warden Renee Baker, Deputy Director Kim Thomas, John Doe #1, and John Doe
3   #2. (ECF No. 39.)

4       The complaint alleges, in summary, that prior to February 1, 2018, the chapel
5   schedule at LCC accommodated all the various religious faith groups and provided
6   sufficient time and space for each faith group to practice their respective religions. (*Id.* at
7   3.) On January 18, 2018, Carpenter issued a memo notifying all inmates that a new
8   chapel schedule would be implemented. (*Id.* at 5.) On January 24, 2018, Davis held a
9   meeting with the religious faith group facilitators and said that major changes were going
10  to be effective February 1, 2018. (*Id.* at 5-6.)

11      On February 1, 2018, Davis, Carpenter, Wickham, Snyder, Doe #1, and Doe
12  Prison Administration reduced chapel services by over 50% and some faith groups were
13  eliminated completely. (*Id.* at 6-11.) The five Plaintiffs are members of different faith
14  groups. (*Id.* at 7-10.) Plaintiffs allege that Episcopal, "The Way," KAIROS, and Nation of
15  Islam faith groups all suffered either a reduction in chapel time or were eliminated or
16  changed in a manner which placed a substantial burden on each of their abilities to
17  practice the tenets of their religion. (*Id.*)

18      K. Thomas, Baker, Carpenter, Ferro, LeGrand, and Potter responded that the
19  reasons for the changes were for statewide consistency of the religious program and
20  adequate staff oversight. (*Id.* at 11-13.) However, LCC chapel services did not and still
21  do not require a chaplain, outside sponsor, correctional officer, or other staff member be
22  present in the chapel for religious services. (*Id.* at 12-13.)

23      On June 18, 2019, the District Court screened the complaint and allowed Plaintiffs
24  to proceed as follows: (1) in Count I, alleging Religious Land Use and Institutionalized
25  Persons Act of 2000 ("RLUIPA") violations against Defendants Davis, Carpenter,
26  Wickham, Snyder, K. Thomas, Baker, Ferro, LeGrand, Potter, Doe #1 and Doe Prison

27

28  [2]   Plaintiffs state that Defendants "Prison Administration" are "Doe" defendants that
Plaintiffs will learn the identities of during discovery. (*See* ECF No. 12 at 8, n.1.)

Administration; (2) in Count II, alleging Fourteenth Amendment equal protection violations against Davis, Carpenter, Wickham, Snyder, Doe #1 and Doe Prison Administration; (3) in Count III, alleging RLUIPA and Fourteenth Amendment equal protection violations against Defendants LeGrand, Ferro, Potter, Baker, Carpenter, Thomas, and Doe #2; (4) the portion of Count IV alleging First Amendment Establishment Clause violations against Defendants Wickham, Snyder, Baker, Carpenter, Davis, Doe #1 and Doe Prison Administration; (5) the portion of Count IV alleging First Amendment Free Exercise Clause violations against Defendants Wickham, Snyder, Baker, Carpenter, Davis, Doe #1 and Doe Prison Administration; and, (6) the portion of Count IV alleging 42 U.S.C. § 1985(3) conspiracy against Defendants Wickham, Snyder, Baker, Carpenter, Davis, Doe #1 and Doe Prison Administration. (ECF No. 11.)

On January 21, 2020, Plaintiffs filed their First Amended Complaint (ECF No. 39), which is now the operative complaint in this case. The allegations contained in Counts I through IV of the original complaint and the FAC are identical. (*Compare* ECF No. 12 at 5-22, *with* ECF No. 39 at 3-20.) Accordingly, Plaintiffs were permitted to proceed on Counts I through IV as outlined above. Plaintiffs were also permitted to add Count V alleging retaliation against Defendants Davis and Carpenter. (ECF No. 68.)

**B.      Discovery Process**

The Court entered the discovery scheduling order which required discovery to be completed by October 20, 2020. (ECF No. 88.) The Court granted two extensions to the scheduling order resulting in discovery ending on April 21, 2021. (ECF Nos. 90, 136.) Due to the complexity created by the number of *pro se* litigants, the Court took an active role in the discovery process to assist the parties and streamline the litigation. In total, the Court held 4 case management conferences ("CMC") over the course of this litigation. (*See* ECF Nos. 101, 135, 145, & 151.) Various discovery issues were addressed at the CMCs. After several attempts by the parties to meet and confer, there were still several issues that could not be resolved.

