1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

NORMAN SHAW, *et al.*,

Plaintiffs,

v.

SCOTT DAVIS, *et al.*,

Defendants.

Case No. 3:18-CV-0551-MMD-CLB

**ORDER GRANTING, IN PART, AND DENYING, IN PART, COWART'S MOTION TO COMPEL**

[ECF No. 152]

11    Before the Court is Plaintiff Joseph Cowart's ("Cowart") motion to compel

12  discovery from Defendant K. LeGrand ("LeGrand"). (ECF No. 152.) LeGrand opposed

13  the motion, (ECF No. 161), and Cowart replied. (ECF No. 167.) Having considered all

14  the above, the motion is granted, in part, and denied, in part, as stated below.

15  **I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

16    **A.    Factual Background**

17    Cowart is an inmate in the custody of the Nevada Department of Corrections

18  ("NDOC") and is currently housed at the Lovelock Correctional Center ("LCC"). (*See*

19  ECF No. 39.) Proceeding *pro se*, Cowart and four other Plaintiffs[1] filed the instant civil

20  rights action pursuant to 42 U.S.C. § 1983 for events that occurred while Plaintiffs were

21  incarcerated at LCC. (ECF Nos. 12, 39.)

22    Plaintiffs allege various claims and seek declaratory, injunctive, and monetary

23  relief. Specifically, Plaintiffs sued Defendants Chaplain Scott Davis, Associate Warden

24  Tara Carpenter, RRT Committee Harold Wickham, RRT Committee Richard Snyder,

25

26

27

28

---

[1]    Norman Shaw, Brian Kamedula, Charles Wirth, Ansell Jordan, and Joseph Cowart (collectively referred to as "Plaintiffs").

1   Prison Administration,[2] Caseworker K. LeGrand, Caseworker J. Ferro, Caseworker C.
2   Potter, Warden Renee Baker, Deputy Director Kim Thomas, John Doe #1, and John Doe
3   #2. (ECF No. 39.)

4         The complaint alleges, in summary, that prior to February 1, 2018, the chapel
5   schedule at LCC accommodated all the various religious faith groups and provided
6   sufficient time and space for each faith group to practice their respective religions. (*Id.* at
7   3.) On January 18, 2018, Carpenter issued a memo notifying all inmates that a new
8   chapel schedule would be implemented. (*Id.* at 5.) On January 24, 2018, Davis held a
9   meeting with the religious faith group facilitators and said that major changes were going
10  to be effective February 1, 2018. (*Id.* at 5-6.)

11        On February 1, 2018, Davis, Carpenter, Wickham, Snyder, Doe #1, and Doe
12  Prison Administration reduced chapel services by over 50% and some faith groups were
13  eliminated completely. (*Id.* at 6-11.) The five Plaintiffs are members of different faith
14  groups. (*Id.* at 7-10.) Plaintiffs allege that Episcopal, "The Way," KAIROS, and Nation of
15  Islam faith groups all suffered either a reduction in chapel time or were eliminated or
16  changed in a manner which placed a substantial burden on each of their abilities to
17  practice the tenets of their religion. (*Id.*)

18        K. Thomas, Baker, Carpenter, Ferro, LeGrand, and Potter responded that the
19  reasons for the changes were for statewide consistency of the religious program and
20  adequate staff oversight. (*Id.* at 11-13.) However, LCC chapel services did not and still
21  do not require a chaplain, outside sponsor, correctional officer, or other staff member be
22  present in the chapel for religious services. (*Id.* at 12-13.)

23        On June 18, 2019, the District Court screened the complaint and allowed Plaintiffs
24  to proceed as follows: (1) in Count I, alleging Religious Land Use and Institutionalized
25  Persons Act of 2000 ("RLUIPA") violations against Defendants Davis, Carpenter,

26  _____

27
28  [2]     Plaintiffs state that Defendants "Prison Administration" are "Doe" defendants that
        Plaintiffs will learn the identities of during discovery. (*See* ECF No. 12 at 8, n.1.)

