1
2
3

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

4

NORMAN SHAW, *et al.*,

5
                                    Plaintiffs,

6
        v.

7

SCOTT DAVIS, *et al.*,

8
                                    Defendants.

Case No. 3:18-CV-0551-MMD-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]**

[ECF Nos. 213, 226]

9       This case involves a civil rights action filed by Plaintiffs Norman Shaw ("Shaw"),

10  Brian Kamedula ("Kamedula"), Charles Wirth ("Wirth"), Ansell Jordan ("Jordan"), and

11  Joseph Cowart ("Cowart") (collectively referred to as "Plaintiffs") against Defendants Scott

12  Davis ("Davis"), Tara Carpenter ("Carpenter"), Harold Wickham ("Wickham"), Richard

13  Snyder ("Snyder"), K. LeGrand ("LeGrand"), J. Ferro ("Ferro"), C. Potter ("Potter"), Renee

14  Baker ("Baker"), and Kim Thomas ("Thomas") (collectively referred to as "Defendants").

15  Currently pending before the Court is Plaintiffs' motion for summary judgment. (ECF No.

16  213.)[2] Defendants opposed the motion, (ECF Nos. 225, 229)[3], and Plaintiffs replied. (ECF

17  No. 237.)[4] Also pending before the Court is Defendants' motion for summary judgment.

18  (ECF Nos. 226, 228.)[5] Plaintiffs opposed the motion, (ECF No. 238)[6], and Defendants

19
20

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

21
22

[2]    Shaw filed the motion for summary judgment, ECF No. 213. Kamedula, Wirth, Jordan, and Cowart joined the motion for summary judgment. (ECF Nos. 216, 217, 218, 219, respectively.)

23

[3]    ECF No. 229 is an erratum to ECF No. 225.

24
25

[4]    Shaw filed the reply to the response to the motion for summary judgment, ECF No. 237. Wirth, Kamedula, Cowart, and Jordan each filed a joinder to the reply. (ECF Nos. 240, 242, 244, 245, respectively.)

26

[5]    ECF No. 228 is an erratum to ECF No. 226.

27
28

[6]    Shaw filed the response to Defendants' motion for summary judgment, ECF No. 238. Wirth, Kamedula, Cowart, and Jordan also joined the reply. (ECF Nos. 240, 243, 244, 245, respectively.)

1    replied. (ECF No. 246.)

2          For the reasons stated below, the Court recommends that Plaintiffs' motion for

3    summary judgment, (ECF No. 213), be denied, and Defendants' motion for summary

4    judgment, (ECF No. 226), be granted, in part, and denied, in part.

5    **I.      BACKGROUND**

6          **A.      Undisputed Facts**

7          Plaintiffs Shaw, Cowart, and Jordan are inmates presently incarcerated in the

8    Nevada Department of Corrections ("NDOC") and housed at the Lovelock Correctional

9    Center ("LCC"). (ECF No. 84 at 1.) Plaintiffs Wirth and Kamedula are former inmates at

10   LCC, who have since been released from custody. (ECF No. 72 at 2; ECF No. 124.)

11   Shaw, Kamedula, and Wirth are/were members of the Episcopal Faith Group. (ECF No.

12   213 at 17.) Wirth is also a member of KAIROS. (*Id.* at 19-20.) Plaintiff Jordan is a member

13   of the Nation of Islam ("NOI") Faith Group. (*Id.* at 17-18.) Plaintiff Cowart is a Christian

14   and a member of The Way. (*Id.* at 19.) KAIROS and The Way are not recognized by

15   NDOC as Faith Groups. (ECF No. 226-4.)

16         Administrative Regulation ("AR") 810 is the regulation promulgated by NDOC

17   related to religion issues as required by NRS 209.131 (the director of NDOC is to

18   "[p]rovide for the holding of religious services in the institutions and facilities and make

19   available to the offenders copies of appropriate religious materials"). (ECF No. 72-1.) AR

20   810.01 recognizes the need to provide for the religious needs of inmates, within the

21   restrictions and limitations of legitimate penological needs. (*Id.* at 2.) To maintain

22   uniformity of religious programs through NDOC, AR 810.04(2) provides for the creation

23   of the Religious Review Team ("RRT"). (*Id.* at 3.)  The RRT is responsible for ensuring

24   religious ARs are uniformly interpreted, applied, and enforced. (*Id.*) The RRT consists of

25   a Warden, Chaplain, and their designees. (*Id.*)

26         AR 810.02 also recognizes that resources are limited, and inmates are expected

27   to make sacrifices to allow other religions access to facilities for religious activities. (*Id.* at

28   2.) In recognition of the limited resources, AR 810.02(2) provides programs and activities

2

to be established and governed by the "Religious Practice Manual." (*Id.* at 3.) The Religious Practice Manual is promulgated under AR 810.3. (ECF No. 72-2.) The Religious Practice Manual defines "worship services" to mean "[a] weekly meeting time for each Faith Group consisting of up to at least one (1) hour. There is no entitlement beyond one (1) hour per week." (*Id.* at 7.) Religious chapel services are governed by AR 810.3(5)(B). (*Id.* at 8-9.) The chapel is available for religious groups that number five or more practitioners. (*Id.* at 8.) The Chaplain is required to create a schedule, to be approved by the Warden or designee, with a copy provided to the Deputy Director of NDOC. (*Id.*) The Chaplain must take into consideration the "safety and security of the prison or facility, staff availability, or other factor[s] or conditions with the prison that may affect prison operations." (*Id.*) AR 810.2 provides a complete list of each Faith Group recognized by NDOC. (ECF No. 226-4.)

LCC contains a Chapel, designated for religious meetings and services. The LCC Chaplain is responsible for creating a weekly Chapel schedule, to be approved by the Warden. (*See* ECF No. 72-2 at 8; *see also* ECF No. 213 at 605-620.) Warden Baker took over responsibility for LCC, and by extension approval of the Chapel schedule, on August 29, 2016. (ECF No. 226-1 at 1.) Upon taking over, three chief concerns for Warden Baker and her staff arose related to the Chapel schedule that was in place: (1) lack of compliance with AR 810 and its series; (2) lack of uniformity between NDOC institutions regarding chapel schedules; and (3) threats to institutional safety and security, relating to lack of supervision and increased foot traffic due to outcount religious services and services held outside the Chapel. (*See* ECF Nos. 226-1, 226-2, 226-3.)

