# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

NORMAN SHAW, *et al.*,

    Plaintiffs,

v.

SCOTT DAVIS, *et al.*,

    Defendants.

Case No. 3:18-cv-00551-MMD-CLB

ORDER

## I.  SUMMARY

*Pro se* Plaintiffs Norman Shaw, Joseph Cowart, Brian Kamedula, Charles M. Wirth, and Ansell Jordan, either current or former inmates in the custody of the Nevada Department of Corrections ("NDOC") at the Lovelock Correctional Center ("LCC"), sued prison officials under 42 U.S.C. § 1983 for violating their statutory and constitutional religious rights by changing the LCC chapel schedule, in 2018, in a way that eliminated or moved various religious services. (ECF No. 39 ("FAC").) Before the Court is a Report and Recommendation ("R&R") of United States Magistrate Carla L. Baldwin (ECF No. 252), recommending the Court deny Plaintiffs' motion for summary judgment (ECF No. 213 ("Plaintiffs' Motion")), and grant in part, but deny in part, Defendants' motion for summary judgment (ECF No. 226 ("Defendants' Motion)). Plaintiffs[1] filed an objection to the R&R. (ECF No. 253 ("Objection").)[2] As further explained below, the Court will mostly accept the R&R and overrule Plaintiffs' Objection but will sustain the Objection in part to reflect that the Court agrees some Plaintiffs are entitled to summary judgment on their Religious Land

---

[1] Shaw filed the Objection. (ECF No. 253.) Cowart (ECF No. 254), Wirth (ECF No. 255), Jordan (ECF No. 256), and Kamedula (ECF No. 257) joined it. The Court accordingly refers to the Objection as Plaintiffs' Objection, and the arguments therein as Plaintiffs' arguments.

[2] Defendants filed a response to the Objection. (ECF No. 258 (the "Response").)

Use and Institutionalized Persons Act of 2000 ("RLUIPA") claim, where the only question remaining on those claims is what injunctive relief is appropriate.

**II. BACKGROUND**

The Court incorporates by reference Judge Baldwin's recitation of Plaintiffs' allegations in the FAC and the procedural history of this case provided in the R&R, which the Court adopts. (ECF No. 252 at 2-6.) Judge Baldwin generally recommends that the Court grant Defendants' Motion in part to reflect that some Defendants did not personally participate in the alleged constitutional violations, and that two Plaintiffs have since been released from NDOC custody, rendering their RLUIPA claims moot, but otherwise recommends the Court deny both sides' motions and let Plaintiffs' remaining claims proceed to trial. (*See generally id.*) However, Judge Baldwin also recommends the Court direct supplemental briefing "to determine whether Plaintiffs Shaw, Cowart, and Jordan have received the injunctive relief they seek in this action or whether that request is moot." (*Id.* at 17.)

To that point, and as further discussed below, Plaintiffs respond in their Objection that they do not believe they have received the injunctive relief they seek through the current chapel schedule at LCC, so the Court will not adopt that particular recommendation. (ECF No. 253 at 6.) But more generally, Plaintiffs mostly argue in their Objection that Judge Baldwin should have recommended the Court grant them summary judgment on several of their claims, instead of finding genuine disputes of material fact remain. (*See generally id.*) The Court will discuss those arguments in more detail below. But for now, the Court notes that Plaintiffs do not appear to object to Judge Baldwin's recommendation to grant Defendants' Motion in part—specifically to dismiss Kamedula and Wirth's RLUIPA claims as moot because they are no longer in custody, and grant summary judgment to Defendants Thomas, Ferro, LeGrand, and Potter for lack of personal participation. (*Compare id. with* ECF No. 252 at 10, 20-21, 29-30.) The Court agrees with these recommendations and adopts them without objection from Plaintiffs.

More broadly, the Court generally agrees with Judge Baldwin's analysis in the R&R

2

except as explained below. The Court accordingly accepts and adopts the R&R except as specifically provided in the Discussion and Conclusion sections below.