1   Thus, at the final CMC held on April 28, 2021, the Court set a briefing schedule

2   for each Plaintiff to file an individual motion to compel related to any outstanding

3   discovery requests from Defendants. (ECF No. 151). The Court set forth the

4   requirements for each motion and explicitly indicated that Plaintiffs were not required to

5   include a declaration setting forth the details and results of each disputed discovery

6   request as the Court will assume that the parties have made a good faith effort to meet

7   and confer regarding the discovery disputes. (*Id.*)

8   The Court also requested that the Office of the Attorney General provide the

9   Court with copies of all discovery requests made in this case, all responses provided,

10  and all the documents provided in response to the discovery requests. The purpose of

11  this request was intended to limit the need for the parties to attach voluminous copies of

12  each discovery request and response as exhibits,[3] and to provide the Court with easy

13  access to evaluate whether the documents provided in response to the discovery

14  requests were sufficient. A thumb drive containing these documents was received by the

15  Court on May 27, 2021. (ECF No. 176.)

16  Pursuant to the Court's Order, Jordan filed the instant motion to compel seeking

17  supplementation of answers to certain Interrogatories and Requests for Production of

18  Documents Jordan served on LeGrand. (ECF No. 152.)

19  **II.    LEGAL STANDARD**

20  "[B]road discretion is vested in the trial Court to permit or deny discovery." *Hallett*

21  *v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). The scope of discovery encompasses "any

22  nonprivileged matter that is relevant to any party's claim or defense and proportional to

23  the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In analyzing proportionality, the Court

24  must consider the need for the information sought based upon "the importance of the

25  issues at stake in the action, the amount in controversy, the parties' relative access to

26  _____

27  [3]    As the Court is aware, inmates are charged for every copy made at the institution,

28  this request was also intended to reduce the cost of the litigation for the *pro se* inmate
    litigants.

relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevance is to be construed broadly to include "any matter that bears on, or that could lead to other matter that could bear on" any party's claim or defense. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted).

When a party fails to provide discovery and the parties' attempts to resolve the dispute without Court intervention are unsuccessful, the opposing party may seek an order compelling that discovery. Fed. R. Civ. P. 37(a). However, the party moving for an order to compel discovery bears the initial burden of informing the court: (1) which discovery requests are the subject of the motion to compel; (2) which of the responses are disputed; (3) why he believes the response is deficient; (4) why defendants' objections are not justified; and (5) why the information he seeks through discovery is relevant to the prosecution of this action. *Harris v. Kernan*, No. 2:17-cv-0680-TLN-KJN-P, 2019 WL 4274010, at *1 (E.D. Cal. Sept. 10, 2019); *see also Ellis v. Cambra*, No. 1:02-cv-05646-AWI-SMS-PC, 2008 WL 860523, at *4 (E.D. Cal. 2008) ("Plaintiff must inform the court which discovery requests are the subject of his motion to compel, and, for each disputed response, inform the court why the information sought is relevant and why defendant's objections are not justified.").

Thereafter, the party seeking to avoid discovery bears the burden of showing why that discovery should not be permitted. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The party resisting discovery "'must specifically detail the reasons why each request is irrelevant' [or otherwise objectionable,] and may not rely on boilerplate, generalized, conclusory, or speculative arguments." *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013) (quoting *Painters Joint Comm. v. Emp. Painters Trust Health & Welfare Fund*, No. 2:10-cv-1385 JCM (PAL), 2011 WL 4573349, at *5 (D. Nev. 2011). Arguments against discovery must be supported by "specific examples and articulated reasoning." *U.S. E.E.O.C. v. Caesars Ent., Inc.*, 237 F.R.D. 428, 432 (D. Nev.

1  2006).