2

Wickham, Snyder, K. Thomas, Baker, Ferro, LeGrand, Potter, Doe #1 and Doe Prison Administration; (2) in Count II, alleging Fourteenth Amendment equal protection violations against Davis, Carpenter, Wickham, Snyder, Doe #1 and Doe Prison Administration; (3) in Count III, alleging RLUIPA and Fourteenth Amendment equal protection violations against Defendants LeGrand, Ferro, Potter, Baker, Carpenter, Thomas, and Doe #2; (4) the portion of Count IV alleging First Amendment Establishment Clause violations against Defendants Wickham, Snyder, Baker, Carpenter, Davis, Doe #1 and Doe Prison Administration; (5) the portion of Count IV alleging First Amendment Free Exercise Clause violations against Defendants Wickham, Snyder, Baker, Carpenter, Davis, Doe #1 and Doe Prison Administration; and, (6) the portion of Count IV alleging 42 U.S.C. § 1985(3) conspiracy against Defendants Wickham, Snyder, Baker, Carpenter, Davis, Doe #1 and Doe Prison Administration; (ECF No. 11.)

On January 21, 2020, Plaintiffs filed their First Amended Complaint (ECF No. 39), which is now the operative complaint in this case. The allegations contained in Counts I through IV of the original complaint and the FAC are identical. (*Compare* ECF No. 12 at 5-22, *with* ECF No. 39 at 3-20.) Accordingly, Plaintiffs were permitted to proceed on Counts I through IV as outlined above. Plaintiffs were also permitted to add Count V alleging retaliation against Defendants Davis and Carpenter. (ECF No. 68.)

## B.    Discovery Process

The Court entered the discovery scheduling order which required discovery to be completed by October 20, 2020. (ECF No. 88.) The Court granted two extensions to the scheduling order resulting in discovery ending on April 21, 2021. (ECF Nos. 90, 136.) Due to the complexity created by the number of *pro se* litigants, the Court took an active role in the discovery process to assist the parties and streamline the litigation. In total, the Court held four case management conferences ("CMC") over the course of this litigation. (*See* ECF Nos. 101, 135, 145, 151.) Various discovery issues were addressed at the CMCs. After several attempts by the parties to meet and confer, there were still

1    several issues that could not be resolved.

2         Thus, at the final CMC held on April 28, 2021, the Court set a briefing schedule

3    for each Plaintiff to file an individual motion to compel related to any outstanding

4    discovery requests from Defendants. (ECF No. 151.) The Court set forth the

5    requirements for each motion and explicitly indicated that Plaintiffs were not required to

6    include a declaration setting forth the details and results of each disputed discovery

7    request as the Court will assume that the parties have made a good faith effort to meet

8    and confer regarding the discovery disputes. (*Id.*)

9         The Court also requested that the Office of the Attorney General provide the

10   Court with copies of all discovery requests made in this case, all responses provided,

11   and all the documents provided in response to the discovery requests. The purpose of

12   this request was intended to limit the need for the parties to attach voluminous copies of

13   each discovery request and response as exhibits,[3] and to provide the Court with easy

14   access to evaluate whether the documents provided in response to the discovery

15   requests were sufficient. A thumb drive containing these documents was received by the

16   Court on May 27, 2021. (ECF No. 176.)

17        Pursuant to the Court's Order, Cowart filed the instant motion to compel seeking

18   supplementation of answers to certain Interrogatories and Requests for Production of

19   Documents served on LeGrand. (ECF No. 152.)

20   **II.    LEGAL STANDARD**

21        "[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett*

22   *v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). The "scope of discovery" encompasses

23   "any nonprivileged matter that is relevant to any party's claim or defense and

24   proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In analyzing

25   proportionality, the Court must consider the need for the information sought based upon

26

27   [3]    As the Court is aware, inmates are charged for every copy made at the institution,
     this request was also intended to reduce the cost of the litigation for the *pro se* inmate
28   litigants.

4

"the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevance is to be construed broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted).

When a party fails to provide discovery and the parties' attempts to resolve the dispute without Court intervention are unsuccessful, the opposing party may seek an order compelling that discovery. Fed. R. Civ. P. 37(a). However, the party moving for an order to compel discovery bears the initial burden of informing the court: (1) which discovery requests are the subject of the motion to compel; (2) which of the responses are disputed; (3) why he believes the response is deficient; (4) why defendants' objections are not justified; and (5) why the information he seeks through discovery is relevant to the prosecution of this action. *Harris v. Kernan*, No. 2:17-cv-0680-TLN-KJN-P, 2019 WL 4274010, at *1 (E.D. Cal. Sept. 10, 2019); *see also Ellis v. Cambra*, No. 1:02-cv-05646-AWI-SMS-PC, 2008 WL 860523, at *4 (E.D. Cal. 2008) ("Plaintiff must inform the court which discovery requests are the subject of his motion to compel, and, for each disputed response, inform the court why the information sought is relevant and why defendant's objections are not justified.").