When the LCC Chaplain position became vacant at the end of 2017, Warden Baker determined that the new Chaplain would be tasked with bringing LCC's religious practices in conformance with AR 810 and state-wide norms. (ECF No. 226-3 at 2.) Chaplain Davis was hired for the LCC Chaplain position, and it became his, and AWP Carpenter's, duty to change the LCC Chapel schedule at Warden Baker's direction. (ECF Nos. 226-3, 226-2.)

Beginning in February 2018, Chaplain Davis made changes to the Chapel schedule. (ECF No. 213 at 658.) On January 18, 2018, AWP Carpenter posted a memo announcing that the new Chapel schedule would be implemented starting February 1, 2018. (*Id.* at 503.) On January 24, 2018, Chaplain Davis held a meeting with all General Population religious facilitators to review the new Chapel schedule changes. (*Id.* at 507.) Chaplain Davis informed the meeting participants of the changes to the Chapel schedule: (1) inmates are entitled to only one hour per week for Chapel services, per AR 810 (ECF No. 213 at 433-34); (2) prayer and bible studies are not Chapel activities and can be performed in inmates' cells (ECF No. 149-1 at 20); (3) outcount services are eliminated (*Id.*); (4) no more services would be scheduled before 8:00 am or after 9:00 pm (ECF No. 149-2 at 150); and (5) culinary will no longer be providing anything for religious services (ECF No. 149-1 at 21).

Plaintiffs Shaw and Kamedula claim the schedule changes effectively eliminated, for Episcopalian inmates, a space in the Chapel for music practice, baptism and confirmation classes, weekly unction, "Preachers in Training" classes, and worship leader and Eucharist training. (ECF No. 39 at 7.) Plaintiff Cowart claims the schedule changes eliminated, for The Way inmates, a space in the Chapel for worship service with outside sponsor, Bible studies, music practice, and a yearly, two-day Pentecost service. (*Id.* at 7-8.) Plaintiff Wirth claims the schedule changes eliminated, for KAIROS inmates, Friday night music practices and a three-day KAIROS event in October 2018. (*Id.* at 8.) Plaintiff Jordan claims the Chapel schedule changes eliminated, for Nation of Islam inmates, weekly Jumu'ah prayer services in the Chapel and yearly, 30-day Ramadan services conducted in an activity room. (*Id.* at 9-10.)

All five Plaintiffs filed grievances regarding the Chapel schedule changes. (ECF No. 213 at 761-849.) LeGrand responded to and denied Informal Grievances from Shaw, Cowart, and Jordan. Potter responded to and denied an Informal Grievance from Wirth. Ferro responded to and denied an Informal Grievance from Kamedula. Baker responded to and denied First Level Grievances from each Plaintiff and Thomas responded to and

1   denied Second Level Grievances from each Plaintiff. (*See id.*)

2       Plaintiff Jordan also filed another Informal Grievance, No. 2006-30-65900,

3   focusing on the Nation of Islam's Ramadan services. Jordan filed an emergency

4   grievance, which was denied as it was not an emergency as defined by AR 740. LeGrand

5   responded to and denied the Informal Grievance on June 19, 2018. Baker responded to

6   and denied Jordan's First Level Grievance. Thomas responded to and denied Jordan's

7   Second Level Grievance. (*See id.*)

8       **B.    PROCEDURAL HISTORY**

9       Proceeding *pro se*, Plaintiffs filed the instant civil rights action pursuant to 42

10  U.S.C. § 1983 for the above events that occurred while Plaintiffs were incarcerated at the

11  LCC. (ECF Nos. 12, 39.) Specifically, Plaintiffs sued Defendants Chaplain Scott Davis,

12  Associate Warden of Programs Tara Carpenter, RRT Committee Member Harold

13  Wickham, RRT Committee Member Richard Snyder, Prison Administration, Caseworker

14  K. LeGrand, Caseworker J. Ferro, Caseworker C. Potter, Warden Renee Baker, Deputy

15  Director Kim Thomas, John Doe #1, and John Doe #2. (ECF No. 39.)[7] Plaintiffs allege

16  various claims and seek declaratory, injunctive, and monetary relief.

17      On June 18, 2019, the District Court screened the complaint and allowed Plaintiffs

18  to proceed as follows: (1) in Count I, alleging Religious Land Use and Institutionalized

19  Persons Act of 2000 ("RLUIPA") violations against Defendants Davis, Carpenter,

20  Wickham, Snyder, Thomas, Baker, Ferro, LeGrand, Potter, Doe #1 and Doe Prison

21  Administration; (2) in Count II, alleging Fourteenth Amendment equal protection violations

22  against Davis, Carpenter, Wickham, Snyder, Doe #1 and Doe Prison Administration; (3)

23  in Count III, alleging RLUIPA and Fourteenth Amendment equal protection violations

24  against Defendants LeGrand, Ferro, Potter, Baker, Carpenter, Thomas, and Doe #2; (4)

25  the portion of Count IV alleging First Amendment Establishment Clause violations against

---

26  [7]    Pursuant to the scheduling order, the parties had until March 21, 2021, to amend
27  their pleadings. (ECF No. 136 at 1.) To date, Plaintiffs have not identified or served John
    Doe #1, John Doe #2, or Doe Prison Administration and the time to do so has passed.
28  Accordingly, the Court recommends all claims against these Defendants be dismissed
    pursuant to Fed. R. Civ. P. 4(m).

Defendants Wickham, Snyder, Baker, Carpenter, Davis, Doe #1 and Doe Prison Administration; (5) the portion of Count IV alleging First Amendment Free Exercise Clause violations against Defendants Wickham, Snyder, Baker, Carpenter, Davis, Doe #1 and Doe Prison Administration; and, (6) the portion of Count IV alleging 42 U.S.C. § 1985(3) conspiracy against Defendants Wickham, Snyder, Baker, Carpenter, Davis, Doe #1 and Doe Prison Administration. (ECF No. 11.)

On January 21, 2020, Plaintiffs filed their First Amended Complaint (ECF No. 39), which is now the operative complaint in this case. The allegations contained in Counts I through IV of the original complaint and the FAC are identical. (*Compare* ECF No. 12 at 5-22, *with* ECF No. 39 at 3-20.) Accordingly, Plaintiffs were permitted to proceed on Counts I through IV as outlined above. Plaintiffs were also permitted to add Count V alleging retaliation against Defendants Davis and Carpenter. (ECF No. 68.)