## III. LEGAL STANDARD

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." *Id.* The Court's review is thus de novo as to the portions of the R&R Plaintiffs object to because Plaintiffs filed their Objection.[3] (ECF No. 253.)

## IV. DISCUSSION

By the Court's count, Plaintiffs raise 11 arguments in their Objection. The Court will address each argument in turn.

### A. The Way and KAIROS

Plaintiffs first object to Judge Baldwin's statement in the statement of undisputed facts in the R&R that The Way and Kairos are not religions recognized by NDOC. (ECF No. 253 at 1-2 (objecting to ECF No. 252 at 2 ("KAIROS and The Way are not recognized

---

[3]Defendants erroneously state in their Response that the clearly erroneous standard of review applies. (ECF No. 258 at 2-3.) Defendants rely on LR IB 3-1. (*Id.* at 2 ("A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case under LR IB 1-3, when it has been shown the magistrate judge's order is clearly erroneous or contrary to law.").) But that rule applies to matters that may finally be determined by a magistrate judge in civil cases. *See* LR IB 3-1. Here, the Court is reviewing Judge Baldwin's Recommendation that the Court deny the parties' motions for summary judgment. (ECF No. 252.) LR IB 1-4(c) provides that motions for summary judgment may not be finally determined by Magistrate Judges. Accordingly, LR IB 3-2— not LR IB 3-1—applies to the Court's review of the R&R. The Court's review of the R&R is accordingly *de novo* as to those portions of the R&R that Plaintiffs object to. *See* LR IB 3-2(b). The Court noticed the same error in a prior case. *See, e.g.*. *Pearson v. Dzurenda*, Case No. 3:19-cv-00031-MMD-CSD, ECF No. 75 at 3 n.2 (D. Nev. Feb. 14, 2021) (including a nearly identical footnote to this one in a nearly identical situation, but where the error came from a different attorney employed by the Nevada Attorney General's office, suggesting the error is not limited to one attorney).

And while the Court acknowledges that Defendants refer to the correct standard in passing (ECF No. 258 at 3), Defendants refer to the clearly erroneous standard throughout the rest of their Response (*id.* at 4, 5, 7).

3

by NDOC as Faith Groups. (ECF No. 226-4.)")`.`) Plaintiffs argue that NDOC implicitly recognized KAIROS and The Way as religions because it permitted their adherents to hold services in the LCC chapel for years until the 2018 schedule change challenged in this case. (*Id.*) Defendants counter that this understanding is incorrect because religions are only recognized by NDOC if they appear on the Faith Group Overview, and neither of these groups appear on the Faith Group Overview. (ECF No. 258 at 7.) The Court agrees with Defendants and overrules this objection.

To start, there is no dispute that neither KAIROS nor The Way are listed on the NDOC's Faith Group Overview. (ECF No. 226-4 at 5.) And the Court determines this omission means they are not religions recognized by the NDOC. First, Administrative Regulation ("AR") 810.3(11)(b)(7) provides that the Religious Review Team ("RRT") will make the necessary amendments to the Faith Group Overview if a request to recognize a new religion is approved. (ECF No. 72-2 at 15.) This leads to a reasonable inference that if a faith group is not on the Faith Group Overview, it is not a recognized religion. Second, the definitions of Faith Group and Faith Group Overview in AR 810.3 support the view that only groups listed on the Faith Group Overview are recognized by NDOC. Faith Group is defined as a religious or spiritual denomination, sect, or organization that is recognized by NDOC. (*Id.* at 6.) And Faith Group Overview is defined as the compilation that defines the practices, etc. of Faith Groups recognized by NDOC. (*Id.*) Third, Section 14.A. of AR 810.3 uses the phrasing "AR 810 recognized Faith Group[,]" further suggesting that only religions that appear on the list are recognized by NDOC. (*Id.* at 31.) Fourth, Section 3.B. of AR 810.3 states that special privileges bestowed on a one-time basis do not create precedent, suggesting that any special privileges adherents of KAIROS or The Way enjoyed in the past did not somehow convert them into Faith Groups recognized by NDOC. (*Id.* at 4.)