2  **III.    DISCUSSION**

3      **A.    Interrogatories 2, 3, 10, and 11**

4      Jordan's motion first seeks to compel supplemental answers from LeGrand to the

5  following four interrogatories:

| Request for Discovery No. | Interrogatory |
|---|---|
| **2** | Did you meet with or interview any person relating to Informal Grievance No. 2006-30-60931 prior to completing your official response? If so, provide the dates and meetings [that] took place, the identify [sic] of the person(s) interviewed, and identify any documents generated as a result of the meeting/interview. |
| **3** | Did anyone give you any type of guidance, instruction, or information as to how you should respond to Informal Grievance 2006-30-60931? If so, identify the person and state with specificity what guidance, instruction or information was provided to you. |
| **10** | Did you meet with or interview any person relating to information Grievance No. 2006-30-65900 prior to completing your official response? If so, provide the dates and meetings [that] took place, the identify [sic] of the person(s) interviewed, and identify any documents generated as a result of the meeting. |
| **11** | Did anyone give you any type of guidance, instruction, or information as to how you should respond to Informal Grievance 2006-30-65900? If so, identify the person and state with specificity what guidance, instruction or information was provided to you. |

20  (ECF No. 154 at 4-7.)

21      LeGrand answered each of these interrogatories by essentially stating she did not

22  recall the facts or circumstances relating to the requests. (*Id.*)

23      With respect to interrogatories, a party may propound interrogatories related to

24  any matter that may be inquired into under Federal Rule of Civil Procedure 26(b). Fed.

25  R. Civ. P. 33(a)(2). A party is obligated to respond to the fullest extent possible in writing

26  under oath, and the response must be signed by the answering party. Fed. R. Civ. P.

27  33(b)(3), (5). An interrogatory is not objectionable merely because it asks for an opinion

28  or contention that relates to fact or the application of law to fact. Fed. R. Civ. P.

33(a)(2). However, if an interrogatory is objectionable, the objection must be stated with specificity. Fed. R. Civ. P. 33(b)(4); *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981). A district court has broad discretion in deciding whether to require answers to interrogatories. *See* 8B Wright & Miller, Federal Practice and Procedure § 2176 (3d ed. 2021).

Here, Jordan argues LeGrand's answers are based solely on her recollection with no search through any records or documents that might be available. (ECF No. 154.) Jordan also argues LeGrand's answer should be "no" if there is no evidence. Thus, Jordan requests the Court compel LeGrand to provide supplemental responses to Interrogatories 2, 3, 10, and 11.

Defendants assert that LeGrand is entitled to lack definitive knowledge and is not required to conduct an extensive investigation to find some obscure document that may exist to refresh her memory. (ECF No. 162.)

A responding party is not generally required to conduct extensive research to answer an interrogatory, but a reasonable effort to respond must be made. *Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013); *L.H. v. Schwarzenegger*, 2007 WL 2781132, *2 (E.D. Cal. Sept. 21, 2007). This does require that the responding party must conduct a search for relevant information and must answer interrogatories after a diligent search. *F.D.I.C. v. Halpern*, 271 F.R.D. 191, 193-94 (D. Nev. 2010). Thus, a responding party "cannot limit its interrogatory answers to matters within its own knowledge and ignore information immediately available to it or under its control". *Id.*

When a dispute arises out of the completeness of a search undertaken, particularly when there is an absence of information that would have been expected to be included, the responding party "must come forward with an explanation of the search conducted with 'sufficient specificity to allow the Court to determine whether a reasonable'" search was performed. *Cf. V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 366-67 (D. Nev. 2019) (internal citation omitted).

As such, the Court agrees with Jordan that the responses provided by LeGrand are insufficient to Interrogatories 2, 3, 10, and 11. In response to each of these interrogatories, LeGrand states she simply doesn't recall information related to the requests. However, LeGrand did not provide any information about what, if any, search she did to locate any documents or records that may be in her possession that could assist her in providing complete answers—such as reviewing any calendars she may maintain, or reviewing any correspondence (such as emails) that may be in her possession related to the specific grievance, or the like. Rather, based on the information provided to the Court, Legrand relied entirely upon her "own knowledge" and did not make any attempt to research any information to assist her in responding.

Therefore, the Court orders LeGrand to supplement her responses to Interrogatories 2, 3, 10, and 11, within 30 days of the date of this order, consistent with the requirements stated above.[4] If, after making a reasonable inquiry into any available records she is still unable to recall the requesting information, she must provide an answer stating, under oath, that she does not recall and explain the steps taken to search for information relevant to the inquiry. *See Milner v. Nat. School of Health Tech.*, 73 F.R.D. 628, 631-33 (E.D. Pa. 1977). (Answers to interrogatories and document requests "must be complete, explicit and responsive. If a party cannot furnish details, he should say so under oath, say why and set forth the efforts used to obtain the information. He cannot plead ignorance to information that is from sources within his control. . . . [A] sworn answer indicating a lack of knowledge and no means of obtaining knowledge is not objectionable.")