Thereafter, the party seeking to avoid discovery bears the burden of showing why that discovery should not be permitted. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The party resisting discovery "'must specifically detail the reasons why each request is irrelevant' [or otherwise objectionable,] and may not rely on boilerplate, generalized, conclusory, or speculative arguments." *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013) (quoting *Painters Joint Comm. v. Emp. Painters Trust Health & Welfare Fund*, No. 2:10-cv-1385 JCM (PAL), 2011 WL 4573349, at *5 (D. Nev. 2011). Arguments against discovery must be supported by specific examples and

1  articulated reasoning. *U.S. E.E.O.C. v. Caesars Ent., Inc.*, 237 F.R.D. 428, 432 (D. Nev.

2  2006).

3  **III.    DISCUSSION**

4      **A.    Interrogatory Responses**

5        Cowart's motion first seeks to compel supplemental answers from LeGrand to the

6  following two interrogatories:

| Request for Discovery No. | Interrogatory |
|---|---|
| **2** | Did you meet with or interview any person relating to Informal Grievance No. 2006-30-61144 prior to completing your official response?  If so, provide the dates and meetings [that] took place, the identify [sic] of the person(s) interviewed, and identify any documents generated as a result of the meeting/interview. |
| **3** | Did anyone give you any type of guidance, instruction, or information as to how you should respond to Informal Grievance 2006-30-61144?  If so, identify the person and state with specificity what guidance, instruction or information was provided to you. |

15  (ECF No. 152 at 5.)

16        As to Integratory 2, LeGrand responded that she did "not recall whether I met with

17  or interviewed any person relating to Informal Level Grievance 2006-30-61144 prior to

18  completing the response." (*Id.*) Likewise, in response to Interrogatory 3, LeGrand stated

19  that she had "no recollection as to receiving any type of guidance, instruction or

20  information as to how to respond to Informal Level Grievance 2006-30-61144, and I

21  cannot affirmatively state whether I may have discussed this grievance with anyone, or

22  not, as I have no specific recollection of responding to this grievance." (*Id.* at 5-6.)

23        With respect to interrogatories, a party may propound interrogatories related to

24  any matter that may be inquired into under Federal Rule of Civil Procedure 26(b). Fed.

25  R. Civ. P. 33(a)(2). A party is obligated to respond to the fullest extent possible in writing

26  under oath, and the response must be signed by the answering party. Fed. R. Civ. P.

27  33(b)(3), (5). An interrogatory is not objectionable merely because it asks for an opinion

28  or contention that relates to fact or the application of law to fact. Fed. R. Civ. P.

33(a)(2). However, if an interrogatory is objectionable, the objection must be stated with specificity. Fed. R. Civ. P. 33(b)(4); *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981). A district court has broad discretion in deciding whether to require answers to interrogatories. *See* 8B Wright & Miller, Federal Practice and Procedure § 2176 (3d ed. 2021).

Here, Cowart argues LeGrand's responses are unverified and based solely on her recollection with no search through any records or documents that might be available. (ECF No. 152 at 6.) Cowart also argues that LeGrand's answer should be "no" rather than "I cannot recall" because LeGrand's answer leaves Cowart "in a position to be sandbagged at trial." *Id.* Thus, Cowart requests the Court compel LeGrand to provide verification to her responses and to supplement her responses.