On August 11, 2021, Defendants filed a Suggestion of Death stating that Defendant Snyder passed away on June 20, 2021. (ECF No. 170.) On August 12, 2021, the Court ordered that if a motion for substitution was not filed within 90 days, the Court would dismiss Snyder from the case. (ECF No. 171.) No substitution was filed, and Snyder was dismissed from the case. (ECF No. 205.)

Plaintiffs and Defendants now move for summary judgment. (ECF Nos. 213, 226, respectively.) Each argues that no genuine issues of material fact exist as to the claims, and they are each entitled to judgment in their favor. (*Id.*) Defendants also assert they are entitled to qualified immunity. (ECF No. 226.)

## II.    LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can

preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its

burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting

1   the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City*

2   *of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in

3   the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3).

4   Nevertheless, the court will view the cited records before it and will not mine the record

5   for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party

6   does not make nor provide support for a possible objection, the court will likewise not

7   consider it).

8   **III.    DISCUSSION**

9       **A.    Count I - RLUIPA**

10      RLIUPA provides:

11          No government shall impose a substantial burden on the religious exercise
            of a person residing in or confined to an institution…even if the burden
12          results from a rule of general applicability, unless the government
            demonstrates that imposition of the burden on that person—(1) is in
13          furtherance of a compelling governmental interest; and (2) is the least
            restrictive means of furthering that compelling governmental interest.
14

15  42 U.S.C. § 2000cc-1(a). RLUIPA is "more generous to the religiously observant than the

16  Free Exercise Clause." *Jones v. Slade*, 23 F.4th 1124, 1139 (9th Cir. 2022) (citations

17  omitted).

18      "The Supreme Court has recognized RLUIPA as…[a] 'congressional effort[] to

19  accord religious exercise heightened protection from government-imposed burdens[.]'"

20  *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (quoting *Cutter v.*

21  *Wilkinson*, 544 U.S. 709, 714 (2005)). "As such, RLUIPA is to be 'construed broadly in

22  favor of protecting an inmate's right to exercise his religious beliefs.'" *Jones*, 23 F.4th at

23  1140 (quoting *Warsolider v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)); *see also*

24  *Johnson v. Baker*, 23 F.4th 1209, 1214 (9th Cir. 2022) (citation omitted). However,

25  "[c]ourts are expected to apply RLUIPA's standard with due deference to the experience

26  and expertise of prison and jail administrators in establishing necessary regulations and

27  procedures to maintain good order, security and discipline, consistent with consideration

28  of costs and limited resources." *Hartmann v. Cal. Dep't. of Corr.*, 707 F.3d 1114, 1124

(9th Cir. 2013) (internal quotation marks and citation omitted).

"Under RLUIPA, the challenging party bears the initial burden of proving that his religious exercise is grounded in a sincerely held religious belief …, and that the government's action substantially burdens his religious exercise." *Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015) (citations omitted); *see also Jones*, 23 F.4th at 1140; *Johnson*, 23 F.4th at 1214.

If the plaintiff makes a showing of a substantial burden on the exercise of his religion, the court's analysis then turns to whether the defendant has established that the burden furthers "a compelling governmental interest," and does so "by the least restrictive means." 42 U.S.C. § 2000cc-1(a), (b); *Holt*, 574 U.S. at 362 (citation omitted); *Jones*, 23 F.4th at 1141 (citations omitted); *Greene*, 513 F.3d at 988.

### 1.    RLUIPA Relief

As an initial matter, an inmate cannot recover damages under RLUIPA against prison officials. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011); *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014). Instead, "[a] RLUIPA plaintiff may only sue defendants in their official capacities for prospective injunctive relief." *Jones*, 23 F.4th at n. 4. An inmate's transfer out of the facility renders any claim for injunctive relief moot. *See Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012).

Any relief requested by Plaintiffs Kamedula and Wirth under RLUIPA is rendered moot as Kamedula and Wirth are no longer in NDOC custody. (ECF No. 49 at 1; ECF No. 125.) Thus, because these Plaintiffs are no longer incarcerated, their request for relief under RLUIPA should be dismissed.

Accordingly, the Court will only analyze the RLUIPA claims asserted by Plaintiffs Shaw, Cowart, and Jordan.

### 2.    Sincerely Held Belief

The Court must start with whether Plaintiffs' religious beliefs are sincerely held. RLUIPA "bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." *Greene*, 513 F.3d at 987 (quoting *Cutter*, 544 U.S. at 725 n. 13; 42 U.S.C. §

2000cc-5(7)(A)). The "initial RLUIPA step requires a narrow inquiry focused on (1) the specific religious practice at issue and (2) the specific practitioner." *Johnson,* 23 F.4th at 1209. Courts "have read RLUIPA's reference to 'any exercise of religion' literally (and thus broadly in favor of inmates) to include not only 'the belief and profession' of faith, but also individual 'physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine.'" *Jones,* 23 F.4th at 1141 (quoting *Greene*, 513 F.3d at 987 (alteration original, other citations omitted) ("the religious exercise at issue in Greene's lawsuit is not his ability to practice his religion as a whole, but his ability to engage in group worship").)

In this instance, there does not appear to be any dispute that Plaintiffs Shaw, Cowart, and Jordan's religious exercise is grounded in sincerely held religious beliefs.

### 3.    Substantial Burden

Therefore, the Court will turn to whether Defendants substantially burdened Plaintiffs' sincerely held religious beliefs when they changed the Chapel schedule. Here, Plaintiffs claim the Chapel schedule changes substantially burdened the exercise of their respective religions. (ECF No. 39 at 5.)

"In the context of a prisoner's constitutional challenge to institutional policies, [the Ninth Circuit] has held a substantial burden occurs 'where the state...denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on the adherent to modify his behavior and to violate his beliefs." *Hartmann*, 707 F.3d at 1125 (citation and quotation marks omitted); *see also Jones,* 23 F.4th at 1142. A "substantial burden" on "religious exercise" "must impose a significantly great restriction or onus upon such exercise." *Greene*, 513 F.3d at 987 (quoting *San Jose Christian Coll. V. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)); *Jones*, 23 F.4th at 1142 (citation omitted).