In sum, the Court finds that if a faith group is not listed on NDOC's Faith Group Overview (ECF No. 226-4 at 5), it is not a Faith Group recognized by NDOC. Accordingly, the Court accepts and adopts Judge Baldwin's statement KAIROS and The Way are not NDOC-recognized faith groups and overrules Plaintiffs' corresponding objection.

### B.  Official and Unofficial Capacities

Plaintiffs next object to Judge Baldwin's purported failure to acknowledge that all Defendants are sued in their official and unofficial capacities. (ECF No. 253 at 2.) While the distinction between official and unofficial capacities can matter in some circumstances, Plaintiffs do not explain how Judge Baldwin's purported failure to mention that Plaintiffs are suing all Defendants in the official and unofficial capacities affected her analysis, much less how it caused Judge Baldwin to err in some way. This objection is thus overruled.

### C.  Substantial Burden Under RLUIPA

Plaintiffs then object to Judge Baldwin's finding that there are disputes of material fact regarding whether the 2018 LCC chapel schedule change substantially burdened Plaintiffs' religious exercise under RLUIPA. (ECF No. 253 at 2-5 (objecting to ECF No. 252 at 12-16).) Plaintiffs argue Judge Baldwin overlooked testimony at a preliminary injunction hearing going to substantial burden and reached a conclusion contrary to the Court's conclusion in *Elmajzoub v. Davis*, Case No. 3:19-cv-00196-MMD-CSD, ECF No. 73 at 2 (D. Nev. Jun. 14, 2022) regarding the same schedule change at issue in this case— and ignored Plaintiffs' request that she take judicial notice of the *Elmajzoub* decision before issuing her R&R. (*Id.*) Defendants counter that the Court should overrule Plaintiffs' objection because they "failed to demonstrate that they use the steps outlined in AR 810.3 to request additional religious services[,]" and the testimony at the preliminary injunction hearing does not indicate that Plaintiffs requested any changes to the schedule in 2018 when LCC officials made the challenged changes. (ECF No. 258 at 3-5.) The Court agrees with Plaintiffs.

Indeed, the Court declines to adopt Judge Baldwin's recommendation as to this issue and instead finds Plaintiffs are entitled to summary judgment that the 2018 LCC chapel schedule change substantially burdened their religious exercise rights under RLUIPA. There is no dispute here that the schedule change eliminated recurring services that Shaw, Jordan, and Cowart were used to attending. Particularly considering that

5

nobody questions the sincerity of Plaintiffs' beliefs, losing services they were accustomed to constitutes a burden on their religious exercise.

As to Shaw, he "asserts that the new Chapel schedule prevented him from renewing his Episcopal Worship Leader License and participating in classes and religious activities of his faith[.]" (ECF No. 252 at 13.) And Defendants never offered any evidence to counter Shaw's assertion that the schedule change substantially burdened his religious exercise. (ECF No. 226 at 17 (declining to specifically address Shaw, much less present evidence on substantial burden).) Judge Baldwin's conclusion that a dispute of material fact remains as to this issue accordingly does not follow. (ECF No. 252 at 13.) Moreover, the Court may not take a "narrow view of what constitutes a 'substantial burden'" and the "availability of alternative means of practicing religion" is irrelevant to the inquiry. *Johnson v. Baker*, 23 F.4th 1209, 1215 (9th Cir. 2022). Thus, and as Judge Baldwin also noted (ECF No. 252 at 13), the fact that NDOC may have presented alternatives to Shaw in lieu of the services he was accustomed to has no bearing on the inquiry. In sum, and again particularly absent any evidence to the contrary, the pertinent NDOC officials' 2018 schedule change eliminating several services Shaw attended on a weekly basis constituted a substantial burden on his religious exercise under RLUIPA.