### B.    Interrogatory 15

Jordan also seeks an order compelling LeGrand to supplement her response to Interrogatory 15, the full text of the interrogatory and response are as follows:

---

[4]      It should be underscored that if LeGrand does not maintain any calendar or have any records in her possession or control, she must explicitly state that in her supplemental responses.

| 15 | Identify the Lieutenant who rejected Ansell Jordan's #76575, Emergency Grievance submitted on 5/15/18. |
|---|---|
| **Response** | Plaintiff will need to provide a grievance number; Defendant does not know what grievance is being referred to. |

(ECF No. 154 at 7.)

LeGrand's claim that she could not respond to this interrogatory without the grievance number is disingenuous. LeGrand was provided the inmate's name, the inmate's number, the type of grievance (here, an emergency grievance), and the date the grievance was submitted. This is more than sufficient information for LeGrand to conduct a reasonable search in order to provide the necessary information. Therefore, the Court agrees with Jordan and orders LeGrand to supplement her answer to Interrogatory 15.

### C.   Requests for Production 4, 5, 6, and 11

Next, Jordan requests an order compelling LeGrand to supplement her responses to Requests for Production of Documents 4, 5, 6, and 11. The full text and responses to these Requests for Production are as follows:

| Request for Discovery No. | Request for Production |
|---|---|
| **4** | Each and every document relating to any investigations by NDOC/LCC staff relating to Grievance 2006-30-60931. |

| | |
|---|---|
| **Response 4** | Objection – overly broad, unduly vague, ambiguous and confusing, burdensome, beyond Defendant's personal knowledge<br>Notwithstanding . . . Defendant produced Grievance 2006-30-60931, with all documents, identified as Shaw 051: Def. LeGrand Resp. to Jordan RFPD [1] – 004-018, in response to No. 2 above. Further, the Lovelock Correctional Center's February 1, 2018 Chapel Schedule, the January 18, 2018 memo from Associate Warden Carpenter to all inmates regarding the Chapel Schedule were produced and identified as SHAW 051: Def. Davis Resp. to Shaw RFPD [1] – 003-005, and AR 810 was produced and identified as SHAW 015: Def. Garrett Resp. to Shaw RFPD [1] 034-129.  Defendant, however, produced AR 810.3 "Religious Practice Manual," effective September 5, 2017, identified as SHAW 051: Def. LeGrand Resp. to Cowart RFPD [1] – 014-047. All of the above may be responsive to this request. |
| **5** | Each and every record, note, email, correspondence, NOTIS entry/document, and/or any other document relating to Grievance no. 2006-30-60931. |
| **Response 5** | Objection – overly broad, unduly vague, ambiguous and confusing, burdensome, beyond Defendant's personal knowledge<br>Notwithstanding . . . Defendant produced Grievance 2006-30-60931, with all documents, identified as Shaw 051: Def. LeGrand Resp. to Jordan RFPD [1] – 004-018, in response to No. 2 above. Further, the Lovelock Correctional Center's February 1, 2018 Chapel Schedule, the January 18, 2018 memo from Associate Warden Carpenter to all inmates regarding the Chapel Schedule were produced and identified as SHAW 051: Def. Davis Resp. to Shaw RFPD [1] – 003-005, and AR 810 was produced and identified as SHAW 015: Def. Garrett Resp. to Shaw RFPD [1] 034-129, and AR 810.3 "Religious Practice Manual," effective September 5, 2017, identified as SHAW 051: Def. LeGrand Resp. to Cowart RFPD [1] – 014-047.  All of the above may be responsive to this request. |
| **6** | Each and every proposed responses [sic] relating to Grievance No. 2006-30-60931. |