Defendants assert that LeGrand is entitled to lack definitive knowledge and is not required to conduct an extensive investigation in an attempt to find some obscure document that may exist to refresh her memory. (ECF No. 161.) Defendants are willing to supplement this answer with a verification and, if the Court requires, additional information as to the reasonable inquiry conducted by LeGrand in answer these interrogatories. (*Id.*)

### 1.    Verification

"Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "An answer to an interrogatory may be used to the extent allowed by the Federal Rules of Evidence." Fed. R. Civ. P. 33(c). "The person who makes the answers must sign them, and the attorney who objects must sign any objections." Fed. R. Civ. P. 33(b)(5). Such "requirement is critical because interrogatories serve not only as a discovery device but as a means of producing admissible evidence; there is no better example of an admission of a party opponent, which is admissible because it is not hearsay, than an answer to an interrogatory." *Huthnance v. D.C.*, 255 F.R.D. 297, 300 (D. D.C. 2008). Without the verification, the answers have no evidentiary value. *Spence v. Kaur*, No. 2:16-cv-1828-

1   TLN-KJN-P, 2020 WL 7406294, at *9 (E.D. Cal. Dec. 17, 2020).

2       Here, Cowart asserts LeGrand did not provide any verification to her interrogatory

3   responses when they were initially received. (ECF No. 152 at 4.) However, Cowart also

4   explicitly states LeGrand supplemented her responses on November 6, 2020, and a

5   verification was provided at that time. (*Id.*) Although LeGrand admits that the responses

6   were not initially "verified," (ECF No. 161 at 3), it is unclear whether the verification

7   provided with the supplemental responses cured this defect. Neither party has

8   addressed this issue. Therefore, the Court orders LeGrand to provide a proper

9   verification for her interrogatory responses to Cowart within 30 days of the date of this

10   order. LeGrand is also advised that her failure to provide the proper verification as

11   ordered may result in the imposition of sanctions pursuant to Fed. R. Civ. P. 37.

12                      **2.      Substantive Responses**

13       A responding party is not generally required to conduct extensive research to

14   answer an interrogatory, but a reasonable effort to respond must be made. *Gorrell v.*

15   *Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013); *L.H. v. Schwarzenegger*, 2007 WL

16   2781132, *2 (E.D. Cal. Sept. 21, 2007). This does require that the responding party must

17   conduct a search for relevant information and must answer interrogatories after a diligent

18   search. *F.D.I.C. v. Halpern*, 271 F.R.D. 191, 193-94 (D. Nev. 2010). Thus, a responding

19   party "cannot limit its interrogatory answers to matters within its own knowledge and

20   ignore information immediately available to it or under its control". *Id.*

21       When a dispute arises out of the completeness of a search undertaken,

22   particularly when there is an absence of information that would have been expected to

23   be included, the responding party "must come forward with an explanation of the search

24   conducted with 'sufficient specificity to allow the Court to determine whether a

25   reasonable search'" was performed. *Cf. V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 366-

26   67 (D. Nev. 2019) (citation omitted).

27       As such, the Court agrees with Cowart that the responses provided by LeGrand

28   are insufficient. In response to both interrogatories, LeGrand states she simply doesn't

recall information related to the requests. However, LeGrand did not provide any information about what, if any, search she did to locate any documents or records that may be in her possession that could assist her in providing complete answers—such as reviewing any calendars she may maintain, or reviewing any correspondence (such as emails) that may be in her possession related to the specific grievance, or the like. Rather, based on the information provided to the Court, Legrand relied entirely upon her "own knowledge" and did not make any attempt to research any information to assist her in responding.

Therefore, the Court orders LeGrand to supplement her responses to Interrogatory 2 and 3, within 30 days of the date of this order, consistent with the requirements stated above.[4] If, after making a reasonable inquiry into any available records she is still unable to recall the requesting information, she must provide an answer stating, under oath, that she does not recall and explain the steps taken to search for information relevant to the inquiry. *See Milner v. Nat. School of Health Tech.*, 73 F.R.D. 628, 631-33 (E.D. Pa. 1977) (Answers to interrogatories and document requests "must be complete, explicit and responsive. If a party cannot furnish details, he should say so under oath, say why and set forth the efforts used to obtain the information. He cannot plead ignorance to information that is from sources within his control. . . . [A] sworn answer indicating a lack of knowledge and no means of obtaining knowledge is not objectionable.")