"A policy may impose a substantial burden on religious exercise in a number of ways." *Jones,* 23 F.4th at 1140. "A regulation may impact religious exercise directly, by forbidding conduct that an inmate believes he is religiously compelled to do, *see O'Lone*

*v. Est. of Shabazz,* 482 U.S. 342, 344-45 … (1987) (assigning Muslim prisoners to work schedule that prevented them from attending Friday prayer services commanded by Qur'an), or by compelling an inmate to do that which he believes he is religiously forbidden from doing, *see Holt,* 574 U.S. at 355, 359 … (requiring Muslim prisoner to violate religious beliefs that forbade trimming his beard); *Warsoldier,* 418 F.3d at 992, 995-96 (requiring Native American prisoner to violate religious beliefs that forbade cutting his hair)." *Id.* "More subtly, a regulation may impact religious exercise indirectly, by encouraging an inmate to do that which he is religiously prohibited or discouraged from doing, *see Greenhill v. Clarke*, 944 F.3d 243, 259-51 (4th Cir. 2019) (withholding participation in religious services 'as an incentive to improve inmate conduct'), or by discouraging an inmate from doing that which he is religiously compelled or encouraged to do, *see Jones v. Carter,* 915 F.3d 1147, 1150-51 (7th Cir. 2019) (discouraging inmates from choosing halal meals by charging for halal meat); *Shilling v. Crawford,* 536 F.Supp.2d 1227, 1233 (D. Nev. 2008) (offering Jewish prisoner choice between staying at a medium security facility without kosher meals or transferring to a maximum security facility with kosher meals), *aff'd* 377 F.Appx. 702 (9th Cir. 2010)." *Id.*

Because each Plaintiff is affiliated with a different religion and therefore exercise their religions in diverse ways, the Court will discuss each individually.

### i.    Plaintiff Shaw – Episcopal Services

Plaintiff Shaw claims the schedule changes effectively eliminated, for Episcopalian inmates, a space in the Chapel for music practice, baptism and confirmation classes, weekly unction, Preachers in Training classes, and worship leader and Eucharist training. (ECF No. 39 at 7, ⁋ 5.) However, Defendants argue that Shaw's religious exercise was not substantially burdened because he was still allotted at least one hour per week for worship services, is still allowed to conduct individualized services, such as individual prayer, Bible studies, and music practice in his cell, and he is still able to request additional timeslots for further activities. (ECF No. 226 at 17.)

///

Whether Shaw could pray in his cell alone or could conduct other services outside the chapel is immaterial to whether Defendants substantially burdened his religious practice by changing the Chapel schedule and eliminating services. "[T]he 'availability of alternative means of practicing religion' has no bearing on the 'substantial burden' inquiry." *Johnson*, 23 F.4th at 1216 (citing *Holt*, 574 U.S. at 361). Shaw's ability to engage in other forms of religious exercise is relevant to the *Turner* analysis—*Turner v. Safley*, 482 U.S. 78 (1987)—under Plaintiff's Free Exercise claim, but it is not relevant to his RLUIPA claim. *See Holt*, 574 U.S. at 361-62 (RLUIPA provides greater protection than the First Amendment; RLUIPA "asks whether the government has substantially burdened religious exercise …, not whether the RLUIPA claimant is able to engage in other forms of religious exercise.").

Defendants argue there was no substantial burden because they offered Shaw alternative time slots. Shaw asserts that the new Chapel schedule prevented him from renewing his Episcopal Worship Leader License and participating in classes and religious activities of his faith, which substantially burdened his ability to practice his religion. However, Shaw does not address, and it is otherwise unclear, how the use of alternative time slots or the ability to request additional time slots would constitute a substantial burden. At a minimum, there is a genuine issue of material fact as to this issue.

### ii.    Plaintiff Jordan – Nation of Islam Services

Plaintiff Jordan claims the Chapel schedule changes eliminated, for Nation of Islam inmates, weekly Jumu'ah prayer services in the Chapel and yearly, 30-day Ramadan services conducted in an activity room. (ECF No. 39 at 9-10, ¶¶ 8-11.) Defendants argue there was no substantial burden because they offered Plaintiff Jordan two alternative time slots to participate in Jumu'ah services. (ECF No. 226 at 17.) However, there is no admissible evidence to support Defendants' contention that there is "considerable flexibility" in the time that Jumu'ah prayer service could take place. Jordan asserts that the Jumu'ah service must take place midday. Nonetheless, Jordan does not address, and it is otherwise unclear, how the use of alternative time slots or the ability to request

additional time slots would constitute a substantial burden. At a minimum, there is a genuine issue of material fact as to this issue.

### iii.    Plaintiff Cowart – The Way Services

Plaintiff Cowart claims the schedule changes eliminated, for The Way inmates, a space in the Chapel for worship service with outside sponsor, Bible studies, music practice, and a yearly, two-day Pentecost service. (ECF No. 39 at 7-8, ¶ 6.) Defendants argue that because Cowart was a member of "The Way", which is not an NDOC recognized Faith Group and instead falls under the Christian Faith Group, Cowart had numerous other time slots available to him.

However, in comparing the December 2017 schedule with the February 2018 schedule, it appears Defendants did not remove services for all non-NDOC recognized Faith Groups but rather removed services only for certain groups, such as The Way. (*Compare* ECF No. 72-3 *with* ECF No. 72-5.) Nonetheless, Cowart does not address, and it is otherwise unclear, how the use of alternative time slots or the ability to request additional time slots would constitute a substantial burden. At a minimum, there is a genuine issue of material fact as to this issue.

### 4.    Compelling Interests and Least Restrictive Means

The Court will now turn to whether Defendants had a compelling governmental interest to justify the Chapel schedule change, and if so, whether that compelling governmental interest was achieved by the least restrictive means. The standard for showing a "compelling interest" is an "exceptionally demanding" standard, which requires the government to "sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." *Holt*, 574 U.S. at 364-65 (internal citation and quotation marks omitted). "Although RLUIPA adopts a compelling interest standard, context matters in the application of the standard, and courts should act with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited

resources.'" *Jones,* 23 F.4th at 1141 (quoting *Cutter,* 544 U.S. at 723).

Defendants argue there are several penological interests that justify the Chapel schedule changes: (1) they assert LCC was faced with a Chapel schedule which was not a fair and equitable distribution of access to the Chapel for all chapel-based Faith Groups; (2) some Faith Groups were given twice as many time slots as others; (3) there were services throughout the institution, which created safety and security concerns for the Warden; and (4) LCC staff were faced with the real possibility of an equal protection claim by other inmates. (ECF Nos. 226-1, 226-2, 226-3.)

Even assuming Defendants had valid safety and security interests which justified the Chapel schedule change, the Court finds that genuine issues of material fact exist as to whether the schedule change was the least restrictive means of achieving their goal of keeping the prison safe and secure.