As to Jordan, Judge Baldwin found there was no admissible evidence to support Defendants' contention that there was considerable flexibility in the time the Jumu'ah prayer service could take place, but nonetheless found that there was a dispute of material fact as to whether Jordan could have attended Jumu'ah at other times. (*Id.* at 13-14.) This recommendation does not follow either. "There are, of course, no alternative means of attending Jumu'ah; respondents' religious beliefs insist that it occur at a particular time." *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 351 (1987). And indeed, the Court found that the same schedule change at issue here constituted a substantial burden under RLUIPA regarding Jumu'ah specifically in *Elmajzoub*, Case No. 3:19-cv-00196-MMD-CSD, ECF No. 73 at 2. Thus, it would be logically difficult for the Court to reach a different conclusion here. The Court finds that the 2018 LCC schedule change moving Jumu'ah from the early

6

afternoon on Fridays constitutes a substantial burden on Jordan's religious exercise under RLUIPA.

As to Cowart, there similarly appears to be no dispute that the schedule change eliminated services he was accustomed to attending, and the ability to request or use alternative or additional time slots is not strictly relevant to the RLUIPA inquiry. (ECF No. 252 at 14.) And the Court does not find that the fact The Way is not an NDOC-recognized Faith Group changes the analysis. Judge Baldwin noted that there appears to be no dispute that Cowart's participation in the services eliminated by the schedule change were grounded in his sincerely held religious beliefs. (*Id.* at 11.) And Defendants do not dispute that the schedule change eliminated "a space in the Chapel for worship service with outside sponsor, Bible studies, music practice, and a yearly, two-day Pentecost service." (*Id.* at 14.) Thus, several recurring services and events grounded in Cowart's sincerely-held religious beliefs were eliminated. This constitutes a substantial burden on his religious exercise rights under RLUIPA. *See, e.g.*, *Johnson*, 23 F.4th at 1216 (finding that NDOC regulation restricting the plaintiff's "use of scented oil during prayer to a paltry one out of 35 prayers per week" constituted a substantial burden on his religious exercise under RLUIPA). The Court accordingly rejects Judge Baldwin's recommendation to find a dispute of material fact precludes Cowart summary judgment that his religious exercise rights were burdened by the schedule change.

In sum, the Court finds Plaintiffs are entitled to summary judgment that the 2018 schedule change regarding the LCC chapel substantially burdened Plaintiffs' religious exercise rights under RLUIPA.

### D.     Compelling Interest Under RLUIPA

Plaintiffs next object to Judge Baldwin having found a genuine dispute of material fact precluding summary judgment as to whether Defendants had a compelling interest under RLUIPA justifying the 2018 change to the LCC chapel schedule. (ECF No. 253 at 5-6.) Plaintiffs more specifically argue that Judge Baldwin overlooked the evidence Plaintiffs proffered with their Motion to the effect that Defendants did not consider any less

7

restrictive alternatives before implementing the schedule change, pointing to discovery responses from Defendants where Defendants refused to state what less restrictive options they considered when asked, instead contending they do not believe the schedule change was restrictive. (*Id.*) Defendants, somewhat cryptically and certainly in a conclusory manner, seem to argue that the Court should adopt Judge Baldwin's recommendation on this issue because Defendants have argued the amended chapel schedule was the least restrictive means of serving a compelling government interest. (ECF No. 258 at 4.) The Court again agrees with Plaintiffs.