| **Response 6** | Objection – beyond Defendant's personal knowledge Notwithstanding . . . Defendant produced Grievance 2006-30-61144, with all documents, identified as Shaw 051: Def. LeGrand Resp. to Jordan RFPD [1] – 004-018, in response to No. 2 above. Further, the Lovelock Correctional Center's February 1, 2018 Chapel Schedule, the January 18, 2018 memo from Associate Warden Carpenter to all inmates regarding the Chapel Schedule were produced and identified as SHAW 051: Def. Davis Resp. to Shaw RFPD [1] – 003-005, and AR 810 was produced and identified as SHAW 015: Def. Garrett Resp. to Shaw RFPD [1] 034-129. Defendant, however, produced AR 810.3 "Religious Practice Manual," effective September 5, 2017, identified as SHAW 051: Def. LeGrand Resp. to Cowart RFPD [1] – 014-047. All of the above may be responsive to this request. |
| **11** | Each and every document relating to any investigations by NDOC/LCC staff relating to Grievance 2006-30-65900. |
| **Response 11** | Objection – overly broad, unduly vague, ambiguous and confusing, burdensome, beyond Defendant's personal knowledge Notwithstanding . . . Defendant produced Grievance 2006-30-65900, with all documents, identified as Shaw 051: Def. LeGrand Resp. to Jordan RFPD [1] – 004-018, in response to No. 9 above. Further, the Lovelock Correctional Center's February 1, 2018 Chapel Schedule, the January 18, 2018 memo from Associate Warden Carpenter to all inmates regarding the Chapel Schedule were produced and identified as SHAW 051: Def. Davis Resp. to Shaw RFPD [1] – 003-005, and AR 810 was produced and identified as SHAW 015: Def. Garrett Resp. to Shaw RFPD [1] 034-129. Defendant, however, produced AR 810.3 "Religious Practice Manual," effective September 5, 2017, identified as SHAW 051: Def. LeGrand Resp. to Cowart RFPD [1] – 014-047. All of the above may be responsive to this request. |

(ECF No. 154 at 8-12.)

Pursuant to Federal Rule of Civil Procedure 34, "[a] party may serve on any other party a request within the scope of Rule 26(b)" for production of documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a). The requesting party "is entitled to individualized, complete responses to each of the [Requests for Production], . . . accompanied by production of each of the documents responsive to the request, regardless of whether the documents have already been produced.'" *Womack v. Gibbons*, No. 1:19-cv-00615-AWI-SAB-PC, 2021 WL 1734809,

at *2 (E.D. Cal. May 3, 2021) (citing *Louen v. Twedt*, 236 F.R.D. 502, 505 (E.D. Cal. 2006). Failure to object to requests for production of documents within the time required constitutes a waiver of any objection. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).

Based on the responses provided above, LeGrand produced documents responsive to Jordan's requests. However, Jordan's argument seems to be that he should receive *proposed* responses relating to his grievance from the Grievance History Report entered into NOTIS and/or any *suggested* responses and LeGrand should be compelled to produce these documents. (ECF No. 154.)

LeGrand responded that Jordan is assuming that every grievance contains the Inmate Grievance History Report entered in NOTIS and suggested grievance responses. (ECF No. 162.) LeGrand further states that Jordan does not state any authority mandating every NDOC grievance file contains such documents, and the grievance file was produced. (*Id.*)

In this instance, Jordan has not met his initial burden of establishing that the responses provided are, in fact, deficient. In fact, based on Jordan's reply, it appears he is not necessarily seeking additional documents, but confirmation from LeGrand that no other documents exist. (ECF No. 168 at 3) ("If there are no other documents to be produced, LeGrand should so state."). This is not a proper basis or request for a motion to compel.

Moreover, the Court has reviewed all the documents provided by LeGrand to Jordan, which are contained on the thumb drive submitted to the Court. (ECF No. 176.) Based on this review, the Court finds that the documents provided are sufficient and appropriately provide the information that was requested. (*Id.*)

For all these reasons, the Court finds that no further supplementation is necessary with respect to Jordan's Request for Production of Documents 4, 5, 6, and 11.

///

///

**IV.     CONCLUSION**

     **IT IS THEREFORE ORDERED** that Jordan's motion to compel production of discovery, (ECF No. 154), is **GRANTED,** in part, and **DENIED**, in part, as follows:

    1)    As to Jordan's Interrogatories 2, 3, 10, 11, and 15, the motion is **GRANTED**. LeGrand must supplement her responses to these interrogatories no later than 30 days from the date of this order.

    2)    As to Jordan's Requests for Production 4, 5, 6, and 11, the motion is **DENIED**.

**DATED:** __August 31, 2021__

_____
**UNITED STATES MAGISTRATE JUDGE**