**B.    Requests for Production of Document**

Next, Cowart requests an order compelling LeGrand to supplement her responses to Requests for Production of Documents 4, 5, and 6, which requested the following:

---

[4]    It should be underscored that if LeGrand does not maintain any calendar or have any records in her possession or control, she must explicitly state that in her supplemental responses.

| Request for Discovery No. | Request for Production |
|---|---|
| 4 | Each and every document relating to any investigations by NDOC/LCC staff relating to Grievance 2006-30-61144. |
| 5 | Each and every record, note, email, correspondence, NOTIS entry/document, and/or any other document relating to Grievance no. 2006-30-61144. |
| 6 | Each and every proposed responses [sic] relating to Grievance No. 2006-30-61144. |

(ECF No. 152 at 6-9.) LeGrand responded with the same objections—overly broad, unduly vague, ambiguous and confusing, burdensome, and beyond Defendant's personal knowledge—to each request with the additional, identical statement:

> Notwithstanding . . . Defendant produced Grievance 2006-30-61144, with all documents, identified as Shaw 051: Def. LeGrand Resp. to Cowart RFPD [1] – 002-013, in response to No. 2 above.  Further, the Lovelock Correctional Center's February 1, 2018 Chapel Schedule, the January 18, 2018 memo from Associate Warden Carpenter to all inmates regarding the Chapel Schedule were produced and identified as SHAW 051: Def. Davis Resp. to Shaw RFPD [1] – 003-005, and AR 810 was produced and identified as SHAW 015: Def. Garrett Resp. to Shaw RFPD [1] 034-129.  Defendant, however, produces AR 810.3 "Religious Practice Manual," effective September 5, 2017, identified as SHAW 051: Def. LeGrand Resp. to Cowart RFPD [1] – 014-047.  All of the above may be responsive to this request.

(*Id.*)

Pursuant to Federal Rule of Civil Procedure 34, a "party may serve on any other party a request within the scope of Rule 26(b)" for production of documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a). The requesting party "is entitled to individualized, complete responses to each of the [Requests for Production], . . . accompanied by production of each of the documents responsive to the request, regardless of whether the documents have already been produced." *Womack v. Gibbons*, No. 1:19-cv-00615-AWI-SAB-PC, 2021 WL 1734809, at *2 (E.D. Cal. May 3, 2021) (citing *Louen v. Twedt*, 236 F.R.D. 502, 505 (E.D. Cal. 2006). Failure to object to requests for production of documents within the time required constitutes a waiver of any objection. *See Richmark Corp. v. Timber Falling Consultants*,

1   959 F.2d 1468, 1473 (9th Cir. 1992).

2        According to LeGrand's response, she did produce documents responsive to

3   Cowart's requests. However, Cowart's argument seems to be that he should receive

4   *proposed* responses relating to his grievance from the Grievance History Report entered

5   into NOTIS and/or any *suggested* responses and LeGrand should be compelled to

6   produce these documents. (ECF No. 152 at 9.)

7        Defendants responded that Cowart is assuming that every grievance contains the

8   Inmate Grievance History Report entered in NOTIS and suggested grievance responses.

9   (ECF No. 161.) Defendants further state that Cowart does not state any authority

10  mandating every NDOC grievance file contains such documents, and the grievance file

11  was produced. (*Id.*)

12       In this instance, Cowart has not met his initial burden of establishing that the

13  responses provided are, in fact, deficient. In fact, based on Cowart's reply, it appears he

14  is not necessarily seeking additional documents, but confirmation from LeGrand that no

15  other documents exist. (ECF No. 167 at 2) ("If there are no other documents to be

16  produced, LeGrand should so state."). This is not a proper basis or request for a motion

17  to compel.

18       Moreover, the Court has reviewed all the documents provided by LeGrand to

19  Cowart, which are contained on the thumb drive submitted to the Court. (ECF No. 176.)

20  Based on this review, the Court finds that the documents provided are sufficient and

21  appropriately provide the information that was requested. (*Id.*)

22       For all of these reasons, the Court finds that no further supplementation is

23  necessary with respect to Cowart's Request for Production of Documents 4, 5, and 6.

24  **IV.   CONCLUSION**

25       **IT IS THEREFORE ORDERED** that Cowart's motion to compel production of

26  discovery, (ECF No. 152), is **GRANTED,** in part, and **DENIED**, in part, as follows:

27       1)    As to Cowart's Interrogatories 2 and 3, the motion is **GRANTED**. LeGrand

28            must supplement her responses to Interrogatories 2 and 3, including

11

1     providing a proper verification to the original and supplemental responses,

2     no later than 30 days from the date of this order.

3     2)     As to Cowart's Requests for Production 4, 5, and 6, the motion is **DENIED**.

4  **DATED**:  August 31, 2021

5

6     _____

      **UNITED STATES MAGISTRATE JUDGE**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28