While prison administrators are "accorded deference with regard to prison security," they must establish they "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Greene*, 513 F.3d at 989 (quoting *Warsoldier*, 418 F.3d at 999) (internal quotation marks omitted). "[I]n light of RLUIPA, no longer can prison officials justify restrictions on religious exercise by simply citing the need to maintain order and security in a prison. RLUIPA requires more." *Id*. at 989-90. Moreover, "RLUIPA does not permit ... unquestioning deference." *Holt,* 574 U.S. at 364; *see also Johnson,* 23 F.4th at 1217 ("we don't grant 'unquestioning deference' to the government's claim of a general security interest"). "Instead, 'prison officials *must* set forth detailed evidence, tailored to the situation before the court, that identifies the failings in the alternatives advanced by the prisoner.'" *Johnson*, 23 F.4th at 1217 (emphasis original, quoting *Warsoldier*, 418 F.3d at 1000). "To this end, RLUIPA requires a 'more focused' inquiry that looks at the challenged regulation's application to 'the particular claimant whose sincere exercise of religion is being substantially burdened.'" *Id*. (quoting *Holt*, 574 U.S. at 363). "[T]he government may not satisfy the compelling interest test by pointing to a general interest—it must show the 'marginal interest in enforcing' the [policy

at issue against the particular inmate]." *Id*. (citation omitted).

Defendants have not demonstrated they meaningfully "considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Warsoldier*, 418 F.3d at 999 (citation omitted). "'[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it.'" *Holt*, 574 U.S. at 365 (quoting *United States v. Playboy Ent. Group, Inc.*, 529 U.S. 803, 815 (2000)).

Here, Defendants assert the Chapel schedule was implemented as the least restrictive means of accommodating all recognized Faith Groups while considering the different security tiers and protective custody status. However, genuine issues of material fact exist as to whether the schedule change was the least restrictive means, as Defendants have offered no sound reason why they could not return to the pre-February 2018 Chapel schedule. In fact, many changes to the Chapel schedule have since been easily implemented after the departure of Baker and Carpenter.

Based on all the above, the Court finds both Defendants' and Plaintiffs' motions for summary judgment should be denied, with respect to Claim I under RLUIPA as genuine issues of material fact exist as to whether Plaintiffs' religious exercise was substantially burdened by the Chapel schedule change and whether the schedule change was the least restrictive means of achieving the Defendants' goal of keeping the prison safe and secure with respect to Plaintiffs Shaw, Jordan, and Cowart.[8]

### 5.    Personal Participation by Defendants Ferro, LeGrand, Potter, Thomas, and Wickham

Defendants assert there is no evidence that Defendants Ferro, LeGrand, Potter, and Thomas were personally responsible for the alleged RLUIPA violations. The Court addresses this argument in Section D, *infra*, but ultimately agrees that Defendants Ferro, LeGrand, Potter, and Thomas should be dismissed from this claim, as their only involvement was as grievance responders.

///

---

[8]    As noted above, the Court recommends that Defendants' motion be granted as to Plaintiffs Kamedula and Wirth based on the mootness of their claims.

As to Defendant Wickham, Defendants assert that Plaintiffs have failed to show Defendant Wickham—as a member of the RRT—personally participated in the creation or implementation of the LCC Chapel schedule, other than providing guidance and consultation to Defendants Carpenter and Davis. (ECF No. 226 at 19.) However, Defendants also confusingly admit that AR 810 states that "only the Chaplain, Warden or designees, and the RRT have the ability to adjust the chapel schedule to accommodate the needs of the various practitioners." (*Id.* at 18-19.) At a minimum, there is a genuine issue of material fact as to the extent of Wickham's participation as a member of the RRT and therefore summary judgment should not be granted to Defendant Wickham on this basis.

### 6.    Additional Briefing as to Mootness

As discussed above, an inmate cannot recover damages under RLUIPA against prison officials. *Sossamon*, 563 U.S. at 285; *Wood*, 753 F.3d at 904. Instead, "[a] RLUIPA plaintiff may only sue defendants in their official capacities for prospective injunctive relief." *Jones*, 23 F.4th at n. 4.

The record reflects that since this lawsuit was filed, LCC has changed the chapel schedule numerous times. However, it is unclear if the current iteration of the schedule has addressed the Plaintiffs' particular concerns. Thus, further briefing should be required to determine whether Plaintiffs Shaw, Cowart, and Jordan have received the injunctive relief they seek in this action or whether that request is moot.

### B.    Count II – Fourteenth Amendment Equal Protection

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To prevail on an equal protection claim under § 1983, the plaintiff must establish that "the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Hartmann*, 707 F.3d at 1123 (quotation marks and citation omitted).

///

17

"[T]he Equal Protection Clause entitles each prisoner to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Shakur*, 514 F.3d at 891 (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972)). "This does not mean, however, that all prisoners must receive identical treatment and resources." *Hartmann*, 707 F.3d at 1123 (citing *Cruz*, 405 U.S. at 322 n.2).

In *Shakur*, the Ninth Circuit said the standard applied to an inmate's religious equal protection claim is the four-part reasonableness test under *Turner v. Safley*, 482 U.S. 78 (1987). Under that test, the inmate cannot succeed "if the difference between the defendants' treatment of him and their treatment of [inmates of another faith group] is reasonably related to legitimate penological interests." *Id.* (citation and quotation marks omitted).

The *Turner* reasonableness factors are: (1) "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; (4) the "absence of ready alternatives" and "the existence of obvious, easy alternatives." *Turner*, 482 U.S. at 89-91; *see also O'Lone*, 482 U.S. at 349.

Neither party addresses the *Turner* factors in their motion for summary judgment. Thus, they have not met their initial burdens for purposes of their motions. Accordingly, the motions should both be denied as to the Fourteenth Amendment Equal Protection Clause claim as alleged in Count II.

## C.    Count III – RLUIPA and Fourteenth Amendment Equal Protection

Count III asserts RLUIPA and Fourteenth Amendment equal protection violations against Defendants LeGrand, Ferro, Potter, Baker, Carpenter, and Thomas based on these Defendants' denial of grievances related to Counts I and II, discussed above. (ECF No. 39.)

Defendants assert summary judgment is appropriate for this claim as to Defendants LeGrand, Ferro, Potter, and Thomas because their only involvement in the allegedly unconstitutional conduct is the denial of grievances and thus, they lack any personal participation in these claims. (ECF No. 226.)