Whether Defendants have argued something is not necessarily relevant to the summary judgment analysis, which requires the Court to examine the evidence proffered by the parties to see if a genuine dispute of material fact exists. Defendants' argument in their Response is accordingly unpersuasive. And there is no genuine dispute of material fact here. Indeed, Judge Baldwin found that "Defendants have not demonstrated they meaningfully 'considered and rejected the efficacy of less restrictive measures before adopting the challenged practice.'" (ECF No. 252 at 16 (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 999 (9th Cir. 2005)).) In addition, and as Plaintiffs argue (ECF No. 253 at 5-6), the evidence they presented with their Motion supports this finding. Specifically, Plaintiffs point to two substantially similar interrogatory responses by Defendants Carpenter and Davis. (*Id.*) When asked, neither Carpenter nor Davis identified any less restrictive alternatives they considered before implementing the 2018 change to the chapel schedule. (ECF No. 149-2 at 97 (Carpenter), 106 (Davis).) Instead, Carpenter wrote, "Defendant does not believe they were restrictive. We were following the ARs." (*Id.* at 97.) And Davis wrote, "[i]t wasn't about less restrictive. It was about taking the bias toward certain faiths out of the Chapel Schedule and making it fair for all faiths." (*Id.* at 106.) Because they were being specifically asked about what less restrictive alternative means they considered—and to provide examples—the only reasonable inference the Court may draw from these responses is that neither Carpenter nor Davis considered any less restrictive alternatives before implementing the challenged change to the chapel

schedule. What's more, Defendants do not address this evidence—their own interrogatory responses—in their Response (ECF No. 358 at 4), meaning these concessions made during discovery are undisputed facts.

Accordingly, Judge Baldwin's ultimate recommendation that disputes of material fact remain on the compelling interest prong of Plaintiffs' RLUIPA claims does not follow from her key factual finding noted above and discussed in the R&R. Defendants cannot meet their "burden to prove least restrictive means unless [they] demonstrate[] that [they have] actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Warsoldier*, 418 F.3d at 999. The evidence is to the contrary here. As explained above, the evidence shows that Defendants did not consider any less restrictive measures before making the 2018 change to the LCC chapel schedule. Because Defendants did not consider any less restrictive measures before making the challenged change to the LCC chapel schedule, the Court must find—and does—that Plaintiffs prevail on the compelling interest prong of their RLUIPA claims.

Further, because the Court makes that finding, the Court accordingly finds that Plaintiffs are entitled to summary judgment on their RLUIPA claim (and sustains Plaintiffs' corresponding objections). After all, the Court also finds that Plaintiffs are also entitled to summary judgment on the substantial burden prong of the RLUIPA analysis. The Court thus rejects Judge Baldwin's recommendations that genuine disputes of material fact preclude summary judgment on Plaintiffs' RLUIPA claims. The question that remains is what injunctive relief is appropriate to remedy Defendants' violation of RLUIPA. While Plaintiffs ask for the LCC chapel schedule to revert to what it was before the 2018 schedule change (ECF No. 38 at 28), the parties have not addressed these issues in some time, and their positions may have changed considering the Court's findings detailed immediately above. And the question of what injunctive relief is appropriate dovetails with the Court's discussion of Plaintiffs' next argument in their Objection below.

///

///

### E. Additional Briefing

More specifically, Plaintiffs also object (ECF No. 253 at 6) to Judge Baldwin's recommendation that, "further briefing should be required to determine whether Plaintiffs Shaw, Cowart, and Jordan have received the injunctive relief they seek in this action or whether that request is moot." (ECF No. 252 at 17.) Plaintiffs state they have not received the injunctive relief they seek. (ECF No. 253 at 6.) Thus, there is no need to adopt Judge Baldwin's recommendation to direct supplemental briefing on mootness. Moreover, and as explained above, the Court finds that Plaintiffs are entitled to summary judgment on their RLUIPA claims.

The question, therefore, is what injunctive relief is appropriate to remedy Defendants' violations of RLUIPA in adopting the 2018 changes to the LCC chapel schedule. The Court will direct supplemental briefing on that issue.