"There are two elements to a section 1983 claim: (1) the conduct complained of must have been under color of state law, and (2) the conduct must have subjected the plaintiff to a deprivation of constitutional rights." *Jones v. Cmty. Redevelopment Agency of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984). A prerequisite to recovery under the Civil Rights Act, 42 U.S.C. § 1983, is that the plaintiff prove that the defendants deprived him of a right secured by the Constitution and the laws of the United States. *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985). Liability under § 1983 arises only upon a showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). "[V]icarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L.Ed. 2d 868 (2009).

Generally, one cannot state a constitutional claim based on their dissatisfaction with the grievance process. *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1157 (E.D. Wash. 2014). Where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act, the defendant cannot be liable under § 1983." *Id.* (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999)). However, the issue of whether responding to a grievance can rise to the level of personal participation required for a § 1983 claim was addressed by the Ninth Circuit in *Snow v. McDaniel*, 681 F.3d 978 (9th Cir. 2012)., *overruled on other grounds in Peralta v. Dillard*,

744 F.3d 1076 (9th Cir. 2014). In *Snow*, the inmate plaintiff had submitted several grievances about the denial of a recommended hip surgery; there was testimony that the warden and associate warden were aware of the grievances, and that they had reviewed an order stating that the inmate needed a hip replacement. *Snow*, 681 F.3d at 989. Defendants argued that there was no evidence in the record that they were personally involved in any of the medical treatment decisions. *Id.* The Ninth Circuit, however, said that their review of the grievance was sufficient to demonstrate that the warden and associate warden were aware of the inmate's serious hip condition and failed to act to prevent further harm so that the warden and associate warden were not entitled to summary judgment based on lack of personal participation. *Id.*

Defendants Ferro, LeGrand, Potter, and Thomas's responses to Plaintiffs' grievances could be sufficient to meet the personal participation required for a § 1983 suit if, through their own individual actions, they violated the Constitution. However, there is no evidence that these Defendants were otherwise involved with the creation of the February 2018 Chapel schedule or the day-to-day operations of the Chapel. Put simply, there is no evidence they caused the alleged constitutional violation, only that they denied Plaintiffs' grievances. Additionally, "[h]olding a prison official personally responsible for damages simply because he is familiar with a prisoner's circumstances through direct communications with the prisoner and through communications with his subordinates [or caseworkers] is such a broad theory of liability that it is inconsistent with the personal responsibility requirement for assessing damages against public officials in a 42 U.S.C. § 1983 suit." *May v. Williams*, No. 2:10-CV-576-GMN-LRL, 2012 WL 1155390, at *3 (D. Nev. Apr. 4, 2012) (citing *Crowder v. Lash*, 687 F.2d 996, 1005-1006 (7th Cir. 1982); *see also Jackson, v. State of Nevada*, No. 2:16-cv-00995-APG-NJK, 2019 WL 6499106, at *7 (D. Nev. Dec. 3, 2019) ("[C]ourts have held that merely denying a grievance without some decision-making authority or ability to resolve the underlying issue grieved is not enough to establish personal participation.").

///

Because Plaintiffs present no evidence that Defendants Ferro, LeGrand, Potter, or Thomas did anything more than simply respond to grievances, this does not rise to the level of participation required for a § 1983 suit. Based on their lack of personal participation, Defendants Ferro, LeGrand, Potter, and Thomas are entitled to summary judgment on the RLUIPA and equal protection claims.

As noted above, there is evidence that Defendants Baker and Carpenter were directly involved in changing the Chapel schedule and Defendants do not argue that they are entitled to summary judgment on this basis, for this claim. Thus, the Court recommends that the allegations in this claim (as it relates to grievances responses by Baker and Carpenter, only) be combined with Counts I and II.[9]

### D.    Count IV – First Amendment Establishment Clause

"The Establishment Clause, applicable to state action by incorporation through the Fourteenth Amendment, states that Congress shall make no law respecting an establishment of religion." *Hartmann*, 707 F.3d at 1125 (internal citation and quotation marks omitted). "This clause 'means at least' that '[n]either a state nor the Federal Government…can pass laws which aid on religion, aid all religions, or prefer one religion over another.'" *Id.* (citation omitted). "[A] prison regulation accommodating inmates' rights under the First Amendment must do so without unduly preferring one religion over another[.]" *Id.* (citation omitted).

Defendants' motion summarily asserts that Defendants did not prefer one religion over another and thus Defendants are entitled to summary judgment on the Establishment Clause claim. However, Plaintiffs presented evidence to suggest that Defendants preferred certain religions over others. Plaintiffs assert that certain religions such as Catholic, Pagan, Native American, Jehovah's Witness, and Jewish Faith Groups were allowed "outcount" services, while other religions, such as Episcopalians, were not. (*See* ECF No. 149-1 at 125-127.) Additionally, in comparing the December 2017 Chapel

---

[9]    The effect of combining Count III with Counts I and II would not change Count I but would add Baker as a Defendant to the allegations in Count II.

schedule with the February 2018 Chapel schedule, it appears Defendants did not remove services for <u>all</u> non-NDOC recognized Faith Groups but rather removed services only for certain groups, such as The Way. (*Compare* ECF No. 72-3 *with* ECF No. 72-5.)

Further, in a note following the Faith Group Facilitator's Meeting held on January 24, 2018, Defendant Davis wrote in response to an apparent question as to why Muslim studies were taken away: "I told them that I took that to AW Carpenter and she said, "Denied." I couldn't say in front of all of them that it was because they teach racism, hate and black supremacy. There would have been a riot." (ECF No. 213 at 511.)

While incredibly troubling, this statement aside, NDOC's Faith Group Overview constitutes at least some evidence that NDOC attempted to accommodate the personal and group worship requirements of the 28 faith groups recognized by NDOC. However, it is not clear on this record whether these other groups requested and were granted the ability to participate in group prayer services on a particular date and time that coincides with their faith, while Plaintiffs were not.

Based on the above, there is question of fact as to whether there was a violation of the Establishment Clause, and Plaintiffs' and Defendants' motions for summary judgment should be denied in this regard.

### E.    Count IV – First Amendment Free Exercise Clause

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment…prohibits government from making a law prohibiting the free exercise [of religion]." *Hartmann*, 707 F.3d at 1122 (citations and quotation marks omitted, alteration original). "The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam); *see also O'Lone*, 482 U.S. at 348; *Shakur*, 514 F.3d at 883-84.