### F. *Turner* Factors and the Standard to Apply to Constitutional Claims

Plaintiffs then object to Judge Baldwin's statements in the R&R that they did not adequately address the *Turner*[4] factors, arguing they did, and dispute that the *Turner* factors even apply to their Constitutional claims, instead arguing that the basically strict scrutiny standard that NDOC itself adopted in AR 810 should instead govern the Court's review of Plaintiffs' constitutional claims. (ECF No. 253 at 6-8.) Defendants counter that Plaintiffs did not meet their burden to show the absence of a genuine dispute of material fact on their equal protection clause claim, and that Plaintiffs proffer no caselaw supporting their view that the strict-scrutiny-like standard from AR 810 should govern the Court's review of Plaintiffs' Constitutional claims. (ECF No. 258 at 5.) The Court mostly agrees with Defendants.

Starting with the broader issue first, the Court agrees with Defendants' assessment that Plaintiffs proffer no caselaw supporting their view that the Court should review their constitutional claims under the strict scrutiny standard from AR 810 instead of the *Turner*

---

[4] *Turner v. Safley*, 482 U.S. 78 (1987).

10

1  factors. And the Court finds, as Judge Baldwin did, that the *Turner* factors are the
2  appropriate factors to analyze Plaintiffs' Constitutional claims. (ECF No. 252 at 18.) *Walker*
3  *v. Beard*, 789 F.3d 1125 (9th Cir. 2015) provides a reasonably analogous framework for
4  the Court's use in this case because it too involved RLUIPA and Constitutional claims
5  challenging prison policy. The *Walker* Court employed the RLUIPA analysis that the Court
6  also applied above for the RLUIPA claims and analyzed the Constitutional claim (First
7  Amendment Free Exercise) using the *Turner* factors. *See id.* at 1134-38 (analyzing the
8  RLUIPA claim), 1138-39 (analyzing the First Amendment Free Exercise claim using the
9  *Turner* factors). And the approach the Ninth Circuit took in *Walker* is consistent with other
10 governing precedent the Court was able to locate. The Court was notably unable to locate
11 any binding opinions where a court analyzed an incarcerated litigant's Constitutional
12 claims involving a purported infringement on their religious rights using a strict-scrutiny-
13 like standard found in an administrative regulation. Courts instead generally use the
14 *Turner* factors. This Court will too.

15    Turning to Plaintiffs' more specific objection, Plaintiffs are correct that they did
16 address the *Turner* factors in their Motion. (*Compare* ECF No. 252 at 18 (stating that
17 neither party addressed the *Turner* factors) *with* ECF No. 213 at 31-33 (addressing the
18 *Turner* factors).) However, as discussed below as to Plaintiffs' subsequent objections, the
19 Court agrees with Judge Baldwin's analysis of Plaintiffs' Constitutional claims.

20    **G.    Establishment Clause Claims**

21    Plaintiff next object to this sentence in the R&R: "However, it is not clear on this
22 record whether these other groups requested and were granted the ability to participate in
23 group prayer services on a particular date and time that coincides with their faith, while
24 Plaintiffs were not." (ECF Nos. 252 at 22 (the sentence), 253 at 8 (objecting to the
25 sentence).) Plaintiffs argue they addressed the accommodations given to other religious
26 groups in their Motion, so they are entitled to summary judgment on their First Amendment
27 Establishment Clause claims. (ECF No. 253 at 8.) Defendants essentially counter that
28 Plaintiffs' desired conclusion does not follow because they did not explain how Judge

11

Baldwin erred in her analysis of Plaintiffs' Establishment Clause claim. (ECF No. 258 at 5-6.) The Court agrees with Defendants.

Plaintiffs do not attack the propriety of Judge Baldwin's overall analysis of their Establishment clause claims, instead quibbling with one nondeterminative component of it. The Court also agrees with Judge Baldwin's analysis of the Establishment Clause claim. Despite the strong evidence that Defendants preferred some religions over others in enacting the 2018 change to the LCC chapel schedule, the Court agrees with Judge Baldwin that NDOC's Faith Group Overview suggests that NDOC at least attempts to treat all recognized Faith Groups equally, which creates enough of a dispute of fact to render summary judgment inappropriate. (ECF No. 252 at 22.) Moreover, Carpenter states in her declaration that the intent behind the challenged chapel schedule changes was to treat all religions equally. (ECF No. 226-2 at 2-3.) Davis similarly suggests that concerns about fairness motivated the challenged changes to the LCC chapel schedule. (ECF No. 226-3 at 3.) Thus, disputes of material fact remain on Plaintiffs' Establishment Clause claim. The Court adopts Judge Baldwin's Recommendation on this issue and overrules Plaintiffs' corresponding objection.