To implicate the Free Exercise Clause, a prisoner must establish his belief is both sincerely held and rooted in religious belief. *See Shakur*, 514 F.3d at 884-85. "The Free

Exercise Clause does not require plaintiffs to prove the centrality or consistency of their religious practice: 'It is not within the judicial ken to question the centrality of particular beliefs of practices to faith.'" *Jones*, 23 F.4th at 1145 (quoting *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 689 (1989)). The test is whether the plaintiff sincerely believes the conduct at issue is consistent with his faith. *Id.* (citation omitted).

"A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1032 (9th Cir. 2015) (citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987), *aff'd sub nom. Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989)).

"Once a claimant demonstrates that the challenged regulation impinges on his sincerely held religious exercise, the burden shifts to the government to show that the regulation is 'reasonably related to legitimate penological interests.'" *Jones*, 23 F.4th at 1144 (quoting *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015)).

In analyzing the legitimacy of regulation of a prisoner's religious expression, the court is instructed to utilize the "reasonableness" factors set forth in *Turner*, 482 U.S. 78. *See O'Lone*, 482 U.S. at 349; *Jones*, 791 F.3d at 1032; *Shakur*, 514 F.3d at 884. As discussed above, the *Turner* reasonableness factors are: (1) "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; (4) the "absence of ready alternatives" and "the existence of obvious, easy alternatives." *Turner*, 482 U.S. at 89-91; *see also O'Lone*, 482 U.S. at 349.

"To ensure that courts afford the appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349 (citation omitted).

While Defendants cite to the *Turner* factors in their motion for summary judgment, they refer to their analysis on the RLUIPA claim to support their assertion that summary judgment should be granted. (ECF No. 226 at 23-25.) The Court has already determined that genuine issues of material fact exist as to the RLUIPA claim, therefore the Court is not persuaded that Defendants' assertions now support their Free Exercise claim. Because Defendants do not specifically address the *Turner* factors in their motion for summary judgment, they have not met their initial burden for purposes of their motion.

Similarly, Plaintiffs' motion for summary judgment attempts to address each of the *Turner* factors but fails to provide specific evidence as to each factor. (*See* ECF No. 213 at 31-33.) Plaintiffs fail to address whether there were alternative means of exercising their religious rights (instead stating the AR provided the alternative means), and also fail to address the "absence of ready alternatives" and "the existence of obvious, easy alternatives." Plaintiffs also state "Baker and Carpenter's new rule and limitations were arbitrary, capricious, and implemented with malice…" (*Id.* at 33.) However, the standard under the Free Exercise Clause is whether the burden is "reasonably related to a legitimate penological purpose", not whether it is arbitrary and capricious. *See O'Lone*, 482 U.S. at 349. Thus, Plaintiffs have not met their initial burden for purposes of their motion.

Therefore, both Plaintiffs' and Defendants' motions for summary judgment should be denied as to the First Amendment Free Exercise Clause claim.

**F.    Count IV – 42 U.S.C. § 1985(3) Conspiracy**

A cause of action under 42 U.S.C. § 1985(3) has four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983). "[T]he second of these four elements requires that in addition to identifying

a legally protected right, a plaintiff must demonstrate a deprivation of that right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting *Griffith v. Breckenridge*, 403 U.S. 88, 102 (1971)). Put another way, Plaintiffs under 1985(3) must "show that they are members of a class that the government has determined 'require[s] and warrant[s] special federal assistance in protecting their rights.'" *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002) (quoting *Sever*, 978 F.2d at 1536). As to the fourth element, the "deprivation of federal constitutional rights is a necessary element of the alleged conspiracy." *Giannini v. Real*, 911 F.2d 354, 359 (9th Cir. 1990).

The Ninth Circuit has not determined whether violations based on religious animus are within the ambit of 1985(3). *See Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 524 (9th Cir. 1994). However, this Court has found that religious animus is covered by 1985(3). *See Howard v. Connett*, No. 2:11-CV-01402-APG, 2014 WL 587400, at *19 (D. Nev. Feb. 14, 2014).

Plaintiffs allege Defendants met to determine religious restrictions that allegedly have violated Plaintiffs' free exercise, establishment, and equal protection rights forming a conspiracy under 1985(3) based on religious animus. (ECF No. 39.)

Defendants assert that the evidence shows the change in the Chapel schedule was not based on religious animus, but rather trying to provide equitable access to all Faith Groups. (ECF No. 226 at 26.) However, as discussed above, there is a genuine issue of material fact as to whether Defendants' motivation in changing the Chapel schedule was some "class-based, invidiously discretionary animus."[10] *See Sever*, 978 F.2d at 1536.

///

---

[10]    Defendant Davis's written response to an apparent question as to why Muslim studies were taken away—"…I couldn't say in front of all of them that it was because they teach racism, hate and black supremacy…."—is some evidence that there was an improper motivation underlying the change in Chapel schedule.

1    Accordingly, the Court recommends the motions for summary judgment be denied,

2    as genuine issues of material fact exist as to whether Defendants' motivation in changing

3    the Chapel schedule was motivated by religious animus.

4    **G.    Count V – Retaliation**

5    "Within the prison context, a viable claim of First Amendment retaliation entails five

6    basic elements: (1) An assertion that a state actor took some adverse action against an

7    inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

8    chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

9    reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559,

10    567-568 (9th Cir. 2005).

11    "To prevail on a retaliation claim, a plaintiff must show that his protected conduct

12    was the substantial or motivating factor behind the defendant's conduct." *Brodheim v.*

13    *Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (internal quotations omitted). The inmate bears

14    the burden of pleading and proving the absence of legitimate correctional goals for an

15    alleged retaliatory action. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).

16    Plaintiffs assert that Davis and Carpenter have violated Plaintiffs' First Amendment

17    rights by threatening and/or taking adverse action, in the form of limiting their ability to

18    practice their respective religions, against Plaintiffs who exercised or wished to exercise

19    their First Amendment rights to redress of grievances. (ECF No. 39.)

20    Defendants assert that even assuming there was some adverse action taken

21    against Plaintiffs, there is no evidence Plaintiffs' First Amendment rights were chilled.

22    Defendants assert that the timing of the grievances suggest Plaintiffs were emboldened

23    and motivated, rather than chilled, in their filings. (ECF No. 226 at 27.)