### H.   Free Exercise Clause Claims

Plaintiffs next object to Judge Baldwin's finding that factual disputes preclude summary judgment on their First Amendment Free Exercise Clause claim because Plaintiffs claim that no legitimate penological purpose ever existed justifying the 2018 change to the chapel schedule. (ECF No. 253 at 8.) Defendants counter that Plaintiffs' objection is insufficiently specific and should therefore be disregarded. (ECF No. 258 at 6.)

There is at least a factual dispute as to whether Defendants had a legitimate penological purpose justifying the 2018 LCC chapel schedule change. For example, Defendants Baker, Carpenter, and Davis describe in their declarations how the prior chapel schedule caused safety and security concerns because it permitted religious services throughout LCC at all times of day, and Baker received reports that participants

in some of those scattered religious services were exchanging contraband and engaging in sexual contact. (ECF Nos. 226-1, 226-2, 226-3.) The Court will accordingly accept and adopt Judge Baldwin's recommendation as to Plaintiffs' Free Exercise Clause claim and overrule Plaintiffs' corresponding objection.

### I. Section 1985 Conspiracy Claim

Plaintiffs next object to Judge Baldwin's finding that a dispute of material fact precludes summary judgment to either side on Plaintiffs' 42 U.S.C. § 1985(3) conspiracy claim because this is the rare case where Plaintiffs have direct evidence of a conspiracy to deprive them of their constitutional rights. (ECF No. 253 at 9 (objecting to ECF No. 252 at 26).) Defendants counter that Plaintiffs raise an insufficiently specific objection. (ECF No. 258 at 6.)

While Plaintiffs' point is well taken, the Court ultimately agrees with Judge Baldwin that this claim should go to trial. The evidence that Plaintiffs point to is remarkable in the sense that it stands out in the Court's experience presiding over hundreds of prisoner civil rights cases. Plaintiffs point to Davis' own notes taken after a meeting about the pertinent schedule change—produced by NDOC in discovery—that also implicates Carpenter:

> 2. "Why did our Muslim studies get taken away." I told them that I took that to AW Carpenter and she said, "Denied." I couldn't say In front of all of them that It was because they teach racism, hate and black supremacy. There would have been a riot.

(ECF No. 213 at 511.) It is hard for the Court to imagine a stronger piece of evidence in support of Plaintiffs' Section 1985 conspiracy claim.

Nonetheless, Baker, Davis, and Carpenter submitted sworn declarations stating that they had other reasons for changing the chapel schedule beyond anti-Islamic religious animus. (ECF Nos. 226-1, 226-2, 226-3.) Thus, the Court would have to make adverse credibility determinations as to Baker, Davis, and Carpenter to determine that Plaintiffs are entitled to summary judgment on their Section 1985 conspiracy claim—because Plaintiffs' evidence contradicts their sworn declarations. But at summary judgment, the Court may not "make credibility determinations with respect to statements made in affidavits[.]"

13

*Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009) (citation omitted); *see also id.* ("A judge must not grant summary judgment based on [her] determination that one set of facts is more believable than another."). Therefore, despite Plaintiffs' strong evidence, it would be inappropriate to grant Plaintiffs summary judgment on their Section 1985 conspiracy claim. The Court accordingly accepts and adopts Judge Baldwin's recommendation on this issue and overrules Plaintiffs' corresponding objection.