24    Plaintiffs have identified sufficient evidence to raise a triable issue of fact as to

25    whether Davis (with Carpenter's approval) threatened to reduce inmates' Chapel services

26    to one-hour per week or suspend music activities if inmates filed grievances. (*See* ECF

27    No. 149-1 at 19-21; ECF No. 213 at 416, 511, 519.) A reasonable jury could find that

28    threatening to remove religious activities if inmates filed grievances is enough to chill a

person of ordinary firmness from filing grievances in the future and does not serve a legitimate correctional goal. *See Brodheim*, 584 F.3d at 1270 (internal quotation omitted) (noting that the mere "threat of retaliation is sufficient injury if made in retaliation for an inmate's use of prison grievances procedures").

Thus, the Court finds that a genuine issue of material fact exists as to the retaliation claim, and Plaintiffs' and Defendants' motions for summary judgment should be denied.

### H.    Qualified Immunity

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown*, 751 F.3d at 988–89 (citing *Pennhurst*, 465 U.S. at 100). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the Court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). The Court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240–42. A right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (quoting *Anderson*, 483 U.S. at 640).

"[J]udges of the district courts… should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should

be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. "[W]hether a constitutional right was violated… is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). While the Court decides as a matter of law the "clearly established" prong of the qualified immunity analysis, only the jury can decide the disputed factual issues. *See Morales v. Fry*, 873 F.3d 817, 824-25 (9th Cir. 2017); *Reese v. Cty. Of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018).

Defendants contend that they are entitled to qualified immunity because they relied on AR 810, and it has not been deemed unconstitutional, and therefore they were not on notice that they were violating any constitutional rights by following the policies that have been implemented.

However, it was clearly established that a prison official violates RLUIPA if he or she substantially burdens an inmate's religious practice and the basis for the burden is not supported by a compelling governmental interest, or if it is, that compelling governmental interest is not achieved by the least restrictive means. *Holt,* 574 U.S. 352; *Hartmann*, 707 F.3d at 1124.

It was clearly established that a prison official violates the Free Exercise Clause if he or she substantially burdens an inmate's religious exercise and the basis for burdening the religious exercise is not reasonably related to legitimate penological interests. *Hartmann*, 707 F.3d at 1122; *Shakur*, 514 F.3d at 883-84.

It was clearly established that a prison official violates the Establishment Clause if he or she prefers one religion over another. *Hartmann*, 707 F.3d at 1125.

Finally, it is clearly established that a prison official violates the Equal Protection Clause if an inmate is not given "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Shakur*, 514 F.3d at 891 (quotation marks and citation omitted).

Taking the facts in the light most favorable to Plaintiffs, a fact finder could determine that Defendants violated these rights. For these reasons, Defendants are not

1  entitled to qualified immunity.

2  **IV.   CONCLUSION**

3       For good cause appearing and for the reasons stated above, the Court

4  recommends that Plaintiffs' motion for summary judgment, (ECF No. 213), be denied, and

5  Defendants' motion for summary judgment, (ECF No. 226), be granted, in part, and

6  denied, in part.

7       The parties are advised:

8       1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of

9  Practice, the parties may file specific written objections to this Report and

10 Recommendation within fourteen days of receipt. These objections should be entitled

11 "Objections to Magistrate Judge's Report and Recommendation" and should be

12 accompanied by points and authorities for consideration by the District Court.

13      2.    This Report and Recommendation is not an appealable order and any

14 notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the

15 District Court's judgment.

16 **V.    RECOMMENDATION**

17      **IT IS THEREFORE RECOMMENDED** that Plaintiffs' motion for summary

18 judgment, (ECF No. 213), be **DENIED**; and,

19      **IT IS FURTHER RECOMMENDED** that Defendants' motion for summary

20 judgment, (ECF No. 226), be **GRANTED, IN PART, AND DENIED, IN PART**, as follows:

21           • As to the Count I RLUIPA claim:

22                o  the Court recommends that the motion be **GRANTED** as to

23                   Plaintiffs Kamedula and Wirth based on mootness, but **DENIED**

24                   as to Plaintiffs Shaw, Jordan, and Cowart; and,

25                o  the Court recommends that the motion be **GRANTED** as to

26                   Defendants Thomas, Ferro, LeGrand, and Potter, who should be

27                   **DISMISSED** based on a lack of personal participation.

28           • As to the Count II Fourteenth Amendment equal protection claim, the

Court recommends that the motion be **DENIED**.

- As to the Count III, RLUIPA and Fourteenth Amendment equal protection claim the Court recommends the motion be **GRANTED** as to Defendants LeGrand, Ferro, Potter, and Thomas, but **DENIED** as to Defendants Carpenter and Baker. The Court also recommends that the allegations contained in Count III be combined with Counts I and II, such that it is no longer a standalone claim.

- As to the portion of Count IV alleging a First Amendment Establishment Clause violation, the Court recommends that the motion be **DENIED**.

- As to the portion of Count IV alleging a First Amendment free exercise violation, the Court recommends that the motion be **DENIED**.

- As to the portion of Count IV alleging a 42 U.S.C. § 1985(3) conspiracy claim, the Court recommends that the motion be **DENIED**.

- As to the Count V retaliation claim, the Court recommends that the motion be **DENIED**.

- Defendants' assertion that they are entitled to qualified immunity should be **DENIED**.

- Defendants LeGrand, Ferro, Potter, and Thomas should be **DISMISSED** from the entirety of this action.

In sum, the Court recommends that only the following proceed:

- Count I RLUIPA claim (combined with allegations in Count III) by Plaintiffs Shaw, Jordan, and Cowart against Defendants Davis, Carpenter, Wickham, and Baker;

- Count II Equal Protection claim (combined with allegations in Count III) by all Plaintiffs against Defendants Davis, Carpenter, Wickham, and Baker;

- Count IV Establishment Clause claim by all Plaintiffs against Defendants Wickham, Baker, Carpenter, and Davis;

- Count IV Free Exercise claim by all Plaintiffs against Defendants Wickham, Baker, Carpenter, and Davis;
- Count IV Conspiracy claim by all Plaintiffs against Defendants Wickham, Baker, Carpenter, and Davis; and
- Count V Retaliation claim by all Plaintiffs against Defendants Davis and Carpenter.

**IT IS FURTHER RECOMMENDED** that if this Report and Recommendation is adopted with respect to the Count I RLUIPA claim, the Court should require further briefing on whether Plaintiffs Shaw, Jordan, and Cowart have received the injunctive relief they seek or whether that request is moot.

**DATED**: July 14, 2022        .

_____
**UNITED STATES MAGISTRATE JUDGE**