### J. Retaliation Claim

Plaintiffs also object to Judge Baldwin's recommendation that neither party is entitled to summary judgment on Plaintiffs' First Amendment retaliation claim, arguing that the facts show Plaintiffs are entitled to summary judgment on this claim. (ECF No. 353 at 9 (objecting to ECF No. 252 at 26-27).) Defendants counter that Plaintiffs are not entitled to summary judgment on this issue because there is no evidence that Plaintiffs were chilled by Defendants' allegedly retaliatory actions. (ECF No. 258 at 7.) The Court agrees with Defendants.

Indeed, the Court agrees with Judge Baldwin's analysis of this claim and will adopt it. While Plaintiffs have presented some evidence that Defendants retaliated against Plaintiffs, Defendants are also correct that Plaintiffs filed grievances after the allegedly retaliatory actions, creating at least a genuine dispute of material fact as to Plaintiffs' retaliation claims. (ECF No. 226 at 27 (citing to Plaintiffs evidence, consisting of, in pertinent part, grievances filed by Plaintiffs).) The Court therefore overrules Plaintiffs' objection as to their retaliation claim.

### K. Pro Se Standard

Plaintiffs finally ask that the Court liberally construe their pleadings because they are pro se. (ECF No. 353 at 9-10.) The Court has done so.

### V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before

14

the Court.

It is therefore ordered that Plaintiffs' Objection (ECF No. 253) to the Report and Recommendation of U.S. Magistrate Judge Carla L. Baldwin is sustained in part and overruled in part, as stated herein. The Report and Recommendation (ECF No. 252) is therefore adopted in part and rejected in part as stated herein.

It is further ordered that Plaintiffs' motion for summary judgment (ECF No. 213) is granted in part, and denied in part, as stated herein.

It is further ordered that Defendants' motion for summary judgment (ECF No. 226) is granted in part, and denied in part, as stated herein.

It is further ordered that Plaintiffs Kamedula and Wirth's RLUIPA claims are dismissed as moot because they are no longer in custody.

It is further ordered that Defendants Thomas, Ferro, LeGrand, and Potter are dismissed from this case for lack of personal participation.

It is further ordered that all Doe Defendants are dismissed from this case under Federal Rule of Civil Procedure 4(m).

It is further ordered that Plaintiffs Shaw, Jordan, and Cowart are entitled to summary judgment on their RLUIPA claim against Defendants Davis, Carpenter, Baker, and Wickham.

It is further ordered that Plaintiffs may proceed to trial on their Fourteenth Amendment equal protection claim against Defendants Davis, Carpenter, Wickham, and Baker.

It is further ordered that Plaintiffs may proceed to trial on their First Amendment Establishment Clause claim against Defendants Wickham, Baker, Carpenter, and Davis.

It is further ordered that Plaintiffs may proceed to trial on their First Amendment Free Exercise Clause claim against Defendants Wickham, Baker, Carpenter, and Davis.

It is further ordered that Plaintiffs may proceed to trial on their 42 U.S.C. § 1985(3) conspiracy claim against Defendants Wickham, Baker, Carpenter, and Davis.

It is further ordered that Plaintiffs may proceed to trial on their First Amendment

Retaliation Claim against Defendants Davis and Carpenter.

It is further ordered that the Court finds it appropriate to refer this case to a settlement conference before United States Magistrate Judge Carla L. Baldwin under LR 16-5.

It is further ordered that, if this case does not settle at the settlement conference, the parties must:

1. Submit a proposed joint pretrial order within 30 days of the settlement conference; and

2. brief the issue of what injunctive relief is appropriate to remedy Defendants Davis, Carpenter, Baker, and Wickham's violations of Plaintiffs Shaw, Jordan, and Cowart's religious exercise rights under RLUIPA in making the challenged 2018 changes to the LCC chapel schedule. Specifically, Plaintiffs Shaw, Jordan, and Cowart must file a brief of no more than 24 pages within 14 days of the settlement conference. Defendants may then file a response, also limited to 24 pages, within 14 days after Plaintiffs file their opening brief. Plaintiffs may then file a reply limited to 12 pages within seven days after Defendants file their response.

DATED THIS 12th Day of August 2022.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE